JEFFREY GRANT (SBN 218974)
jgrant@foxrothschild.com
JOHN SHAEFFER (SBN 138331)
jshaeffer@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone:   310-598-4150
Facsimile:    310-556-9828

KEVIN M. SUTEHALL (SBN 244394)
ksutehall@foxrothschild.com
MARK J. CONNOT (*admitted pro hac vice*)
mconnot@foxrothschild.com
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV  89135
Telephone:   702-262-6899
Facsimile:    702-597-5503
ksutehall@foxrothschild.com
mconnot@foxrothschild.com
*Attorneys for David Park*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| NORTH BAY CREDIT UNION, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 8:23-cv-01951 DOC ADS<br><br>**DAVID PARK'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:        January 29, 2024<br>Time:        8:30 a.m.<br>Courtroom:    10A |

**DAVID PARK'S REPLY ISO MTD**

# TABLE OF CONTENTS

I.   Introduction ...................................................................................................1

II.  The Court Should Dismiss the Complaint Against Mr. Park.........................2

    A.   Mr. Park is Not Subject to this Court's Personal Jurisdiction .............2

        1.   The Court Lacks General Personal Jurisdiction Over Mr. Park ........................................................................................2

        2.   There is No Basis for the Court to Exercise Specific Personal Jurisdiction Over Mr. Park ..........................................8

        3.   Further Jurisdictional Discovery Would be Wasteful and Is Unnecessary ........................................................................11

    B.   Plaintiff Never Served Mr. Park ........................................................12

    C.   Venue Should be Transferred to Nevada if Any of Plaintiff's Claims Survive ..................................................................................13

    D.   Plaintiff Fails to State Any Claims Upon Which Relief May Be Granted Against Mr. Park ..................................................................14

        1.   Plaintiff Fails to State a Claim for Intentional Interference with Prospective Economic Advantage ...............14

        2.   Plaintiff's Negligent Interference With Prospective Advantage Claim Should be Dismissed .................................16

        3.   Plaintiff's Claim for Violations of California Business & Professions Code Sections 17200 Should be Dismissed..........17

        4.   Declaratory Relief is Not a Standalone Cause of Action .........17

III.  Conclusion.................................................................................................18

**DAVID PARK'S REPLY ISO MTD**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
    582 U.S. 255, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017) ...................................2

*Geierman v. Grocery Delivery E-Servs. USA, Inc.*,
    No. CV 20-771 PA, 2020 WL 13588231 (C.D. Cal. May 20, 2020)...........................................................................................................2

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020).....................................................................8

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) ......................................................................2

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998), *holding modified by Yahoo! Inc.*,
    433 F.3d 1199 ..............................................................................................2

*Wasson v. Riverside Cnty.*,
    237 F.R.D. 423 (C.D. Cal. 2006) .............................................................13

**Statutes**

28 U.S.C. § 1391(b)...........................................................................................13

Cal. Civ. Proc. Code § 415.20(b) ....................................................................12

California Business & Professions Code Sections 17200, *et seq.*..........................17

**Other Authorities**

FRCP 11............................................................................................................12

FRCP 12(b)(5) ..................................................................................................13

FRCP 9(b) .........................................................................................................17

FRCP 45(c)(1)(A) .............................................................................................13

**DAVID PARK'S REPLY ISO MTD**

## I.    Introduction

In its Opposition to David Park's ("Mr. Park's") Notice of Motion and Motion to Dismiss (ECF No. 31, the "Opposition"). Plaintiff North Bay Credit Union ("Plaintiff") enlists a series of red herrings in a last-ditch effort to subject Mr. Park to this Court's personal jurisdiction despite his lack of contacts with California.  Plaintiff fails to establish that Mr. Park is subject to either the general jurisdiction or the specific jurisdiction of this Court.  Mr. Park, a Nevada resident, has *never* resided in California.  Plaintiff's assertions about Mr. Park's California contacts are either false, misleading, or both.  With respect to specific jurisdiction, Plaintiff fails to assert, let alone support with any evidence, an argument Mr. Park engaged in any California-based conduct that is even tangentially related to a single fact asserted in Plaintiff's Complaint (ECF No. 1-2; the "Complaint"). Instead, in support of its claim that the Court possesses specific personal jurisdiction over Mr. Park, Plaintiff discusses facts which all predate the conduct alleged in its own Complaint.  The Court lacks personal jurisdiction over Mr. Park.

Additionally, Plaintiff does not even attempt to claim that it personally served Mr. Park.  Plaintiff relies on the fiction it has created that Mr. Park resides in California, with the mother of his children, when that is completely false and unsupported by any admissible evidence.  Finally, separate and aside from lack of personal jurisdiction and Plaintiff's failure to serve Mr. Park with the summons and Complaint, this matter should be venued in Nevada, not California.

