MARK J. CONNOT (10010)
KEVIN M. SUTEHALL (9437)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
ksutehall@foxrothschild.com
*Attorneys for Defendants MRB Direct, Inc.*
*and David Park*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| NORTH BAY CREDIT UNION, a California nonprofit corporation,<br><br>                                Plaintiff,<br><br>vs.<br><br>MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual; and DOES 1 through 10, inclusive,<br><br>                                Defendants. | Case No.:  2:24-cv-00212-CDS-DJA<br><br>**DEFENDANTS MRB DIRECT, INC. AND DAVID PARK'S MOTION TO DISMISS** |

Defendants MRB Direct, Inc. ("MRB") and David Park ("Mr. Park," and together with MRB, "Defendants") move to dismiss this case for failure to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6).  Mr. Park also moves to dismiss for insufficient service of process pursuant to FRCP 12(b)(5).  For the reasons set forth in the below Memorandum of Points and Authorities, this Court should dismiss Plaintiff North Bay Credit Union's ("Plaintiff's") Complaint for Intentional Interference with Prospective Economic Advantage, Negligent Interference with Prospective Economic Advantage, Violations of Business & Professions Code Sections 17200, *et seq*., and Declaratory Relief (the "Complaint", ECF No. 1-2).

This Motion is based upon the attached Memorandum of Points and Authorities, the pleadings, papers, and other materials on file in this action, the concurrently filed Declaration of Mark J. Connot ("Connot Decl."), and such argument, evidence and additional matters that may be presented at or before the hearing on this Motion should the Court elect to hold a hearing.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.      <u>Introduction</u>

Plaintiff's Complaint is a baseless and retaliatory in nature, as Plaintiff seeks to prosecute contract-based claims against Defendants even though it is a not party to the underlying contract. Indeed, Plaintiff's 75%-owned subsidiary, non-party HigherGrowth LLC d/b/a Greenbax Marketplace Inc. ("HG-GMI"), which was party to an agreement with MRB, brought claims against MRB in a confidential forum, only to subsequently acknowledge in November of 2023 that it was no longer pursuing any claims against MRB. Connot Decl. Undeterred by its subsidiary's admission, Plaintiff seeks to convert that subsidiary's contract dispute into a tort action against MRB and Ms. Park while failing to allege that either did anything wrong. Further undermining itself, Plaintiff bases the Complaint largely on alleged acts and omissions of unnamed third parties. The Complaint states no viable claim against either Defendant and therefore respectfully should be dismissed.

### II.     <u>Relevant Background</u>

Plaintiff filed its Complaint in the Superior Court of the State of California, Orange County, on August 9, 2023. *See* Complaint, ECF No. 1-2. The Complaint contains four causes of action for: (1) intentional interference with prospective economic advantage; (2) negligent interference with prospective economic advantage; (3) "Violation of California Business & Professions Code Sections 17200, et seq."; an (4) declaratory relief. *Id*.[1]

In the Complaint, Plaintiff alleges that HG-GMI, of which Plaintiff owns 75%, contracted with MRB to maintain an online banking platform to customers in the cannabis industry. Complaint at ¶¶ 8-10. Plaintiff alleges that MRB and HG-GMI became engaged in a dispute in 2023 about fees that HG-GMI failed to pay MRB, which eventually resulted in MRB shutting down the banking platform. *Id*. at ¶ 11. Plaintiff alleges that HG-GMI's customers were unable

---

[1] Separate from the arguments raised in this Motion, Plaintiff's claims are subject to a broad arbitration clause in subsection 12.12 of the Master Subscription Agreement (publicly available at: https://www.mrbdirect.com/msa). MRB reserves all rights to move to compel arbitration before the appropriate forum.

to access their banking information after the platform was shut down and asserts that an unnamed "third party" refused to provide those customers with information about their accounts and/or refused to transfer funds to the customers thereafter. *Id*. at ¶ 14.[2] Plaintiff further alleges that Defendants and unnamed "co-conspirators" engaged in unspecified conduct intended to delay the HG-GMI customers' access to their funds for a month if the customers chose to transfer their funds to Plaintiff. *Id*. at ¶¶ 15-16. Plaintiff asserts that HG-GMI customers attempted to, but were somehow thwarted from, transferring their funds to Plaintiff, and that Plaintiff thereafter provided "over $16.4 million" in provisional credit to those customers. *Id*. at ¶¶ 17-18.[3] In summary, Plaintiff does not allege that MRB did anything wrong, and its claims relate solely to MRB's election to terminate the contract between it and HG-GMI. Plaintiff does not allege that Mr. Park did *anything* tortious.

