MARK J. CONNOT (10010)
KEVIN M. SUTEHALL (9437)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
ksutehall@foxrothschild.com
*Attorneys for Defendants MRB Direct, Inc.*
*and David Park*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NORTH BAY CREDIT UNION, a California nonprofit corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.: 2:24-cv-00212-JCM-CSD<br><br>**DEFENDANTS MRB DIRECT, INC. AND DAVID PARK'S REPLY TO PLAINTIFF NORTH BAY CREDIT UNION'S OPPOSITION TO MOTION TO DISMISS** |

## I.     **INTRODUCTION**

Defendants MRB Direct, Inc. ("MRB") and David Park ("Mr. Park", and together with MRB, "Defendants"), submit this Reply to Plaintiff North Bay Credit Union's ("Plaintiff's") Opposition to Defendant MRB Direct, Inc. and David Park's Motion to Dismiss [ECF No. 66] (the "Opposition").  The Opposition seeks to relitigate settled issues while retreading other rejected arguments.  Plaintiff ignores the holdings by the Honorable Judge O. David Carter from the United States District Court for the Central District of California within the Transfer Order that contradict Plaintiff's arguments.  Nevada law governs this dispute, but under Nevada or California law, the Complaint should be dismissed in its entirety.

## II.    **NEVADA LAW GOVERNS**

Plaintiff is correct that what state's law governs is a threshold consideration that merits an early decision.  Because the Complaint relies on California common law and statutory law, Plaintiff has no choice but to argue that California law governs or else risk dismissal of some or all of its claims.  This is why Plaintiff dedicates several pages to the choice of law issue and then ultimately decides the issue in its own favor by citing California authorities throughout the Opposition.  Perhaps the Court will determine that the choice of law issue merits separate and more fulsome briefing.  Defendants respectfully submit that doing so is unnecessary because Nevada law governs regardless of the applicable standard. The Court need look no further than prior holdings of its sister court in this matter to decide facts that lead to the conclusion that Nevada's laws, and them alone, govern the dispute regardless of whether modified version of the substantial relationship test or the overwhelming interest test apply.

Under the Second Restatement's significant relationship test, seven additional considerations from those in the modified substantial relationship test[1] are analyzed.  *General*

---

[1] As noted in the Motion, the "overwhelming interest test" provides that "the law of the forum governs, unless another state has an overwhelming interest. An overwhelming interest will exist if two of the following factors are found: (1) it is the place where the conduct giving rise to the injury occurred; (2) it is the place where the injury is suffered; (3) parties have the same domicile, residence, nationality, place of incorporation, or place of business *and* it is different from the forum state; (4) it is the place where the relationship, if any, between the parties is centered." *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1178 (D. Nev. 2003).

*Motors Corp. v. Eighth Judicial District Court*, 122 Nev. 466, 474, 134 P. 3d 111, 117-118 (2006) (holding that "these principles are not intended to be exclusive and no one principle is weighed more heavily than another"). Plaintiff spends several pages of its response discussing the standard governing choice of law considerations in tort cases.[2] Then, tellingly, Plaintiff fails to address any of those factors, and reverts to a discussion about personal jurisdiction, which is not before the Court.[3] Opposition at 5:9-8:6 and 8:8-9:23. Defendants submit that none of the choice of law factors could or should cause this Nevada Court to apply California law. While Defendants can, and if requested by the Court, will, in detail analyze each of the seven factors from the Second Restatement and cited in *General Motors Corp.*, plus the four additional factors cited in *Custom Teleconnect*, doing so threatens to swallow this brief in substance with a perhaps theoretical and unnecessary discussion. Rather than doing, Defendants direct the Court's attention to findings and holdings that have already been entered by a California federal court *in this case*.

In the Transfer Order, the Honorable Judge David O. Carter assessed governing law considerations and concluded that Nevada law likely applies. In doing so, Judge Carter held that Nevada has the most significant relationship to the claims. Choice of law was not directly at issue in the underlying motion practice that led to the Transfer Order, but which state's law governs the dispute was a key factor in the decision. Judge Carter made factual findings and legal conclusions leading his court to conclude that "resolution of the dispute will likely require application of Nevada law, with which Nevada courts are more familiar." Transfer Order at 5. Indeed, Judge

[2] Defendants discussed the choice of law standard in footnote 5 of the Motion largely because the issue appeared largely resolved based on Judge Carter's holdings in the Transfer Order. For Plaintiff to claim that Defendants waived choice of law arguments by addressing them solely in a footnote, particularly in light of the Transfer Order, is simply erroneous. Plaintiff's sole citation to the authority that arguments made solely in footnotes are generally deemed waived is distinguishable. Moreover, Plaintiff fails to note that in the sole case it cites, *Goldman v. Vigilant Ins. Co.*, 632 F. Supp 3d 1188, 1197, FN. 60 (D. Nev. 2022), Judge Dorsey stated in the very next sentence that "I nevertheless address the merits of this argument."