This reply brief is supported by the foregoing points and authorities and Declaration of David Park in Support of Reply Memorandum in Support of Motion to Dismiss, attached hereto as Exhibit B (the "Second Park Decl."[1]); and

---

[1] For context and as a matter of convenience to the Court, the Second Park Decl. repeats some of Mr. Park's sworn statements from the declaration submitted in support of his Motion to Dismiss, ECF No. 27-1.

1

**DAVID PARK'S REPLY ISO MTD**

the Declaration of Kevin M. Sutehall in Support of Reply Memorandum in Support of Motion to Dismiss ("Sutehall Decl."), attached hereto as Exhibit C, and their exhibits.

**II.     The Court Should Dismiss the Complaint Against Mr. Park**

     *A.     Mr. Park is Not Subject to this Court's Personal Jurisdiction*

          **1.     The Court Lacks General Personal Jurisdiction Over Mr. Park**

As discussed in Mr. Park's Motion to Dismiss (ECF No. 27, the "Motion"), general personal jurisdiction exists where a defendant is domiciled or where he or she has engaged in substantial or continuous and systematic activities. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998), *holding modified by Yahoo! Inc.*, 433 F.3d 1199. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017).

Mr. Park has never been domiciled in California. "Persons are domiciled in the places they reside with the intent to remain or to which they intend to return." *Geierman v. Grocery Delivery E-Servs. USA, Inc.*, No. CV 20-771 PA (DFMX), 2020 WL 13588231, at \*1 (C.D. Cal. May 20, 2020) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Contrary to the false and baseless allegation in the Complaint, Mr. Park is not a resident of California. Mr. Park has sworn to this statement in numerous declarations, and does so again in the Second Park Decl. Mr. Park resides, is a citizen of, and intends to remain a resident and citizen of Nevada. Second Park Decl. at ¶ 1. Indeed, Mr. Park has *never* resided in California. *Id*. at ¶ 4. Mr. Park cannot intend to return to California, because he has never resided there.

Plaintiff, recognizing that it has no admissible evidence establishing that Mr. Park is or has ever been domiciled in California, attempts to stitch together

2

**DAVID PARK'S REPLY ISO MTD**

fragments of often inadmissible evidence to suggest that Mr. Park has engaged in substantial or continuous and systematic activities in California.  This, too, is untrue and unsupportable.

Mr. Park's lack of contacts with California, and responses to the assertions Plaintiff makes in its opposition and the attached declarations[2], are set forth in the Second Park Decl.

As noted above, Mr. Park is a Nevada resident.  Second Park Decl. at ¶ 1. His current driver's license was issued by the state of Nevada in August 2018.  A redacted copy of the driver's license is attached as Exhibit 1 to Second Park Decl. Mr. Park is registered to vote in Nevada.  *See also* Second Park Decl. at ¶ 2.

Plaintiff's investigator, Edward Beyer ("Mr. Beyer"), executed a declaration (the "Beyer Decl.", ECF No. 31-1) in support of Plaintiff's Opposition.  In paragraph 3 of his declaration, Mr. Beyer states that he "surveilled" the residential property located at 351 Crescent Bay Drive, Laguna Beach, CA 92651 (the "Laguna Beach Residence").  Beyer Decl., ¶ 3.  Mr. Beyer notably does not claim that he ever *saw* Mr. Park during this surveillance of the Laguna Beach Residence.[3]  He nonetheless states that the Laguna Beach Residence is "owned by Park Real Estate Laguna, LLC ("Park Real Estate"), a Texas limited liability company."  *Id*.  Mr. Beyer then asserts that Mr. Park is listed by the Texas Secretary of State's Office as a Director/President of Park.  *Id*.  From this representation, Plaintiff erroneously concludes that Mr. Park "has a direct link to ownership of that residence."  Opposition at 8:15-8:16.  This is false.

---

[2] In a separate, concurrent filing, Mr. Park submits evidentiary objections to representations in the declarations attached to Plaintiff's Opposition.  Nothing herein should be construed as an admission that the statements in those declarations are admissible or true.

[3] Mr. Park has never spoken with Mr. Beyer to his knowledge.  Second Park Decl. at ¶ 10.