Based on these half-baked, non-specific allegations, Plaintiff asserts three different claims alleging interference with prospective economic advantage against Defendants. Plaintiff does not allege that MRB or Mr. Park did anything in particular to interfere with Plaintiff's prospective economic advantage other than that MRB terminated its agreement with non-party HG-GMI. Indeed, Plaintiff does not allege that MRB—which it acknowledges is a software company—did anything that even arguably would compete with Plaintiff, itself a California credit union. Distilled down, the Complaint primarily alleges that an unnamed third party—but not MRB or Mr. Park, the actual named Defendants—somehow hindered Plaintiff's ability to capture business from its partially-owned subsidiary, HG-GMI, after HG-GMI failed to pay amounts owing to MRB.

Before appearing in the California state court, Defendants filed Defendants' Notice of Removal of Civil Action from State Court, on October 13, 2023. ECF No. 1. Defendants then filed separate motions to dismiss pursuant to FRCP 12 and/or to transfer venue to Nevada in the

---

[2] In reality, HG-GMI and/or Plaintiff failed to timely provide information to the unnamed third party, Austin Capital Trust Company LLC ("ACTC"), about transactions relating to the customers' accounts, which undercut ACTC's ability to assist the customers. ACTC was merely the custodian of the HG-GMI customers' funds.

[3] Understanding that allegations in complaints are generally accepted as true at least for FRCP 12(b)(6) purposes, for the avoidance of doubt, Defendants deny the allegations in the Complaint and preserves all arguments.

3

alternative.  ECF No. 25 and 27.  Overruling Plaintiff's oppositions to the motions, the federal district court in the Central District of California entered an Order Granting Defendants' Motions to Transfer ("Transfer Order") on January 26, 2024.  ECF No. 36.  In the Transfer Order, the California-based federal court found "venue here inappropriate and grants Defendants' motions to transfer," but did not reach the merits of Defendants' motions to dismiss for failure to state a claim or lack of personal jurisdiction.  *Id*. at 3-6.

On March 22, 2024, Plaintiff filed a Local Rule 42-1 Notice of Related Cases, asserting that another matter styled *Austin Capital Trust Company LLC v. North Bay Credit Union et al.*, Case No. 3:23-cv-00444, was related to this dispute.  On April 2, 2024, this matter and the ACTC matter were reassigned to the Honorable District Judge Larry R. Hicks and the Honorable Magistrate Judge Craig S. Denney.  ECF No. 53.

**III.    The Complaint Should be Dismissed**

**A.        *Plaintiff Fails to State a Claim Upon Which Relief May be Granted Against Defendants***

FRCP 12(b)(6) provides that "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion… (6) failure to state a claim upon which relief can be granted." FRCP 8(a)(2) ("Claim for Relief"), in turn, requires that "a pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief."

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), the United States Supreme Court discussed and expounded on its prior decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) as follows:

> As the Court held in *Twombly,* the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-670, 129 S. Ct. at 1949-1950 (internal citations omitted).

Plaintiff's factual allegations about what either of the Defendants did or did not do are not plausible on their face and are conclusory. Additionally, the Complaint contains precisely the kind of threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, that *Iqbal* and *Twombly* hold are inadequate to overcome a motion to dismiss.

As noted above, the Complaint has very few references to Mr. Park. Paragraph 3 of the Complaint (incorrectly) asserted that Mr. Park resides in Irvine, California, that he is an officer,

5

director, or managing agent of MRB, and that he personally directed or participated in the business activities of MRB. Paragraph 9 alleges that Plaintiff sold a 25% interest in non-party HG-GMI, "to Fintech Fund II, an entity controlled by Park." None of these paragraphs assert any acts or omissions, let alone wrongdoing, and they appear solely to attempt to support jurisdictional and venue provisions relating to Mr. Park.