[3] Defendants vociferously object to Plaintiff's suggestion that Judge Carter "rejected any lack of personal jurisdiction claim" in the Transfer Order. Opposition at 8:22, FN 7. In the Transfer Order, Judge Carter held that "as the Court finds venue here inappropriate and grants Defendants' motions to transfer, t*he Court does not reach here the merits of Defendants' motions to dismiss for failure to state a claim or lack of personal jurisdiction*." Transfer Order at 3 (emphasis added). Plaintiff is either confused or disingenuous arguing that the California court ruled on Defendants' personal jurisdiction arguments.

Carter considered and rejected Plaintiff's arguments that California law should govern the dispute. Plaintiff omits this discussion in its Opposition, but the California federal court's key and most pertinent findings and holdings are important to review:

> [W]hile Plaintiff argues that this Court is a more appropriate forum given its familiarity with California law, they fail to demonstrate that California law will apply to this dispute. . . . Plaintiff reasons that the majority of the customers who had their account access disabled were located in California. Defendants' actions which are the focus of this lawsuit, however, occurred in Nevada. Defendant MRB is a Nevada corporation with its principal place of business in Henderson, Nevada. Defendant David Park is a Nevada resident and has never resided in California. Plaintiff does not dispute that Defendants' actions occurred in Nevada. Indeed, Plaintiff admits that the vast majority of its contacts with Mr. Park and MRB were over Zoom, without anyone from MRB physically present in California. These facts indicate resolution of the dispute will likely require application of Nevada law, with which Nevada courts are more familiar. Therefore, this factor weighs in favor of transfer. . . . Further, while recognizing California's interest in protecting its residents and businesses, the Court agrees with Defendant that Nevada courts have at least an equal interest in hearing cases involving Nevada businesses.

Transfer Order at 5.  Judge Carter's holdings powerfully contradict Plaintiff's arguments.

Plaintiff asks this Court to ignore the findings of its sister court.  While the doctrines of res judicata, collateral estoppel, and law-of-the-case may not apply because of unique requirements of each[4], Plaintiff cites no authority for the proposition that this Court should give *no* consideration to Judge Carter's findings and holdings in the Transfer Order.  Plaintiff's arguments are borderline disrespectful of that ruling and the Court entering it.  Plaintiff is certainly misguided suggesting that the Transfer Order is not entitled to any credence or precedential value.

Plaintiff cites a single opinion from within this judicial district, *Sivil v. Country Mutual Insurance Company*, 619 F. Supp. 3d 1072, 1077 (D. Nev. 2022), where the Honorable Judge Jennifer Dorsey held that Alaska law applied to an insurance dispute involving contract- and tort-based claims.  This appears to be the only opinion Plaintiff could locate from the District of Nevada

---

[4] Collateral estoppel is closest to being on point but likely does not apply because "the initial ruling must have been on the merits and have become final." *Kahn v. Morse & Mowbray*, 121 Nev. 464, 474, 117 P.3d 227, 234–35 (2005); *see also Davis v. Living Tr. of Michael J. Fitzgerald*, No. 2:12-CV-1939 JCM NJK, 2013 WL 3427904, at *5 (D. Nev. July 8, 2013) (adopting standard from *Kahn*).  Whether the Transfer Order is "final" is debatable.

containing such a finding. After citing the United States Supreme Court for the proposition that "a federal court sitting in diversity ordinarily must follow the choice-of-law rules of the state in which it sits,"[5] the Court in *Sivil* considered whether to apply Alaska law to the plaintiff's claims. The facts in *Sivil* were readily distinguishable from those present here, involving claims for breach of contract and insurance bad faith relating to denial of an insurance claim. In *Sivil*, the Court held that Alaska tort law governed because, among other things, the underlying insurance policy related to an Alaska home and therefore Alaska had the most significant relationship to the claims. *Sivil v. Country Mut. Ins. Co.*, 619 F. Supp. 3d at 1078. *Sivil* offers little to no guidance to this Court given the matters' factual dissimilarities.