3

**DAVID PARK'S REPLY ISO MTD**

Mr. Park may well be listed as an officer and/or director of Park Real Estate with the Texas Secretary of State, but he does not own the entity or the Laguna Beach Residence.  Second Park Decl. at ¶ 8.  Park Real Estate is owned by an irrevocable trust whose sole beneficiaries are Mr. Park's children.  *Id.*  Mr. Park's wife, Kimmie Park, with whom Mr. Park has been separated for over a decade, resides at the Laguna Beach Residence with one of their daughters and with Kimmie's mother.  *Id*. at ¶¶ 7-8, 12.  Mr. Park does not reside at the Laguna Beach Residence, and he never has resided there.  *Id*. at ¶ 6.  Kimmie Park and Mr. Park amicably separated over a decade ago, after which Kimmie moved to California.  *Id*. at ¶ 12.

Mr. Beyer claims that Mr. Park owns two vehicles registered in California.  Beyer Decl. at ¶ 4.  No documents support the contention.  Regardless, the presence of these vehicles in California is meaningless.  As described in the Second Park Decl., Kimmie Park moved to California after she and Mr. Park separated over a decade ago.  Second Park Decl. at ¶ 12.  Before they separated, and while they resided in Texas, David Park and Kimmie Park acquired the 2007 Maserati and 2005 Jaguar.  *Id*. at ¶ 13.  The vehicles were originally registered in Texas.  *Id*.  Mr. Park does not recall whether the vehicles were originally registered in his name or in both his and Kimmie Park's names when they purchased them.  *Id*.

After they separated, Kimmie took the two vehicles, a 2007 Maserati and a 2005 Jaguar, with her to California.  *Id*. at ¶ 14.  Mr. Park is unaware of whether Kimmie registered the vehicles in her own name or in Mr. Park's name because he was not involved in registering them in California.  *Id*.  Kimmie Park may have registered the vehicles in Mr. Park's name, but Mr. Park is unaware of what

4

**DAVID PARK'S REPLY ISO MTD**

occurred. *Id.* Indeed, Mr. Park does not know whether Kimmie Park still owns or uses those vehicles. *Id.*[4]

Mr. Beyer then makes several representations about Mr. Park's supposed "business ties" to California, although he failed to discover any actual connection between the two. Mr. Beyer claims that Mr. Park is a founder and chief investment officer of an entity called "Austin Capital Partners", which he claims maintains an office at 18575 Jamboree Road, Suite 250, Irvine, California 92612. Beyer Decl. at ¶ 6. Mr. Beyer claims that he called a phone number, supposedly belonging to "Austin Capital Partners", on October 26, 2023, and that the unnamed individual that answered confirmed that Mr. Park uses the Jamboree Road location plus an office in Texas and that Mr. Park resides in California and Texas. *Id.* at ¶ 7. Mr. Beyer then claims that "an inquiry was . . . made" to building security for the Jamboree Road building, and that a security employee named "Caesar" "confirmed that Mr. Park was the current occupant of Suite 250 of 18575 Jamboree Road."

These representations are misleading and false. For starters, there is no entity called "Austin Capital Partners", which is a webpage domain name. Second Park Decl. at ¶ 23. Mr. Park is a founder of Austin Capital General Partner, LLLP ("ACGP"), which is a Nevada business entity involved in venture capital. *Id.* ACGP is unrelated to the facts and circumstances described in Plaintiff's Complaint. Second Park Decl. at ¶ 24. It is not referenced in the Complaint. *See* Complaint.

ACGP rented office space in Irvine, California shortly before the COVID pandemic because it had some employees in California at the time. Second Park Decl. at ¶ 25. Mr. Park has set foot in ACGP's Irvine, California office on

---

[4] In the Beyer Decl., Mr. Beyer also references two other vehicles that are supposedly registered to Kimmie Park. Beyer Decl. at ¶ 5. Plaintiff does not even attempt to explain what this allegation has to do with Mr. Park.

**DAVID PARK'S REPLY ISO MTD**

occasion when he has travelled to California, but does not visit the office regularly. *Id*. at ¶ 26. In some instances when Mr. Park has been physically present in the ACGP's office, he was in the area to visit his children and used the office for convenience. *Id*.

Incidentally, Mr. Beyer's recitation about his supposed discussion with an alleged receptionist for "Austin Capital Partners", in addition to being inadmissible, is completely devoid of any meaning. Beyer Decl. at ¶ 7. The unnamed receptionist supposedly told Mr. Beyer that Mr. Park uses the Irvine office and another location in Texas, and then allegedly volunteered that Mr. Park "resides in both California and Texas . . . [and] did not reference Nevada residence for Mr. Park." *Id*. Mr. Beyer's recitation of this alleged discussion is, of course, inadmissible hearsay and lacks foundation. More to the point, how, exactly, an unnamed receptionist would know where Mr. Park resides and spends his time is unknown and unstated in Mr. Beyer's sworn statement. Even if the hearsay statement from the unidentified receptionist was admissible, it strains credulity that a receptionist for a business would volunteer where a founder of the business resides to a stranger. *See*, *e.g.*, Second Park Decl. at ¶ 27. To be clear, Mr. Park does not reside in either California or Texas per his sworn statement. *Id*.[5] Additionally, Mr. Park has never had an office in Newport Beach. *Id*. at ¶ 37.