Aside from generic references to "Defendants", discussed further below, paragraphs 11-14 of the Complaint do not mention Mr. Park and instead discuss the breakdown of the relationship between HG-GMI and its software provider, MRB, based on HG-GMI's failure to pay amounts outstanding to MRB.[4] Indeed, paragraph 14 of the Complaint introduces but fails to a name a "third party entity" that allegedly told Plaintiff's customers things in relation to the disabling of the Greenbax platform.

The next reference to Mr. Park is in paragraph 15, which confusingly alleges that:

> North Bay is informed and believes that Defendants were conspiring with others to usurp North Bay's customer relationships by purposefully and wrongfully either refusing to transfer funds to North Bay, or significantly delaying availability to any funds transfers made to North Bay for at least one month. At the same time, Defendants, via the express direction of David Park, and their co-conspirators were offering "immediate access" to funds if the customers would open accounts with one of Defendants ' related entities.

Paragraph 15 vaguely references a conspiracy between "Defendants", Mr. Park (himself a defendant), and unnamed others, who allegedly undertook unidentified acts to delay availability of funds to customers while offering immediate access if customers did business with unnamed entities. Plaintiff also alleges that "Defendants, via the express direction of David Park, and their [unnamed] co-conspirators" offered a service to customers. Perhaps this allegation suggests that Mr. Park directed the only other named defendant, MRB, to do something, or maybe that Mr. Park directed himself to do something. Either way, Plaintiff does not allege that MRB (or Mr. Park, for

---

[4] Greenbax and MRB are parties to confidential proceedings instituted in another forum, the details of which cannot be divulged here but which can be provided for the Court's *in camera* consideration if requested.

that matter) is a bank or financial institution that can "open accounts", rendering confusing allegations indecipherable.

Paragraph 16 contains the next reference to Mr. Park, alleging that:

> Furthermore, the timing of Defendants' shutdown of the Platform was strategically calculated to inflict the most harm by holding North Bay's customers and prospective customers' funds 'hostage' for a month if they opted to transfer their funds to their North Bay accounts. Defendants, via David Park, and their co-conspirators did this while simultaneously and falsely promising that the existing and prospective North Bay customers' funds would be immediately available *if* the customers opted to open an account with one of Defendants' affiliated entities. . . .

This paragraph identifies Mr. Park by name but fails to allege that he did or did not do anything. The reference to "Defendants, via David Park, and their co-conspirators did this…" is again particularly confusing because Mr. Park is named as a defendant, and the only other defendant is MRB. Defendants, including Mr. Park, are left to speculate who they allegedly conspired with and what they supposedly conspired to do.

The only other reference to Mr. Park in the Complaint is in paragraph 23, one of several paragraphs within Plaintiff's first cause of action for intentional interference with prospective economic advantage. Paragraph 23 asserts that "as a direct and proximate result of Defendants' acts and omissions, all as personally directed or participated in by Mr. Park, Plaintiffs business has been disrupted and Plaintiff has suffered and continues to suffer injury, has expended significant monetary sums, and has lost business and goodwill, all in an amount to be proven at trial." Like the remainder of the Complaint, paragraph 23 fails to assert that Mr. Park did or omitted to do anything. Instead, it is a boilerplate recitation of elements of a claim, with the words "all as personally directed or participated in by Mr. Park" tacked on. The Complaint does not identify what Mr. Park actually "personally directed or participated in." The remainder of the Complaint is devoid of any additional allegations against Mr. Park. Nowhere in the second, third, or fourth cause of action does his name appear.