Lastly, in an ironic argument, Plaintiff claims that California law should apply because "MRB created a service platform for a California business to be used to service California residents." Opposition at 8:22-8-23. Plaintiff asserts that these alleged facts militate toward application of California law. Plaintiff's argument omits one critical fact about MRB's relationship with Plaintiff's subsidiary, HG-GMI: the underlying Master Subscription Agreement between the entities *contains a Nevada choice of law provision*. As noted in Motion FN1, that Master Subscription Agreement ("MSA") is publicly available at https://www.mrbdirect.com/msa. Section 12.10 of the MSA provides that "this Agreement and the legal relations between the Parties shall be governed by and construed in accordance with the laws of the State of Nevada." The MSA does not govern the relationship between Plaintiff and Defendants because there was never a direct relationship between the two. However, in addition to expressly relying on that relationship in its Opposition, Plaintiff's minimal and nonspecific facts and allegations in the Complaint are entirely derivative of the breakdown of the MSA based on HG-GMI's failure to pay MRB for services rendered. Plaintiff's insistence that California law governs smacks of improper shopping for "preferable" state laws in violation of the long-standing principle that courts typically apply the law of their forum state.

---

[5] Citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 65, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013) and *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010).

III.    **EACH OF PLAINTIFF'S CLAIMS FAIL**

In response to the Motion, Plaintiff regurgitates, and sometimes re-characterizes, allegations in the Complaint, and then begs the Court to find that they are "plausible" enough to warrant proceeding to discovery.[6]  Plaintiff entirely fails to address or even acknowledge the glaring deficiencies in the Complaint, including its failure to allege any acts that either Defendant committed to perpetrate alleged intentional torts.

In the interest of covering bases, the following subsections discuss reasons why specific causes of action in the Complaint should be dismissed even if the Court elects to apply California substantive law.  Indeed, additional persuasive arguments exist for why California's versions of certain causes of action must be dismissed here based on heightened pleading and substantive legal standards.  Defendants waive no arguments about the choice of law by addressing the hypothetical situation where California law is deemed to govern the case.

A.    **Plaintiff's Intentional Interference with Prospective Economic Advantage Claim Fails Under Nevada and California Law**

In its Opposition, Plaintiff fails to present any legitimate arguments addressing the fatal flaws of its intentional infliction of emotional distress claim.  To reiterate the central argument in the Motion, the Complaint contains no factual allegations about what MRB or Mr. Park actually did or omitted to do.  The Complaint fails to assert that either Defendant took any specific actions except that MRB terminated its Agreement with HG-GMI after the latter failed to pay outstanding

---

[6] Plaintiff's insistence that discovery is both warranted and will validate its arguments is improper in light of Plaintiff's own refusal to meaningfully engage in discovery to date.  On May 9, 2024, Plaintiff moved to stay discovery in this case and in the related matter of *Austin Capital Trust Company LLC v. North Bay Credit Union et al*, case no. 3:23-cv-00444-MMD-CSD.  ECF No. 58 (this matter).  Before that, on January 8, 2024, and while the matter was pending in California Plaintiff served responses to MRB's document requests that robotically objected and then stated the following *23 times*: Plaintiff "is willing to meet and confer . . . in a good faith effort to reach agreement on an appropriate scope for this Request and an appropriate protective order."  Plaintiff never followed up on the proposed meet and confer, apparently deciding that making such an offer constituted an adequate response to MRB's document requests.  Plaintiff also failed to respond to MRB's redline edits to a previously circulated draft protective order and accompanying email, which MRB's counsel sent on January 19, 2024.  Plaintiff has therefore effectively blocked discovery and asked that the Court stay discovery while now insisting that it should be entitled to discovery to support its defective allegations and claims.

5

invoices.  Plaintiff then relies on hearsay representations supposedly made by an unnamed third party to HG-GMI's customers.  The Complaint is hopelessly defective.