The similarly rank hearsay recitation of supposed representations by "Caesar", a security employee for the 18575 Jamboree Road office, is both inadmissible and meaningless. Mr. Park does not know who "Caesar" is, although he has spoken with a security guard at the Irvine office building in the past. Second Park Decl. at ¶ 29. Regardless, Mr. Park is not a "current occupant" of that office location. *Id*. Mr. Beyer's awkward, passive voice assertion about the "inquiry [that] was made" to building security, and the vague representation that

---

[5] Mr. Park previously resided in Texas, but has not resided there for years. Second Park Decl. at ¶ 27.

**DAVID PARK'S REPLY ISO MTD**

"'Caesar' confirmed that Mr. Park was the current occupant" of the office raise many red flags that cast doubts the credibility of Mr. Beyer's inadmissible hearsay recitation.

Even setting those fatal problems aside, it is clear that Mr. Beyer failed to enter or go near the ACGP's office space in Irvine in October 2023.  *Id*. at ¶ 30.  Had he done so, he would have discovered that the office is currently unoccupied and that no employees are currently working at the location.  *Id*.

It is true that Mr. Park frequently travels away from his Nevada residence, often for business.  *Id*. at ¶ 18.  He visits California perhaps a few times a year, but less frequently than he travels to other states including New York and Texas.  *Id*. at ¶¶ 18, 39.  When Mr. Park visits California, it is typically to visit his adult children, who live in the state.  *Id*. at ¶ 19.  Like anywhere else that he travels, Mr. Park works when away from home, including when he has travelled to California to visit his children.  *Id*. at ¶ 20.  Mr. Park has also travelled to California on business occasionally over the years.  *Id*. at ¶ 21.  He sometimes attends business meetings while in California, including when he visits his children in the state.  *Id*.

Mr. Park is not an officer, director, or employee of any California business entity so far as he can recall.  *Id*. at ¶ 17.  Indeed, it is striking that Plaintiff, with the help of a professional investigator and with almost two months to scour the digital and physical world for facts about Mr. Park's connections with California could only identify a single, *indirect* business connection between Mr. Park and the state, specifically via a Nevada entity with which Mr. Park is involved that has an unoccupied office space in California.  This paltry showing magnifies the weakness of Plaintiff's arguments.

As discussed below, Mr. Park has met with representatives of Plaintiff and/or HigherGrowth, LLC, dba Greenbax Marketplace ("Greenbax") in California on occasion.  Second Park Decl. at ¶¶ 32 and 34.  These meetings, with

7

**DAVID PARK'S REPLY ISO MTD**

or without Mr. Park's otherwise limited and primarily family-related contacts with California, of course do not satisfy the standard for general jurisdiction.

Additionally, Plaintiff's suggestions that Mr. Park supposedly interviewed an unnamed person in October 2021 for an unknown position with an undisclosed company is irrelevant and fails to advance Plaintiff's claim that Mr. Park is subject to the Court's general jurisdiction. Indeed, if anything, Mr. Call's assertion that Mr. Park met with Plaintiff's others in relation to Plaintiff on a handful of occasions over a three year period demonstrates just how limited Mr. Park's contacts are with California and with Plaintiff specifically. Mr. Park is simply not subject to California's general jurisdiction under the prevailing standards.

## 2. There is No Basis for the Court to Exercise Specific Personal Jurisdiction Over Mr. Park

Plaintiff has failed to satisfy any of the three prongs the Ninth Circuit analyzes to determine whether courts may exercise specific personal jurisdiction over an individual.[6]

Mr. Park has not purposefully directed activities or consummated transactions with the forum or a forum resident, nor has he performed an act that purposefully avails himself of the privilege of conducting activities in California. The Complaint does not assert that Mr. Park undertook any specific conduct to avail himself to the privilege of conducting business in California. Nowhere does

___

[6] As noted in the Motion, the three-prong test is: "First, [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Second, the claim must arise out of or relate to the defendant's forum-related activities. Finally, the exercise of jurisdiction must be reasonable. The plaintiff must satisfy the first two prongs of this test. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).