MRB is a software company that operates a banking platform which, per the Complaint, "maintains Greenbax's online banking platform, which allows customers to access their accounts,

7

view deposits, withdrawals and balances, and transfer funds." Complaint, ¶ 10.  Aside from scattered references to "Defendants", discussed further below, the Complaint contains only fleeting references to MRB.  Paragraphs 11-14 of the Complaint discuss the breakdown of the relationship between MRB and HG-GMI based on HG-GMI's failure to pay amounts outstanding to MRB.  Then, paragraph 14 of the Complaint introduces but fails to name the "third party entity" that allegedly told Plaintiff's customers things in relation to the disabling of the Greenbax online banking platform.

Problematically, the Complaint lumps together Mr. Park, MRB, and unnamed "Doe defendants" in what the Plaintiffs define as the plural "Defendants." Complaint, ¶ 4. The Complaint then repeatedly uses the term "Defendants" when making allegations, never specifying which defendant (MRB or Mr. Park or the unnamed Doe defendants) supposedly did what.  This failure to identify which defendant allegedly did what further compounds the problem of Plaintiff's vague factual allegations and legal claims and renders it impossible for MRB to defend the claims against it.  For this reason, the Complaint should be dismissed.

### B.  The First Cause of Action, for Intentional Interference with Prospective Business Advantage, Should be Dismissed

Plaintiff fails to plead a claim for intentional interference with prospective business advantage. In Nevada[5], the elements of the tort of interference with prospective economic advantage are: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by

---

[5] Nevada law governs this matter.  "Nevada has adopted a modified version of the substantial relationship test when addressing conflict-of-law issues concerning tort claims. Under this test, the law of the forum governs, unless another state has an overwhelming interest. An overwhelming interest will exist if two of the following factors are found: (1) it is the place where the conduct giving rise to the injury occurred; (2) it is the place where the injury is suffered; (3) parties have the same domicile, residence, nationality, place of incorporation, or place of business *and* it is different from the forum state; (4) it is the place where the relationship, if any, between the parties is centered." *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1178 (D. Nev. 2003) (internal citations omitted).  No other state has an overwhelming interest in this matter given that none of the four factors are satisfied. Moreover, the California federal court in the Transfer Order made several findings contradicting these factors and expressly held that "resolution of the dispute will likely require application of Nevada law."  Transfer Order at 5.

preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *In re Amerco Derivative Litig.*, 127 Nev. 196, 226, 252 P.3d 681, 702 (2011).

*In Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 199, 591 P.2d 1135, 1136 (1979), the Nevada Supreme Court approvingly cited the California Supreme Court for the proposition that:

> Perhaps the most significant privilege or justification for interference with a prospective business advantage is free competition. Ours is a competitive economy in which business entities vie for economic advantage. In a sense, all vendees are potential buyers of the products and services of all sellers in a given line, and success goes to him who is able to induce potential customers not to deal with a competitor. Thus, as Prosser states: "So long as the plaintiff's contractual relations are merely contemplated or potential, it is considered to be in the interest of the public that any competitor should be free to divert them to himself by all fair and reasonable means."

Internal citations omitted (affirming entry of summary judgment when the plaintiff "neither alleged nor offered any facts from which an inference could be drawn of any resort by respondents to unlawful or improper means"). "A plaintiff must show that the means used to divert the prospective advantage was unlawful, improper or was not fair and reasonable." *Custom Teleconnect*, 254 F. Supp. 2d at 1181.

In its Complaint, Plaintiff offers no allegations that MRB or Mr. Park itself did anything to interfere with Plaintiff's prospective business relationships. Likewise, the Complaint contains no allegation that either of the Defendants did anything that was unlawful, improper, unfair, or unreasonable. Indeed, as described above, the Complaint's only factual allegations against MRB relate to MRB's termination of its agreement with non-party HG-GMI. The Complaint does not allege that Mr. Park engaged in any particular conduct, let alone conduct that was unlawful, improper, or unfair.