This fundamental problem is heightened as to Mr. Park. As set forth in the Motion, the Complaint primarily alleges that Mr. Park is an "officer, director, or managing agent of MRB" that "personally directed or participated in the business activities of MRB."  Complaint at ¶ 3.  Even assuming that this allegation is true for present purposes (and it is at least in part untrue), Plaintiff cites no authority for the proposition that an officer, director, or managing agent of a business entity is automatically liable should the entity commit a tort (which is expressly denied).  Instead of alleging that Mr. Park did or failed to do anything in particular, or that he was an alter ego of MRB or any other plausible theory, Plaintiff's Opposition focuses on the alleged harm to third parties, the unidentified HG-GMI customers, or other extraneous and irrelevant facts such as Plaintiff's claim that it extended credit to customers.[7]

Plaintiff also raises the curious argument that Defendants' somehow intended to usurp Plaintiff's business opportunities, but the allegation is nonsensical and implausible.  Plaintiff is a financial institution.  MRB, by Plaintiff's own allegation, creates software. Complaint at ¶ 10.  Mr. Park is an individual.  Neither Defendant is a financial institution.  Plaintiff fails to explain how either Defendant even theoretically usurped Plaintiff's business opportunities based on these allegations.

The remainder of Plaintiff's argument recites grievances that it or perhaps HG-GMI has allegedly received from HG-GMI's customers.  Notably, none of those customers have asserted claims against MRB, Mr. Park, or any related entity.  Those grievances, if true, have little to nothing to do with Defendants.  Instead, it was HG-GMI, Plaintiff's subsidiary, that failed to pay its invoices from MRB, which led to the shutdown of the Greenbax platform.  If Plaintiff has any claim relating to the issues that its prospective customers allegedly suffered, Plaintiff should look no further than to its own subsidiary.  As noted in the Motion, HG-GMI is not pursuing claims

---

[7] Presumably Plaintiff extended credit at a non-zero interest rate, and it is therefore hard to comprehend how extending credit to potential or actual customers harmed Plaintiff.

6

against MRB or Mr. Park relating to the breakdown of the HG-GMI relationship, including for breach of contract or otherwise.

Changing gears, if California law is applied, there are additional grounds to dismiss the intentional interference claim. To plead a claim for intentional interference with prospective business advantage in California, a plaintiff must allege "(1) a specific economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts." *Panavision Int'l, L.P. v. Toeppen,* 945 F.Supp. 1296, 1305 (C.D. Cal. 1996) (citing *Eichman v. Fotomat Corp.,* 871 F.2d 784, 800 (9th Cir. 1989)).

In California, it was once "settled that an affirmative defense to the tort of interference with prospective economic advantage [wa]s the privilege of competition." *San Francisco Design Ctr. Associates v. Portman Companies,* 41 Cal.App.4th 29, 40, 50 Cal.Rptr.2d 716 (1995). It was equally settled that, to "defeat the privilege the defendant's conduct [had to] be unlawful or illegitimate." *Id.* at 42, 50 Cal.Rptr.2d 716; *A–Mark Coin Co. v. General Mills, Inc.,* 148 Cal.App.3d 312, 324, 195 Cal.Rptr. 859 (1983) ("'[I]t is no tort to beat a business rival to prospective customers. Thus, in the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiations behind the plaintiff's back, *refuse to deal with him* or threaten to discharge employees who do, or even refuse to deal with third parties unless they cease dealing with the plaintiff, all without incurring liability.'"

In *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995), however, the California Supreme Court "disapproved of treating the defendant's justification, or privilege to interfere with prospective economic relations as an affirmative defense. Rather, '[i]n light of the particular importance of free competition in the area of noncontractual business relations, it held instead that... 'a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as

part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.' " *Gemini Aluminum Corp. v. California Custom Shapes, Inc.,* 95 Cal.App.4th 1249, 1256, 116 Cal.Rptr.2d 358 (2002) (quoting *Westside Ctr. Associates v. Safeway Stores 23, Inc.,* 42 Cal.App.4th 507, 521 n. 16, 49 Cal.Rptr.2d 793 (1996) (in turn citing *Della Penna,* 11 Cal.4th at 393, 45 Cal.Rptr.2d 436, 902 P.2d 740 (emphasis in *Gemini* removed)). Stated differently, after *Della Penna,* the competition privilege is no longer an affirmative defense; "[i]t is ... the plaintiff's burden to prove, as an element of the cause of action itself, that the defendant's conduct was independently wrongful." *Hsu v. OZ Optics Ltd.,* 211 F.R.D. 615, 620 (N.D. Cal. 2002).