8

**DAVID PARK'S REPLY ISO MTD**

Plaintiff allege that Mr. Park engaged in any interactions or transactions with it outside of his capacity as a representative of one business entity or another. Simply because Mr. Park was allegedly involved in MRB Direct Inc.'s ("MRB's") implementation of the Greenbax platform does not suggest that he was operating outside of one corporate umbrella or another. Plaintiff does not, for example, assert that Mr. Park personally engaged in any business transactions or acts relating to Plaintiff or Greenbax.

Next, and critically, the Complaint does not assert claims that even arguably arise out of or relate to Mr. Park's alleged California-related activities. In its Opposition, Plaintiff and its representative Chris Call mention approximately five meetings that Mr. Park attended with representatives of Plaintiff and/or Greenbax over a three-year period. *See* Declaration of Chris Call (ECF No. 31-2, the "Call Decl.") at ¶ 8. Mr. Park does not dispute that he met with Plaintiff and/or Greenbax representatives in California on a few occasions between 2021 and 2023. Second Park Decl. at ¶ 34. It appears, per Mr. Call's declaration and its exhibit 1, that the last such meeting occurred on or about March 27, 2023. *Id*.

A close reading of Mr. Call's declaration reveals that none of these meetings had anything to do with the subject matter of Plaintiff's Complaint, and indeed the meetings took place months or even years between the events alleged in the Complaint. For example, Mr. Call claims that during those meetings, "myself and those in attendance discussed the development of the MRB banking platform, the license fee to be charge by MRB for managing the platform, on-going platform development issues, and new potential business opportunities." Call Decl. at ¶ 8. Even taking Mr. Call's representations as true, none of these issues are the subject of Plaintiff's Complaint.

As a reminder, Plaintiff alleges in its Complaint that Mr. Park and MRB, through unspecified acts, interfered with its prospective economic advantage after MRB disabled the Greenbax platform *on or after July 26, 2023*. Complaint at ¶¶

9

**DAVID PARK'S REPLY ISO MTD**

11, 19-39.[7]  Plaintiff further claims that the unspecified "Defendants" refused to provide information and/or process transfer requests in the aftermath of the July 26, 2023, shutdown of the banking platform.  *Id*. at ¶¶ 13-14.  Plaintiff further asserts that "Defendants" conspired to somehow usurp "North Bay's customer relationships" by delaying the availability of the funds if customers requested that they be transferred to Plaintiff.  *Id*. at ¶ 15.  None of these allegations are true, but even if they were, every fact asserted about the "Defendants" supposed wrongdoing concerns events that occurred on or after July 26, 2023.  This is in stark contrast with the contacts that Mr. Call alleges Plaintiff had with Mr. Park in California, all of which allegedly occurred in or before March 27, 2023.  There is simply no connection between the contacts that Plaintiff alleges it had with Mr. Park in California and the facts and circumstances that underlie Plaintiff's Complaint.  This alone is fatal to any argument that Mr. Park is subject to the Court's specific jurisdiction.

Third, and finally, Plaintiff has failed to present a "compelling case that the exercise of jurisdiction would not be unreasonable" over Mr. Park.  Mr. Park is a Nevada resident, as is the other Defendant, MRB.  Plaintiff claims that the Court can reasonably exercise jurisdiction over Mr. Park primarily based on a handful meetings between Mr. Park and Defendant and/or Greenbax over a three-year period, all of which meetings predate the operative allegations in Plaintiff's Complaint by months or years.  Aside from that, Plaintiff relies on weak allegations that Mr. Park's children indirectly own an interest in a residence in California, that a single business with whom Mr. Park is associated has a (currently unoccupied) office in California, and hearsay statements from unnamed individuals asserting that Mr. Park has used a California office at times.  These

---

[7] Nothing in this brief should be construed as an admission of any of Plaintiff's allegations.

10

**DAVID PARK'S REPLY ISO MTD**

contacts do not present any case, let alone a "compelling case", that the exercise of personal jurisdiction over Mr. Park would not be unreasonable.[8]

### 3. Further Jurisdictional Discovery Would be Wasteful and Is Unnecessary

Plaintiff, who has already engaged in "jurisdictional discovery" with respect to Mr. Park, insists it needs more discovery in a tacked on argument toward the end of its Opposition. It fails to identify what discovery it supposedly needs. In light of the repeated, sworn statements about Mr. Park's non-residency in California and concerning his limited business contacts with the state, no amount of discovery will alter the inevitable conclusion that Mr. Park will never be subject to this Court's jurisdiction even if it decides to actually serve him. To the extent the Court is inclined to grant any jurisdictional discovery, it should require Plaintiff to reimburse Mr. Park for all fees and costs incurred in relation to such discovery should the Court later dismiss Mr. Park on the basis of lack of personal jurisdiction.