Additionally, "Nevada law provides that a privilege or justification exists to defeat an intentional interference with prospective economic advantage claim when a defendant acts to protect its own interests. This privilege applies when a defendant acts to protect the interests they had acquired via a valid contract." *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1185 (D. Nev. 2020) (citing *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 734 P.2d 1221, 1226 (1987)). As described above, the Complaint in general, and Plaintiff's intentional interference

with prospective economic advantage claim specifically, are predicated entirely on MRB's election to disable the online banking platform based on HG-GMI's failure to pay outstanding charges.    MRB, HG-GMI, and HG-GMI's successor-in-interest and "d/b/a" Greenbax Marketplace, Inc., are parties to confidential proceedings relating to this very subject.  In those proceedings, HG-GMI's counsel has admitted that it cannot and is not bringing claims against MRB in relation to the underlying contract.  Accordingly, HG-GMI's parent entity, Plaintiff, has admitted that MRB did nothing wrong with respect to the underlying contract, and therefore MRB is shielded from liability against Plaintiff's interference claim.

On a basic level, the Complaint lacks any allegations about what either of the Defendants did or omitted to do that interfered with Plaintiff's prospective economic advantage.  Plaintiff fails to plead facts which, if true, would entitle it to relief against either of the Defendants.  For all of these reasons, Plaintiff's first claim should be dismissed.

**C.    *The Second Cause of Action, for Negligent Interference with Prospective Economic Advantage, Should be Dismissed***

Nevada does not recognize the tort of negligent interference with prospective economic advantage.  The Nevada Supreme Court has held that:

> The well established common law rule is that absent privity of contract or an injury to person or property, a plaintiff may not recover in negligence for economic loss. Purely economic loss is recoverable in actions for tortious interference with contractual relations or prospective economic advantage, but the interference must be intentional.

*Loc. Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Loc. No. 226 v. Stern*, 98 Nev. 409, 410–11, 651 P.2d 637, 638 (1982) (internal citations omitted); *see also Williams v. Univ. Med. Ctr. of S. Nevada*, 688 F. Supp. 2d 1134, 1140 (D. Nev. 2010) ("Nevada specifically has declined to recognize a tort for negligent interference with economic expectancies.")  Because Plaintiff's negligent interference with prospective economic advantage claim does not exist as a matter of law in Nevada, the Court should dismiss it.

/ / /

/ / /

/ / /

10

**D.      *The Third Cause of Action, for Violations of California Business & Professions Code Sections 17200, is Not Viable in Nevada and Is Not Pleaded With Particularity***

While this Court has on occasion addressed claims pursuant to California Business & Professions Code Sections 17200 in unique circumstances, the claim is not sustainable before this Court against Defendants.   *E.g.*, *Zizi v. Republic Mortg., LLC*, No. 2:12-CV-00018-GMN, 2013 WL 1249654, at *5 (D. Nev. Mar. 27, 2013) ("Plaintiff's sixth cause of action asserts violations of California law, which are obviously not recognized as causes of action in Nevada"). Additionally, the California federal court previously entertaining this action held in the Transfer Order that "resolution of the dispute will likely require application of Nevada law."  Transfer Order at 5. There is no plausible basis to subject Defendants, both Nevada residents, to California statutory law claims in this Court.

Even if the Court holds that Plaintiff may maintain the California statutory claim under California Business & Professions Code Sections 17200, *et seq.*, in this Nevada court, the claim should be dismissed because it is not pleaded with particularity as required for causes of action asserting fraud.  Paragraph 31 of Plaintiff's Complaint, within the third cause of action, alleges that "Defendants continue to deny North Bay's prospective customers access to their online accounts at Greenbax and the ability to transfer funds to North Bay based upon their express directions. These activities constitute unlawful, unfair *and fraudulent* business acts and practices under California Business and Professions Code sections 17200, *et seq.*" (emphasis added). Paragraphs 32 and 33 also reference "unlawful, unfair or fraudulent business acts and practices."

Pursuant to FRCP 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.  Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.  A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

2009) (internal citations omitted).  The Ninth Circuit in *Kearns* specifically held that "the UCL [Cal. Bus. & Prof. Code §§ 17200–17210] prohibits 'unlawful, unfair or fraudulent business act[s] or practice[s]' and 'unfair, deceptive, untrue or misleading advertising.' Rule 9(b)'s particularity requirement applies to these state-law causes of action. In fact, we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." *Id*. at 1125 (*citing Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-1105 (9th Cir. 2003)).