Plaintiff has failed to allege any conduct that is "wrongful 'by some measure beyond the fact of the interference itself.'" *Della Penna,* 11 Cal.4th at 393, 45 Cal.Rptr.2d 436, 902 P.2d 740. To satisfy this element, Plaintiff must plead conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1159, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003).  The Complaint fails to do so.

While fraud and misrepresentation can constitute independently wrongful conduct to support a claim for intentional interference with prospective economic advantage, those allegations must satisfy Federal Rule of Civil Procedure ("FRCP") 9(b). *See BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*, No. CV10–01053 SI, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010).  Here, Plaintiff has not adequately pled a separate cause of action such as fraud as the basis of independently wrongful conduct, therefore it fails to allege a cause of action for interference with prospective business relations.

Further, under California law, the intentional interference claim should be dismissed because Plaintiff does not identify any prospective business relationship with which it interfered. "Courts have held that, in order to state a claim for intentional interference with prospective business advantage, it is essential that the [claimant] allege facts showing that [d]efendant interfered with [a] relationship with a particular individual." *Damabeh v. 7–Eleven, Inc.,* No. 12–

CV–01739 LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,* No. CV 10–5696 CRB, 2013 WL 3460707, at *7 (N.D. Cal. July 9, 2013) ("Amaretto argues that Ozimals was 'well aware that Amaretto had economic relationships with Second Life customers' and that Ozimals intentionally disrupted Amaretto's business during the holiday season by publishing defamatory statements and committing trade libel. But, in order to state a claim for intentional interference with prospective business advantage, it is essential that the plaintiff allege facts showing that the defendant interfered with the plaintiff's relationship with a particular individual"). Allegations that a defendant interfered with a relationship with a "prospective" customer will not suffice. See, e.g., *Westside Ctr. Associates,* 42 Cal.App.4th at 527 ("without an existing relationship with an identifiable buyer, [plaintiff's] expectation of a future sale was 'at most a hope for an economic relationship and a desire for future benefit'"). Here, none of Plaintiff's customers or purported prospective customers been individually identified.

For all of these reasons and those described in the Motion, the claim should be dismissed against both Defendants.

**B.    Plaintiff's Negligent Interference with Prospective Advantage Claim Fails**

Plaintiff lacks any legitimate argument that its negligent interference claim is plausible under Nevada or California law. Plaintiff admits that Nevada does not recognize negligence claims unless the party alleging it asserts injury to person or property. Plaintiff then argues that it suffered property damage because "Defendants' conduct rendered Greenbax worthless and unusable, and North Bay lost all the value it invested in it." Opposition at 13:1-13:2.

Plaintiff's allegation about the lost value of its investment in HG-GMI is nowhere to be found in the Complaint. Even if the Complaint did include allegations about Plaintiff's investment in HG-GMI, Nevada has apparently never recognized diminution in value of an investment as "property damage" for purposes of evading the economic loss doctrine in support of a negligence claim. Undersigned counsel found no such authority after performing searches on Westlaw. More importantly, Plaintiff cites no such authority in its Opposition. Additionally, and as noted elsewhere, Greenbax itself has acknowledged that it has no claims against MRB.

9

Plaintiff also fails to contradict authority cited in the Motion from this district holding that "Nevada specifically has declined to recognize a tort for negligent interference with economic expectancies." *Loc. Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Loc. No. 226 v. Stern*, 98 Nev. 409, 410-411, 651 P.2d 637, 638 (D. Nev. 2010). Thus, even if Nevada recognized negligence claims alleging "property damage" for loss of the value of an investment—and it does not—Plaintiff cannot use a negligent interference with prospective economic advantage claim as the vehicle to bring such a claim.

If California law applies, Plaintiff's negligent interference claim fails as a matter of law because of nuanced requirements within the state's law that Plaintiff has failed to satisfy. The California tort of negligent interference with prospective business advantage has many of the same elements as a California intentional interference with prospective business advantage claim. To plead such a claim adequately, a plaintiff must allege that "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786, 69 Cal. Rptr. 2d 466 (1997).

As with a claim for intentional interference with prospective business advantage, "a plaintiff alleging negligent interference with prospective business advantage must identify with particularity the relationships or opportunities with which [d]efendant is alleged to have interfered." *Damabeh,* 2013 WL 1915867, at *10; *Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.,* No. 11–CV–565–L–WVG, 2011 WL 5360074, at *5 (S.D. Cal. Nov. 3, 2011) (finding an "allegation that the defendant interfered with 'speculative' future customers [was]

10

insufficient" to plead negligent interference with prospective business advantage). Because no specific relationships are alleged, the Court should dismiss this claim as deficiently pleaded.