---

[8] Plaintiff also asserts that Mr. Park's responses to discovery requests were "evasive". This is false. Mr. Park responded to the nonobjectionable discovery requests that Plaintiff served on it without any delay, and was forthright about the facts and circumstances Plaintiff inquired about even if they are not relevant to this litigation. Many of Plaintiff's requests bordered on the absurd, for example asking Mr. Park to account for every day and every meeting he has had in California for a four-year period. Other requests, including seeking a list of every residence that Mr. Park has had over five years, is highly invasive and irrelevant in light of the fact that Mr. Park has never resided in California. As of the preparation of this reply, Plaintiff has failed to even request a meet and confer about any of Mr. Park's responses, undercutting its claim that the Court should defer a ruling on the Motion to some later date. And, to state the obvious, it was Plaintiff that asserted in its August 9, 2023 Complaint that "Mr. Park is an individual residing in Irvine in the County of Orange, California" (ECF No. 1-2 at ¶ 3) and that continues to insist that Mr. Park is subject to the jurisdiction of courts in California, including this Honorable Court.

11

**DAVID PARK'S REPLY ISO MTD**

### B.    *Plaintiff Never Served Mr. Park*

Plaintiff does not supply any evidence that it actually served Mr. Park, and it did not. Second Park Decl. at ¶ 5. Instead, Plaintiff relies on the debunked and entirely false claim that Mr. Park resides in California with his adult daughter and Kimmie Park, with whom he has been separated for over a decade.  This is untrue, as described above and in the Second Park Decl.  Mr. Park does not reside in California and has never resided in California, nor does he own the residence where one of his daughters and Kimmie Park reside.  Plaintiff supplies no evidence to the contrary, although it dubiously claims under FRCP 11 that "the evidence supports the conclusion that at the very least Mr. Park resides in both Nevada and California."  This is false—there is not a single shred of evidence that Mr. Park resides in California.  Plaintiff's investigator, who acknowledges having surveilled the home where one of Mr. Park's daughters and Kimmie Park reside, is silent about Mr. Park's presence or lack thereof at the Newport Beach home, and for good reason.  Mr. Park does not live there.

Plaintiff understands this, and tries to excuse its failure to serve Mr. Park by pointing to the fact that Mr. Park subsequently learned about Plaintiff's Complaint.  This is irrelevant.  Plaintiff not only never served Mr. Park, but it never even attempted to personally serve him.  As described in the Motion, under the then-prevailing, pre-removal standard for service of the summons and Complaint, Cal. Civ. Proc. Code § 415.20(b), Plaintiff was required to first show that it could not with reasonable diligence serve Mr. Park before it could even attempt to sub-serve an adult at its home.  Plaintiff and its process server did not do this.  Plaintiff, including its investigator Mr. Beyer, likely know where Mr. Park actually resides in Nevada, but they ignored this information in furtherance of the fiction that Mr. Park is a California resident.

Because Plaintiff never served Mr. Park, this Court lacks jurisdiction over him and therefore should dismiss the Complaint against him for insufficient

12

**DAVID PARK'S REPLY ISO MTD**

service of process pursuant to FRCP 12(b)(5).  *E.g.*, *Wasson v. Riverside Cnty.*, 237 F.R.D. 423, 424 (C.D. Cal. 2006).  The Court should reject Plaintiff's invitation to ignore Plaintiff's willful defiance of the rules governing service.

### C.    *Venue Should be Transferred to Nevada if Any of Plaintiff's Claims Survive*

Plaintiff has failed to satisfy its burden of showing venue is property before this Court.  Venue is improper, and should be transferred to Nevada to the extent any claims survive against Mr. Park.

Given that the unassailable facts establish that Mr. Park and MRB are Nevada residents, Plaintiff must show that "a substantial part of the events or omissions giving rise to the claim occurred" within this judicial district for it to remain venued in this Court.  28 U.S.C. § 1391(b).  Plaintiff does not allege a single fact giving rise to its claims that occurred within this judicial district.  Not one.  Regardless of what dubious basis Plaintiff had to file its Complaint in the Orange County Superior Court of California, there is no plausible basis for this Court to be the venue for this matter moving forward under 28 U.S.C. § 1391.