Additionally, California courts have repeatedly held that claims rooted in Section 17200 must plead or allege that a business practice independently forbidden by law has occurred. *Babb v. Wachovia Mortg., FSB*, No. SA CV 12-02038 BRO, 2013 WL 3985001, at *7 (C.D. Cal. July 26, 2013) (*citing Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1143, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003)).[6] Similarly, defendants cannot be found liable for committing "unlawful business practices" under Section 17200 without having violated another law. *Id.* (citing *Ingels v. Westwood One Broad. Serv., Inc.,* 129 Cal.App.4th 1050, 1060, 28 Cal. Rptr. 3d 933 (2005)).

Like all of the Complaint, the third cause of action is nonspecific.  It fails to allege what provision of California Business & Professions Code Sections 17200, et seq., either of the Defendants allegedly violated.  It fails to identify what MRB allegedly did that violated any particular provision of California Business & Professions Code Sections 17200, et seq.  The Complaint lacks the "the who, what, when, where, and how" required in claims averring fraud.  It also fails to allege that either of the Defendants committed violated another law.

Further, where a complaint has multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65

---

[6] Citations in this Motion to California state and federal courts interpreting the California Business & Professions Code Sections 17200, *et seq*, should not be construed as an admission or acknowledgement that California law governs this matter.  To the contrary, Nevada law governs. *See* FN 5.  The California authorities in this brief are presented solely because the Complaint includes a California statutory claim and therefore the vast majority of law interpreting that claim comes from California's courts.

(9th Cir. 2007) (internal citations, quotations marks, and alterations omitted).  "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme to satisfy the fraud pleadings rule."  *Oaktree Cap. Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1074 (D. Nev. 2013) (*citing Swartz*, 476 F.3d at 764). Here, Plaintiffs have not differentiated what fraudulent actions were taken by MRB and which have been taken by Mr. Park, and instead conflates them with unnamed Doe defendants.

For all of these reasons, the third cause of action should be dismissed as to MRB.

### E.      Plaintiff's Claim for Declaratory Relief is Not a Proper Cause of Action

The court should dismiss the declaratory relief claim because it is not an independent claim but rather a form of relief which is already asserted in Plaintiff's other causes of action. "[G]enerally, declaratory relief and injunctive relief are remedies, not independent causes of action." *Desirous Parties Unlimited Inc. v. Right Connection Inc.*, No. 2:21-CV-01838-GMN-BNW, 2024 WL 987980, at *6 (D. Nev. Mar. 6, 2024).  This Court has held that:

> Courts often dismiss declaratory relief and injunctive relief claims when they are accompanied by other substantive claims. *Winnemucca Indian Colony v. U.S. ex rel. Dept. of the Interior*, No. 3:11-cv-00622-RCJ-VPC, 2012 WL 78198 at *6 (D. Nev. Jan. 10, 2012). The Declaratory Judgments Act "does not create new substantive rights, but merely expands the remedies available in federal courts." *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014). That is not to say that a claim for declaratory relief may never stand on its own. To survive on its own, a claim for declaratory relief must be justiciable, and the Court must have jurisdiction. *Id.* In short, there must be a substantial controversy between adverse parties of such "immediacy and reality to warrant ... a declaratory judgment."

*V5 Techs., LLC v. Switch, Ltd.*, No. 2:17-CV-2349-KJD-NJK, 2019 WL 13157438, at *1 (D. Nev. Sept. 25, 2019).

Plaintiff's claim for declaratory relief is not justiciable.  "In [a] declaratory judgment action, in which subject matter jurisdiction is based solely on diversity, the question whether a justiciable controversy exists within the purview of the Declaratory Judgment Act, 28 U.S.C. § 2201, is determined by federal law." *Hunt v. State Farm Mut. Auto. Ins. Co.*, 655 F. Supp. 284, 286 (D. Nev. 1987).

> Unless an actual controversy exists, the Court is without power to grant declaratory relief. 28 U.S.C. § 2201. . . . The key question is "whether ...