Furthermore, in California, "the tort of *negligent* interference with economic relationship arises only when the defendant owes the plaintiff a duty of care." *Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1825, 31 Cal. Rptr. 2d 229, 238 (1994) (*citing J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803, 157 Cal.Rptr. 407, 598 P.2d 60.) Plaintiff's Complaint does not allege that either Defendant owed any duty of care to Plaintiff. For these reasons, the negligent interference claim should be dismissed against both Defendants.

**C.      Plaintiff's Third Cause of Action, for Violations of California Business & Professions Code Sections 17200 et seq., is Not Viable**

Plaintiff's third claim, of course, only survives if the Court holds that California law governs this action. California law does not apply as discussed above. Indeed, Plaintiff again ignores Judge Carter's holdings, recited above, when it alleges that "the claims arise from conduct and damages occurring in the State of California." Plaintiff's disagreement with Judge Carter's holdings is no excuse for outright ignoring them.

Even if this Court elects to recognize the statutory California claim against Defendants, it fails for the reasons set forth in the Motion, including that it is not pleaded with particularity as required for claims sounding in fraud. Additionally, the third cause of action is nonspecific. It fails to allege what provision of California Business & Professions Code Sections 17200, et seq., either defendant allegedly violated. It fails to identify what either defendant allegedly did that violated any particular provision of California Business & Professions Code Sections 17200, et seq. The Complaint lacks the "the who, what, when, where, and how" required in claims averring fraud. The third cause of action should be dismissed as to Defendants.

**D.      Declaratory Relief Fails Along with Plaintiff's Other Claims**

With or without its other three causes of action, Plaintiff's declaratory relief claim should be dismissed. Plaintiff's only response to Defendants' arguments in the Motion concerning declaratory relief is to state that it "seeks relief that would clarify North Bay's and Defendants' ongoing obligations." Opposition at 15:21-15:22. Problematically, the Complaint fails to identify

11

any obligations between Plaintiff and Defendants. Indeed, Plaintiff does not assert in the Complaint that Plaintiff and either Defendant owed any duties to each other or ever had any direct relationship with each other. To the contrary, Plaintiff alleges that its 75% owned subsidiary, HG-GMI, had a contractual relationship with MRB. Plaintiff fails to cite any governing authority from Nevada or California that suggest a declaratory relief claim is viable or even plausible in the circumstances. The declaratory relief claim should be dismissed.

## IV.   PARK WAS NEVER SERVED

In the days immediately preceding the preparation of this Reply brief, Plaintiff has acknowledged that it never served Mr. Park by stating that it has recently and unsuccessfully attempted to serve Mr. Park at his Las Vegas residence. It is undisputable that Plaintiff failed to properly serve Mr. Park under Nevada or California within the 90-day timeframe to do so pursuant to FRCP 4(m). Plaintiff "served" Mr. Park's separated spouse at a California residence where Mr. Park has never resided and failed to cure the defect thereafter, clinging to disingenuous arguments that service was somehow proper. Nonetheless, now that Plaintiff is seeking to properly serve Mr. Park, and given that dismissal of Mr. Park would be without prejudice under Rule 4(m), Mr. Park requests that the Court rule on the merits of the substantive motion to dismiss arguments while the parties work through service issues.

## V.   CONCLUSION

For the reasons discussed above and in the Motion, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

DATED this 11th day of June, 2024.

**FOX ROTHSCHILD LLP**

/s/ Kevin M. Sutehall
MARK J. CONNOT (10010)
KEVIN M. SUTEHALL (9437)
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
mconnot@foxrothschild.com
ksutehall@foxrothschild.com
Attorneys for Defendants MRB Direct, Inc.
and David Park

12

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Fox Rothschild LLP, and that on the 11th day of June, 2024, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, I served a true and correct copy of the foregoing **DEFENDANTS MRB DIRECT, INC. AND DAVID PARK'S REPLY TO PLAINTIFF NORTH BAY CREDIT UNION'S OPPOSITION TO MOTION TO DISMISS** via the Court's CM/ECF system.

/s/ Doreen Loffredo
An Employee of Fox Rothschild LLP

13

158567006