The factors governing venue all indicate that the matter should be transferred to Nevada.  Mr. Park and MRB are Nevada residents.  MRB's principal place of business is in Henderson, Nevada.  Two other disputes relating to this action are pending in Nevada, one in federal court and one in a private, confidential setting.  To the extent there are California witnesses, they will not be inconvenienced by transfer to Nevada because they will be questioned within 100 miles of their places of business or residence, just as if the matter proceeded in this or any other California federal court.  FRCP 45(c)(1)(A). Nothing alleged in Plaintiff's Complaint actually occurred in California.  Indeed, Plaintiff admits that the vast majority of its contacts with Mr. Park (and presumably, by extension, MRB) were over Zoom, without anyone from MRB physically present in California.  Finally, Plaintiff has elected to sue two Nevada residents with whom it

13

**DAVID PARK'S REPLY ISO MTD**

acknowledges that it had no direct relationship or agreement. Similar to personal jurisdiction, there is simply no reason why Mr. Park and MRB should be forced to travel over state lines to litigate claims in a jurisdiction that is foreign to the allegations against them. The statute governing venue, and public policy, both favor transferring this matter to the United States District Court for the District of Nevada.

### D. Plaintiff Fails to State Any Claims Upon Which Relief May Be Granted Against Mr. Park

Plaintiff's four claims for relief, all of which allege versions of the same thing—interference with prospective economic advantage—all fail to state a claim and should be dismissed.

### 1. Plaintiff Fails to State a Claim for Intentional Interference with Prospective Economic Advantage

The parties agree on the elements of a claim for international interference with prospective advantage, but little else. Plaintiff has failed to allege that Mr. Park engaged in any wrongful conduct beyond the allegation of interference itself, which is fatal to the claim. Plaintiff has not pleaded any particular conduct that is proscribed by some constitution, statutory, regulatory, common law, or other determinable standard, as required by law.

In its Opposition, Plaintiff asserts that MRB allegedly interfered with Plaintiff's prospective business relationships when it terminated its agreement with Greenbax. As noted elsewhere, MRB and Greenbax are parties to confidential proceedings instituted in another forum and hence NBCU's claims in this matter are simply double dipping on those asserted, or that may be asserted in the future, elsewhere. NBCU owns a majority, controlling interest in Greenbax. Similarly, claims that Greenbax customers could not access their banking information do not plausibly form the basis for causes of action by NBCU against MBR or Mr. Park. All of Plaintiff's arguments concerning competition further

14

**DAVID PARK'S REPLY ISO MTD**

solidify the notion that NBCU is simply pursuing claims on behalf of its subsidiary, Greenbax, in a separate forum. Plaintiff's intent is obviously to harass.

Plaintiff has no meaningful response to the argument that it must identify the customers with whom its prospective economic advantage was allegedly interfered. Backtracking, Plaintiff indicates in footnote 6 that it has disclosed "certain witnesses" that may be deposed. It is true that Plaintiff named four such individuals as potential witnesses in its initial disclosures: "Christopher Hester, Greenbax customer and Manager of CRH Enterprise LLC"; "Duncan Ley, Greenbax customer and Partner of Displeased Marmot, LLC dba California Street Cannabis Company"; "Sara Krishnamachari, Greenbax customer and CFO of VMK, Inc."; and "Manuel Semerdijian, Greenbax customer and CEO of Green Dragon". *See* Plaintiff's Initial Disclosures, attached as Exhibit 1 to the Sutehall Decl. If, as Plaintiff implies, these are the alleged, prospective customers whose relationship with Plaintiff MRB and/or Mr. Park supposedly interfered, Plaintiff must plead the same under the authority cited in the Motion. Otherwise, Mr. Park and MRB will be left guessing about Plaintiff's claims.

MRB, which unlike Mr. Park has been properly served with the summons and Complaint and is therefore a proper party to this matter unless and until the Court orders otherwise, served a series of interrogatories on Plaintiff intended to discern the identity of each customer whose prospective relationship with Plaintiff it allegedly interfered. In response Plaintiff failed to identify *a single customer*. *See* Plaintiff's Response to MRB's Interrogatories, Set One, a true and correct copy of which is attached to the Sutehall Decl. as Exhibit 2. Plaintiff has also failed to produce a single document in support of its claims, even though discovery opened two months ago in November 2023 and despite demands from MRB's counsel. Sutehall Decl.[9] Plaintiff cannot reasonably come before this

---

[9] Some of Plaintiff's interrogatory responses assert that information will be provided after a protective order is entered. While documents and information

15

**DAVID PARK'S REPLY ISO MTD**

Court asserting that it need not identify in its Complaint the customers whose prospective relationship with Plaintiff both named Defendants allegedly interfered and then refuse to provide that information in discovery.  Additionally, prevailing case law presumably requires plaintiffs asserting interference claims to identify the individuals with whom a relationship was interfered to both streamline discovery and to permit the defendant to meaningfully defend such claims. Plaintiff's failure to identify any particular relationship with which Mr. Park allegedly interfered eliminates his ability to do either.

Plaintiff's intentional interference claim is defective and should be dismissed.