> there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972), *quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

*Id*. Plaintiff outright admits in its Complaint that it has no direct relationship, contractual or otherwise, with Defendants. This is not a matter where, for example, Plaintiff seeks a judicial declaration about a contract provision between it and Defendants. Plaintiff does not allege that it and Defendants have any adverse legal interests, and in fact acknowledges that its only indirect link to the underlying dispute is its majority ownership of HG-GMI. Indeed, in paragraph 38 of the Complaint, Plaintiff requests a judicial determination "of its rights and duties" despite failing to allege that it or Defendants owe or ever owed duties to each other.

Plaintiff also seeks "a declaration that Defendants should allow North Bay's customers and prospective customers access to their online accounts serviced by Greenbax and not interfere with any transfer of their funds to other or existing or new North Bay accounts." Complaint at ¶ 38. This request expressly contradicts Plaintiff's other allegations in the Complaint alleging that the unidentified "third party"—and not Defendants—"stated that they could not even provide the customer account balances . . . and further refused to process transfers to the customers' directed financial institution." *Id*. at ¶ 14. Put another way, Plaintiff seeks a judicial declaration as to MRB and Mr. Park for act or omission that it suggests that an unnamed third party failed or refused to do. Plaintiff's declaratory relief claim simultaneously makes no sense and is not justiciable.

The declaratory relief seeks relief that is duplicative of its other claims. Plaintiff's first three claims, all brought under theories sounding in interference with prospective economic advantage, seeks both monetary damages and injunctive-type relief. The declaratory relief claim seeks the same thing, in Plaintiff's own convoluted words "the intervention of this Court to resolve all disputes that have or may arise with respect to the resolution of the legal issues and disputes described herein and to issue a declaration of the parties' respective rights and obligations pertaining thereto." Complaint at ¶ 39. "The Court may dismiss a stand-alone declaratory relief claim if it is redundant or will be resolved by the parties' substantive claims. This is so because the Declaratory Judgments Act only provides a 'new form of relief where needed,' but does not

14

'furnish a litigant with a second cause of action for the determination of identical issues.'" *V5 Techs., LLC*, 2019 WL 13157438, at *2. Plaintiff's final claim does precisely what is prohibited by asking the Court to issue a declaration about the "legal issues and disputes described herein", which legal issues and disputes are addressed within other claims. For all of these reasons, Plaintiff's declaratory relief claim should be dismissed.

### F.      *Plaintiff Has Not Served Mr. Park*

Prior to transfer, Mr. Park moved to dismiss the Complaint on four separate grounds, for Plaintiff's failure to serve him, lack of personal jurisdiction, failure to state a claim, and for improper venue. ECF No. 27. In the Transfer Order, the California federal court held ordered that the matter be transferred to this district, but it did not reach the merits of other arguments. In light of the Transfer Order to this Nevada court, Mr. Park's argument that the California court lacked personal jurisdiction over him is moot.

Plaintiff has, for unknown reasons, elected not to rectify its failure to even attempt to serve Mr. Park with the summons and Complaint. Plaintiff did not personally serve Mr. Park. Plaintiff's process server allegedly left a copy of the Summons and Complaint at a residential address in Laguna Beach, California, on or about September 16, 2023. *See* Proof of Service Summons, ECF No. 1-2 at 18-19. The documents were allegedly served on "Lisa Park".[7] ECF No. 1-2 at 20. Plaintiff's process server also purportedly mailed a copy of the Summons and Complaint to the same residential address in Laguna Beach, California on September 20, 2023. ECF No. 1-2 at 22.

Mr. Park is not a resident of the address at which Plaintiff attempted to serve him and has never resided there. *See* Declaration of David Park filed in support of prior motion to dismiss ("Park Decl."), ECF No. 27-1.[8] Mr. Park is a resident of Las Vegas, Nevada. *Id*.; see also Transfer Order at 5 (California federal court holding that "Defendant David Park is a Nevada resident and

---

[7] Mr. Park does not know who "Lisa Park", the person identified in the certificate of service, is. Park Decl.