### 2.    Plaintiff's Negligent Interference With Prospective Advantage Claim Should be Dismissed

Plaintiff's arguments in support of its negligent interference claim mirror those concerning its intentional interference claim. Once again, Plaintiff acknowledges that it is suing Mr. Park based on MRB's shut down of the Greenbax platform, duplicating claims brought by Greenbax elsewhere.  Plaintiff then merely regurgitates statements in its Complaint, but never identifies any conduct that either MRB or Mr. Park allegedly engaged in that negligently interfered with any particular prospective relationship.  As with its intentional interference claim, Plaintiff fails to identify any particular prospective customer that it claims either of the defendants interfered with. The same fatal issues that plague Plaintiff's intentional interference claim apply to its negligent interference claim, and it should be dismissed.

about such customers could potentially be considered confidential, the name and identity of the prospective customers that form the basis of Plaintiff's Complaint cannot possibly be information subject to a protective order, making Plaintiff's responses conditional on the entry of a protective order baseless.

16

**DAVID PARK'S REPLY ISO MTD**

### 3. Plaintiff's Claim for Violations of California Business & Professions Code Sections 17200 Should be Dismissed

Plaintiff's third cause of action, for nonspecific violations of California Business & Professions Code Sections 17200, *et seq.*, it not pleaded with particularity as required by governing law. As discussed in the Motion, such claims must be pleaded with particularity under FRCP 9(b). While Plaintiff meekly asserts that the Complaint "provides sufficient facts to put Defendants on notice of the allegations against them" as to this particular claim, violations of California Business & Professions Code Sections 17200, *et seq.*, are subject to a heightened pleading standard. The Complaint does not, in fact, allege *any* fact with particularity in support of the claim. Defendants do not even articulate which of the two "Defendants", Mr. Park or MRB, did what in particular. Because Plaintiff's statutory claim under the California Business and Professions Code Section 17200 et seq., fails to identify the who, what, when, where, and how of any misconduct alleged against any defendant, it should be dismissed.

### 4. Declaratory Relief is Not a Standalone Cause of Action

Plaintiff fatally contradicts itself in an attempt to save its claim for declaratory relief, which is not, as discussed in the Motion, a standalone cause of action. Plaintiff curiously claims that it seeks a "forward-looking declaration of the rights and obligations of the parties", but on the prior page in its Motion asserts that "there is no contract existing between North Bay and Defendant MRB." Plaintiff cannot have it both ways: insisting that the parties have no relationship while simultaneously asking the Court to enter a declaration about future relationship between the parties. Additionally, while Plaintiff claims that "both sides will continue to have overlapping interest and concerns", it fails to identify how that is the case. Indeed, Plaintiff acknowledges that the parties to this action, in contrast with the pending contractual dispute between Greenbax and

**DAVID PARK'S REPLY ISO MTD**

MRB, have no relationship.  Plaintiff's declaratory relief cause of action should be dismissed for all of these reasons.

## III.    Conclusion

No amendment will overcome the inevitable conclusion that this Court lacks jurisdiction over Mr. Park, and that the other arguments raised form valid bases for dismissal with prejudice. For the reasons set forth above, in the Motion, and in Mr. Park's declarations, the Motion should be granted and Mr. Park should be dismissed from this action without leave to amend.

DATED this 12th day of January, 2024.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/ *Kevin M. Sutehall*
JEFFREY GRANT (SBN 218974)
JOHN SHAEFFER (SBN 138331)
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
jgrant@foxrothschild.com
jshaeffer@foxrothschild.com

KEVIN M. SUTEHALL (SBN 244394)
MARK J. CONNOT (*admitted pro hac vice*)
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV  89135
ksutehall@foxrothschild.com
mconnot@foxrothschild.com
*Attorneys for David Park*

**DAVID PARK'S REPLY ISO MTD**

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for David Park, certifies that this brief contains 5,697 words, which complies with the word limit of L.R. 11-6.1. DATED this 12th day of January, 2024.

FOX ROTHSCHILD LLP

*/s/ Kevin M. Sutehall*
JEFFREY GRANT (SBN 218974)
JOHN SHAEFFER (SBN 138331)
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone:   310-598-4150
Facsimile:    310-556-9828
jgrant@foxrothschild.com
jshaeffer@foxrothschild.com

KEVIN M. SUTEHALL (SBN 244394)
MARK J. CONNOT (*admitted pro hac vice*)
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV  89135
Telephone:   702-262-6899
Facsimile:    702-597-5503
ksutehall@foxrothschild.com
mconnot@foxrothschild.com
*Attorneys for Defendant MRB Direct, Inc.*

**DAVID PARK'S REPLY ISO MTD**

153683169