[8] "Unless the defect in service is established on the face of the return, defendant's motion to dismiss (or 'quash service') must be supported by declaration or other form of admissible evidence establishing the lack of proper service." *Zorikova v. Kineticflix, LLC*, No. 2:19-CV-04214-ODWGJSX, 2019 WL 5102572, at *2 (C.D. Cal. Oct. 10, 2019).

has never resided in California.") The address where Plaintiff purported to serve Mr. Park in California is a residence occupied by Kimmie Park, with whom Mr. Park has been separated for years, and their daughter.  Park Decl.  Ms. Kimmie Park told the process server that Mr. Park did not reside at the home, but the process server was undeterred and dropped the Summons and Complaint on the porch after stating something to the effect of: "I was told to just leave it."  *Id.* Kimmie Park initially made Mr. Park aware of the improperly served Complaint.  *Id.*

When a case is removed from state court to federal court, state law governs the question of whether pre-removal service of process was sufficient. *Whidbee v. Pierce Cnty.*, 857 F.3d 1019, 1023 (9th Cir. 2017).  Service on Mr. Park was attempted before the matter was removed, so California state law governs.  At the time of purported service, the matter was pending in California, and Cal. Civ. Proc. Code § 415.10 provides that "a summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served.  Service of a summons in this manner is deemed complete at the time of such delivery."  Cal. Civ. Proc. Code § 415.20(b), which Plaintiff and its process server presumably rely upon for service on Mr. Park, provides in relevant party that:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, . . . in the presence of a competent member of the household . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.[9]

In the event that Nevada procedural law governs service despite Plaintiff's failure to serve Mr. Park in Nevada, NRCP 4.2(a) provides that service may be made on an individual by delivering a copy of the summons and complaint to the individual personally; by leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with a person of suitable age and discretion who currently resides therein and is not an adverse party to the individual being

---

[9] Incidentally, the record is devoid of any suggestion that the Summons and Complaint could not with reasonable diligence be personally delivered to Mr. Park.

served; or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process.

Plaintiff failed to serve Mr. Park regardless of which state's procedural law on service applies.  Because the residential address in Laguna Beach at which Plaintiff purported to serve Mr. Park is not his residence, dwelling, usual place of abode, or mailing address, service was improper. Because Plaintiff failed to serve Mr. Park, the Court lacks jurisdiction over him and therefore should dismiss the Complaint against him for insufficient service of process pursuant to FRCP 12(b)(5).  *See Denson v. Gillespie*, No. 2:10-CV-0525-APG-VCF, 2013 WL 5838254, at *2 (D. Nev. Oct. 29, 2013) (*citing Direct Mail Specialists v. Eclat Computerized Techs., Inc.,* 840 F.2d 685, 688 (9th Cir. 1988) ("if the plaintiff does not properly effect service under Rule 4, the court does not have personal jurisdiction over the defendant").

FRCP 4(m) provides in relevant part that "if a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Plaintiff filed its Complaint on August 9, 2023.  *See* Complaint, ECF No. 1-2.  Plaintiff knew about its failure to serve Mr. Park by no later than November 15, 2023, when Mr. Park filed his first motion to dismiss. ECF No. 27.  Nonetheless, Plaintiff has failed to serve Mr. Park in the nine-plus months since filing the Complaint.  Plaintiff cannot plausibly claim that its failure to serve Mr. Park was based on good cause.  The Court should dismiss the Complaint as to Mr. Park because Plaintiff refuses to properly serve him.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

17

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint.

DATED this 21st day of May, 2024.

**FOX ROTHSCHILD LLP**


*/s/ Kevin M. Sutehall*
MARK J. CONNOT (10010)
KEVIN M. SUTEHALL (9437)
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
mconnot@foxrothschild.com
ksutehall@foxrothschild.com
*Attorneys for Defendants MRB Direct, Inc.
and David Park*

18

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Fox Rothschild LLP, and that on the 21st day of May, 2024, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, I served a true and correct copy of the foregoing **DEFENDANTS MRB DIRECT, INC. AND DAVID PARK'S MOTION TO DISMISS** via the Court's CM/ECF system.


*/s/ Jineen DeAngelis*
An Employee of Fox Rothschild LLP

19

157448349