CAMPBELL & WILLIAMS
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
SAMUEL R. MIRKOVICH, ESQ. (11662)
srm@cwlawlv.com
NICHOLAS S. HAGENKORD, ESQ. (15927)
nsh@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Defendant
HigherGrowth, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NORTH BAY CREDIT UNION, a California nonprofit corporation, | CASE NO.:  2:24-cv-00212-MMD-CSD |
| Plaintiffs, | **MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION** |
| vs. | |
| MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual; and DOES 1 through 10, inclusive, | |
| Defendants, | |
| MRB DIRECT INC., a Nevada corporation; DAVID PARK, an individual, | |
| Counter-Plaintiffs, | |
| vs. | |
| NORTH BAY CREDIT UNION, a California nonprofit corporation; HIGHERGROWTH, LLC, a California limited liability company; and GREENBAX MARKETPLACE, INC., a California corporation, | |
| Counter-Defendants. | |

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

Defendant HigherGrowth, LLC ("HigherGrowth") hereby moves to dismiss Counterplaintiffs' counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, HigherGrowth moves to compel arbitration against Counterplaintiff MRB Direct, Inc. ("MRBD") pursuant to the arbitration provision in the Master Services Agreement ("MSA") that is the subject of MRBD's counterclaims. This Motion is based on the papers and pleadings on file herein, the Points and Authorities that follow, and any oral argument the Court may allow.

**POINTS AND AUTHORITIES**[1]

**I.    INTRODUCTION**

At least as it pertains to the legal proceedings in this forum, the Court is familiar with the background of this dispute between the NBCU Parties, on the one hand, and the Park Parties, on the other hand, related to the breakdown in the parties' business relationship concerning an online banking platform for cannabis businesses. Specifically, after Park and MRBD improperly cut off access to the Greenbax online banking platform in July 2023 over a manufactured billing dispute with HigherGrowth, NBCU filed the instant lawsuit alleging various business tort claims against Defendants, which was subsequently removed to United States District Court in California and then transferred to Nevada. ECF No. 1-2. In a separate action originally brought in this District, ACTC filed a complaint alleging claims for defamation, business disparagement and other business torts against NBCU and its CEO, Chris Call ("Call"), as well as the President of GMI, Carole McCormick ("McCormick"). *See* Case No. 3:23-cv-00444-LRH-CSD, ECF No. 1.

On August 12, 2024, the Court dismissed ACTC's complaint against NBCU, Call and McCormick for lack of personal jurisdiction. *Id.* at ECF No. 52. ACTC did not re-file that complaint in a court of competent jurisdiction (*i.e.* state or federal court in California) despite having the

---

[1] HigherGrowth will refer to Plaintiff/Counterdefendant North Bay Credit Union as "NBCU" and Counterdefendant Greenbax Marketplace, Inc. as "GMI" (collectively with HigherGrowth, the "NBCU Parties"). Additionally, HigherGrowth will refer to Defendant/Counterplaintiff David Park as "Park," Defendant/Counterplaintiff MRB Direct, Inc. as "MRBD," and non-party Austin Capital Trust Company, LLC as "ACTC" (collectively with the other Park-affiliated entities identified in the Answer and Counterclaim, the "Park Parties").

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

opportunity to do so. Instead, after the Court denied Defendants' motion to dismiss NBCU's complaint in this action, MRBD and Park largely repackaged the allegations from ACTC's complaint and turned them into counterclaims against NBCU, HigherGrowth and GMI. ECF No. 81. Put another way, MRBD and Park swapped out the parties in the dismissed ACTC lawsuit (with the exception of NBCU) and brought counterclaims based on the same allegations concerning, *inter alia*, (i) alleged payment disputes between MRBD and HigherGrowth over the Greenbax online banking platform, (ii) the alleged "defamatory" statements made by Call and McCormick to customers that resulted in regulatory complaints against MRBD, and (iii) the parties' conduct when reconciling the bank accounts of NBCU's customers whose finances were disrupted when the Park Parties took down the platform. *Id.*

While MRBD's and Park's recycled counterclaims against NBCU are plainly specious in their own right, MRBD's and Park's attempt to name HigherGrowth and GMI in this action is particularly problematic in light of MRBD's ongoing attempts to force those entities to litigate in the same forum. For more than a year, MRBD has sought to name GMI as a party to its pending arbitration with HigherGrowth even though GMI is not a party to the MSA and filed a separate action for declaratory relief in Sonoma County, California to confirm it is *not* required to litigate in the Nevada arbitration. Now that the arbitrator flatly rejected MRBD's attempt to unilaterally name GMI as a party in the arbitration with HigherGrowth, MRBD has apparently decided it would be more expedient to sue HigherGrowth and GMI in this proceeding than litigate the question of whether GMI should be subject to the MSA's arbitration provision in California federal court.

MRBD, however, can only name HigherGrowth as a party in this proceeding if it asserts causes of action that are "principally related to either party's intellectual property" such that the claims would be excluded from the MSA's broad arbitration provision. But MRBD's conclusory allegations made on information and belief—*i.e.* pure speculation—fall woefully short of pleading a plausible cause of action under Rule 12(b)(6), let alone a claim that is "principally related" to MRBD's purported intellectual property rights in the Greenbax online banking platform. Thus, the Court should dismiss MRBD's counterclaims as its allegations are woefully insufficient to satisfy

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

the *Iqbal*/*Twombly* pleading standard or, in the alternative, compel arbitration pursuant to the MSA's delegation clause.

## II.    BACKGROUND

Given that the Court is generally familiar with the factual background of this dispute, HigherGrowth will not restate the parties' respective versions of events here. Instead, HigherGrowth will first address its execution of the MSA and the procedural history of the pending Nevada arbitration with MRBD, including its improper efforts to bring claims against GMI in that forum.[2] HigherGrowth will then turn to the scant allegations that support MRBD's purported "intellectual property" claims against HigherGrowth in this proceeding.

### A.    The Nevada Arbitration

HigherGrowth and MRBD entered into the MSA on or about July 23, 2021 when MRBD provided, and HigherGrowth "accepted," the contract.[3] In pertinent part, Section 12.10 (or 12.12 in MRBD's revised version) provides as follows: "In the event there is a dispute, claim or controversy arising out of or relating to statutory or common claims, the breach, termination, enforcement, interpretation or validity of this Agreement, and the determination of the scope or applicability of

---

[2]  HigherGrowth submits that MRBD's machinations related to its effort to sue GMI in the same proceeding as HigherGrowth are relevant to the motion to compel arbitration, which is not governed by Rule 12(b)(6). Although the Court can take judicial notice of the existence of pleadings from the Nevada arbitration or GMI's California declaratory relief action in connection with the motion to dismiss, HigherGrowth does not contend the Court must consider these materials to decide whether MRBD has pled a cognizable claim under *Iqbal*/*Twombly*.

[3]  Exhibit 1 (7/23/2021 Email Correspondence); Exhibit 2 (7/2021 MSA). The Court should note that MRBD has changed the terms of the MSA since HigherGrowth accepted the contract in July 2021. Among other things, the "true and correct copy of the MSA as of January 2022" that MRBD attached to its Answer and Counterclaim as Exhibit A does not contain Section 5.5 of the governing MSA, which provides that MRBD will not suspend its services over non-payment if HigherGrowth is "disputing the applicable charges reasonably and in good faith and is cooperating diligently to resolve the dispute." *Compare* Ex. 2 *with* ECF No. 81-1. The application of Section 5.5 of the MSA is, of course, critical to the determination of whether MRBD had the contractual right to suspend services and shut down the online banking platform. While the distinctions between the two versions of the MSA are not determinative of the instant motion, that MRBD would promulgate a different version of the MSA without Section 5.5 speaks volumes about its conduct in connection with the underlying proceeding.

4

your agreement to arbitrate any dispute, claim or controversy originating from this Agreement, but specifically excluding any dispute principally related to either Party's intellectual property (which such dispute will be resolved in litigation before the United States District Court for the District of Nevada) will be determined by arbitration in Henderson, Nevada before a single arbitrator." Ex. 2 at § 12.10(a); ECF 81-1 § 12.12(a). The MSA further provides that the "arbitration will be administered by the American Arbitration Association under its Commercial Arbitration Rules." *Id.*

After MRBD manufactured a billing dispute and effectively extorted $500,000 through unlawful threats to shut down the Greenbax online banking platform in violation of the MSA, HigherGrowth commenced the arbitration by filing an Application for Emergency Relief with AAA on July 25, 2024.[4] Specifically, HigherGrowth (through its former counsel) sought injunctive relief "to prevent [MRBD] from terminating the banking platform [ ] MRBD provides to Greenbax and its approximately 300 customers." *Id.* HigherGrowth further explained that its investigation of the unpaid invoices from MRBD demonstrated that the charges were essentially fraudulent and designed to gin up a billing dispute. *Id.* The day after HigherGrowth filed its Application and before AAA assigned an arbitrator or took any action, MRBD disabled the banking platform in violation of the MSA and caused the exact harm that HigherGrowth's emergency request for injunctive relief sought to prevent. ECF No. 81 ¶ 90. As a result, HigherGrowth withdrew the Application as moot on August 2, 2023 after it became clear that proceeding with the request for injunctive relief would be a waste of time and resources.[5]

The Nevada arbitration effectively sat dormant until January 20, 2024, when MRBD filed a pleading styled "Counterclaim" even though HigherGrowth had not asserted any affirmative claims against MRBD in this arbitration.[6] There, MRBD brought claims against HigherGrowth *and* GMI based on the theory that GMI is liable for HigherGrowth's purported breaches of the MSA related

---

[4] Exhibit 3 (7/25/2023 Application for Emergency Relief).

[5] Exhibit 4 (8/2/2023 Email Correspondence).

[6] Exhibit 5 (1/30/2024 Counterclaim).

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

to the manufactured payment dispute as a "successor-in-interest." *Id.* In response, GMI, through its California counsel, filed a complaint in California Superior Court for Sonoma County seeking a judicial declaration that "it is not a party to the arbitration agreement in the MSA and may not be joined in the Nevada Arbitration."[7] Then, on April 17, 2024, MRBD filed a motion to compel arbitration against GMI in the Nevada arbitration on grounds that GMI, not HigherGrowth, initiated the proceeding by filing the Application.[8] Incredibly, MRBD's motion to compel arbitration was essentially premised on a scrivener's error by HigherGrowth's former counsel in the caption of the original Application for Emergency Relief. *Id.*

On July 8, 2024, the Honorable Peggy A. Leen (Ret.)—the arbitrator in the Nevada arbitration—rejected MRBD's position that GMI had commenced the Nevada arbitration instead of HigherGrowth and further found that blackletter state and federal law mandated that only a court could determine whether GMI, as a non-signatory to the MSA, could be compelled to arbitrate.[9] Judge Leen, in turn, stayed the Nevada arbitration pending a ruling from the California court about whether MRBD could compel GMI to participate as a non-signatory. Thus, MRBD was faced with the unenviable prospect of litigating GMI's declaratory relief action to its conclusion and, if it prevailed, returning to the Nevada arbitration to litigate its substantive claims against HigherGrowth over the payment dispute related to the Greenbax online banking platform. As a result, MRBD took yet another shortcut by naming HigherGrowth and GMI as defendants to its counterclaims in this proceeding on grounds that the causes of action against HigherGrowth are "principally related to intellectual property" and GMI is liable as its successor-in-interest.[10]

---

[7] Exhibit 6 (2/29/2024 Complaint).

[8] Exhibit 7 (4/17/2024 Motion to Compel Arbitration).

[9] Exhibit 8 (7/8/2024 Order).

[10] Before it filed the Answer and Counterclaim, the Park Parties' New York counsel, Ernest Badway—who represents MRBD in the Nevada arbitration but yet to submit a *pro hac vice* application in this action—asked whether the NBCU Parties would agree to consolidate all pending litigation in the Nevada arbitration even though NBCU and GMI are not subject to the MSA's

**B.      MRBD's Counterclaims Against HigherGrowth[11]**

It speaks volumes that MRBD devotes the first 18 pages of its 29-page counterclaim to factual allegations that have nothing to do with the actual causes of action it has alleged against HigherGrowth in this proceeding.  Indeed, other than briefly mentioning some of the definitions in the MSA that could conceivably touch on intellectual property, MRBD focuses on the organization of the NBCU Parties and the Park Parties (ECF No. 81 at 8-16), the breakdown in the relationship between NBCU and Park (*id.* at 16-17), the purported billing dispute between MRBD and HigherGrowth that led to the shutdown of the Greenbax online banking platform (*id.* at 17-19), and the alleged "defamatory" statements by Call and McCormick to customers that resulted in regulatory complaints to regulators (*id.* at 19-25).  Put another way, MRBD spends the majority of its counterclaim regurgitating the same allegations that were contained the now-dismissed ACTC complaint against NBCU as well as MRBD's "counterclaim" against HigherGrowth in the Nevada arbitration—none of which have anything to do with the parties' intellectual property.  *Compare* ECF No. 81 *with* Case No. 3:23-cv-00444-LRH-CSD, ECF No. 1 and Ex. 5.

In that regard, MRBD's allegations against HigherGrowth in support of its claims that are purportedly "principally related to intellectual property" are shockingly thin.  Initially, MRBD alleges that a HigherGrowth board member who had been appointed by a Park-affiliated entity learned in July 2023 "that NBCU was using HigherGrowth's funds to develop NBCU's own banking platform for the cannabis businesses."  ECF No. 81 ¶ 125.  From there, MRBD alleges "***upon information and belief***" that "NBCU used HigherGrowth's assets to hire coders and other workers, deployed them to one or both of GMI and HigherGrowth, and enlisted them to create a version of

arbitration provision.  *See* Exhibit 9 (9/10/2024 Email Correspondence).  The NBCU Parties rejected that request, and the Answer and Counterclaim followed.  *Id.*

[11]  HigherGrowth acknowledges that Park has ostensibly brought counterclaims in his individual capacity even though he is not a party to the MSA that forms the basis of MRBD's claims.  ECF No. 81 at 8:6-7 (identifying Park as a "Counterclaimant").  As will be demonstrated below, Park has no standing to assert counterclaims against HigherGrowth in his individual capacity so HigherGrowth will primarily refer to MRBD in this motion.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

MRBD's Platform for NBCU's use." *Id.* ¶ 126 (emphasis added). And, MRBD ties a bow on this speculative knot with the following allegation:

> Given the fact that NBCU used HigherGrowth funds to develop NBCU's own, competing platform while HigherGrowth was actively using the MRBD Platform, and the fact that GMI and NBCU continue to operate as Greenbax Marketplace, ***it is evident HigherGrowth, NBCU, and GMI accessed and used MRBD's intellectual property in violation of the MSA in order to continue operating as Greenbax Marketplace by creating a competing platform and/or reconstituting MRBD's Platform after MRBD revoked the license. Discovery will reveal the extent to which NBCU, GMI, and HigherGrowth used MRBD's intellectual property, including its source code, to accomplish that objective.***

*Id.* ¶ 129 (emphasis added). That is the sum and substance of the conclusory allegations made on information and belief supporting each of MRBD's so-called "intellectual property" claims against HigherGrowth. *Id.* ¶¶ 218, 222, 232, 238.

The only other aspect of MRBD's counterclaim that is relevant to the instant motion is the section where MRBD explains why it brought counterclaims against HigherGrowth in this proceeding despite the existence of the pending Nevada arbitration. *Id.* ¶¶ 131-138. Indeed, MRBD contends "it is evident that complete relief cannot be accorded without joining HigherGrowth" because "it would risk inconsistent results with the currently pending arbitration between MRBD and HigherGrowth"—*i.e.* the Nevada arbitration concerning the purported payment dispute and shutdown of the Greenbax online banking platform in July 2023. *Id.* ¶¶ 137-38. MRBD further asserts that HigherGrowth is a "necessary party" which NBCU should have somehow named in this action despite the existence of the binding arbitration provision in the MSA. *Id.* ¶ 137. In short, by chastising NBCU for not including HigherGrowth and other Park-affiliated entities in this action, MRBD says the quiet part out loud and concedes that its counterclaims against HigherGrowth are yet another attempt to consolidate this litigation in one forum in contravention of the MSA's arbitration provision.

. . . . .

. . . . .

. . . . .

8

## III.    ARGUMENT

### A.    The Counterclaims Against HigherGrowth Should Be Dismissed Pursuant to Rule 12(b)(6).

#### 1.    Legal Standard.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that, if taken as true, demonstrate "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (interpreting pleading standards required under Fed. R. Civ. P. 8(a)(2)).  This means a plaintiff must allege facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).  A complaint fails to plead a "plausible" claim and must be dismissed if the facts alleged are "merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678; *id.* at 681 (a well-pleaded complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

As the Ninth Circuit has summarized, "[f]irst, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subject to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  When performing the two-step approach set forth above, conclusions "couched as [ ] factual allegation[s]" are not entitled to a presumption of truth on a motion to dismiss. *Twombly*, 550 U.S. at 555 (internal quotations omitted); *Caviness*, 590 F.3d at 812 ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss[.]") (quoting *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).  "When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed." *Zuffa, LLC v. Justin.TV, Inc.*, 838 F. Supp. 2d 1102, 1104 (D. Nev. 2012) (citing *Twombly*).

9

"The *Twombly* plausibility standard … does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Diaz v. Chase*, 416 F. Supp. 3d 1090, 1097 (D. Nev. 2019).  Where, however, allegations made on information and belief are conclusory or too speculative to be plausible, dismissal is appropriate.  *Id.* (dismissing consumer's allegation 'on information and belief' that data broker Experian had information about him because it advertised having information on 300 million individuals); *see also Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) (finding the qualification of allegations made "on information and belief" suggests the plaintiff "likely lacks knowledge of the underlying facts to support [its] assertion[s], and is instead engaging in speculation to an undue degree"); *Johnson v. Experian Info. Sols., Inc.*, No. 2:18-cv-114-JAM-EFB PS, 2019 WL 951425, at *2 (E.D. Cal. Feb. 27, 2019) ("conclusory allegations based upon plaintiff's 'information and belief' [ ] are insufficient to state a claim for relief"); *Baker v. Meiling*, No. 3:20-cv-00518-MMD-CLB, 2021 WL 2062900, at *6 (D. Nev. Apr. 28, 2021) ("Alleging the date that 'one or more' Plaintiffs received something on information and belief is too speculative to be plausible."), *aff'd*, 2022 WL 1797338 (9th Cir. June 2, 2022).

### 2. MRBD's Conclusory Allegations Fail To State A Plausible Cause of Action Under *Iqbal/Twombly*.

Suffice it to say, MRBD's claims against HigherGrowth are the epitome of a conclusory "the-defendant-unlawfully-harmed-me accusation" based on nothing more than information and belief. Indeed, MRBD speculates that Higher Growth conspired with NBCU and GMI to create a copycat version of MRBD's platform because (i) NBCU allegedly used HigherGrowth funds to develop a competing platform while HigherGrowth was actively using the MRBD Platform, and (ii) GMI and NBCU continue to operate as Greenbax Marketplace.  ECF No. 81 ¶ 129.  But neither of those allegations create an inference to support MRBD's rank conjecture made on information and belief that "NBCU used HigherGrowth's assets to hire coders and other workers, deployed them to one or both of GMI and HigherGrowth, and enlisted them to create a version of MRBD's Platform for

10

NBCU's use." *Id.* ¶ 126. Nor is it "evident" or reasonable to infer that HigherGrowth somehow misappropriated MRBD's intellectual property in violation of the MSA simply because NBCU and GMI operated a different online banking platform after the parties' relationship with the Park Parties imploded. *Id.* ¶ 129. Thus, the Court should disregard MRBD's conclusory allegation made on information and belief that HigherGrowth allowed unidentified coders to access and emulate the Greenbax online banking platform at the behest of NBCU and/or GMI.

Nor can MRBD survive a motion to dismiss under Rule 12(b)(6) by claiming it requires discovery concerning "the extent to which NBCU, GMI, and HigherGrowth used MRBD's intellectual property, including its source code," to create a new online banking platform. ECF No. 81 ¶ 129. As the United States Supreme Court and courts in this Circuit have recognized on countless occasions, Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *K Tech Telecomms., Inc. v.* DirecTV, No. CV11-09370-RGK-(RZx), 2012 WL 13009162, at *2 (C.D. Cal. Feb. 21, 2012) ("Plaintiff may be able to obtain more specific information regarding Defendant's technology through discovery. However, as the Supreme Court has explained, 'Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'"); EVOX *Prods, LLC v. Verizon Media Inc.*, No. CV 20-2852-CBM-(JEMx), 2021 WL 3260609, at *3 (C.D. Cal. May 5, 2021) ("[T]he Complaint does not allege any facts regarding 'actual dissemination' and Plaintiff cannot use discovery as a fishing expedition in order to support conclusory claims.") (citing *Iqbal*).

Because each cause of action against HigherGrowth is premised on MRBD's conclusory allegation made on information and belief that HigherGrowth either accessed (or allowed NBCU and/or GMI to access) the Greenbax online banking platform in violation of the MSA, the Court should dismiss MRBD's counterclaims against HigherGrowth for failure to state a claim. *See Diaz*, 416 F. Supp. 3d at 1097 (collecting cases).

11

### 3.   Conspiracy to Defraud Is Not A Standalone Cause Of Action.

"Actionable conspiracy arises where two or more persons undertake some concerted action with the intent to accomplish an unlawful objective for the purpose of harming another, and damage results." *Interior Elec. Inc. Nev. v. T.W.C. Constr., Inc.*, No. 2:18-cv-01118-JAD-VCF, 2020 WL 719410, at *5 (D. Nev. Feb. 12, 2020) (quotations omitted).  "A conspiracy action must be based on an agreement to commit a viable tort."  *Id; see also Rivercard, LLC v. Post Oak Prods., Inc.,* 2:12-cv-1150-JCM-CWH, 2013 WL 1908315, at *4 (D. Nev. May 6, 2013) (civil conspiracy "must be premised on an intentional tort").  A conspiracy claim, accordingly, is not an independent cause of action.  *See Graham v. City of North Las Vegas*, No. 2:13-cv-01815-KJD-VCF, 2015 WL 13237298, at *8 (D. Nev. Nov. 20, 2015); *Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1278 (D. Nev. 2014) (plaintiffs "must establish (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit *that* tort.") (emphasis added).

In that regard, Nevada law is clear that "an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud."  *Goodwin v. Exec. Trustee Servs., LLC*, 680 F. Supp. 2d 1244, 1254 (D. Nev. 2010) (quoting *Jordan v. State ex rel. Dept. of Motor Vehicles and Pub. Safety*, 110 P.3d 30, 51 (Nev. 2005)); *see also Giudici v. Gianoli*, 2022 WL 17829384, 521 P.3d 1178, *3 (Nev. Dec. 15, 2022) (same); *Tsutsumi v. Advanced Power Tech., Inc.*, No. 2:12-cv-01784-MMD-VCF, 2014 WL 309286, at *2-3 (D. Nev. Jan. 24, 2014) (same).  Accordingly, MRBD's counterclaim against HigherGrowth for conspiracy to defraud is subject to dismissal because MRBD did not plead an underlying cause of action for fraud.  *See Tsutsumi*, 2014 WL 309286, at *2-3 (dismissing claim for conspiracy to commit fraud based on the plaintiffs' failure to plead a viable fraud claim).[12]

---

[12]  Given that MRBD has failed to plead sufficient factual allegations to support a plausible claim under *Iqbal*/*Twombly*, it should go without saying that MRBD's conspiracy to defraud claim also does not satisfy the heightened pleading standard under Rule 9(b) by providing the "who, what, when, where, and how of the misconduct charged."  *Goodwin,* 680 F. Supp. 2d at 1254 ("A claim for conspiracy to commit fraud must be pled with the same particularity as the fraud itself.").

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

**4.    MRBD's Claim For Unjust Enrichment Is Barred By The Existence Of The MSA.**

Unjust enrichment occurs whenever "a person has and retains a benefit which in equity and good conscience belongs to another." *Mainor v. Nault*, 101 P.3d 308, 317 (Nev. 2004); *see also Asphalt Prods. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995) (defining unjust enrichment as "the unjust retention of money and property of another against fundamental principles of justice or equity and good conscience."). A plaintiff cannot, however, "make a claim for unjust enrichment with respect to actions that are controlled by a contract to which Plaintiff is a party." *Thomas v. Wachovia Mortgage, FSB*, No. 2:10-cv-01819-ECR-GWF, 2011 WL 3159169, *6 (D. Nev. July 25, 2011); *see also LeasePartners Corp. v. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (stating "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."). Because MRBD plainly concedes that the MSA is a binding agreement and, in fact, references its terms in its cause of action for unjust enrichment, the Court must dismiss with claim as well. ECF No. 81 ¶¶ 222-225.[13]

**5.    Park Cannot Assert Counterclaims Against HigherGrowth In His Individual Capacity.**

Although Park is not mentioned in the counterclaims themselves, Defendants' answer and counterclaim identifies him as a "Counterclaimant" and lumps him in with MRBD as the parties asserting causes of action against HigherGrowth. Park, however, has no standing to sue for breach of contract or breach of the implied covenant because he is not a party to the MSA in his individual capacity. *See Pelletier v. Rodriguez*, No. 3:17-cv-00642-MMD-EJY, 2021 WL 3008594, at *4-5 (D. Nev. July 15, 2021) (dismissing contract claims brought by individual when he executed the agreement on behalf of a LLC). Similarly, as discussed above, unjust enrichment occurs whenever "a person has and retains a benefit which in equity and good conscience *belongs to another*[,]" *Mainor*, 101 P.3d at 317 (emphasis added), and Park has failed to allege that HigherGrowth retained

---

[13] Nevada law allows a plaintiff to plead a claim for unjust enrichment in the alternative to a breach of contract claim, but MRBD has not done so here.

some benefit that rightly belongs *to him*.  And, of course, Park did not plead a single allegation that would support a fraud claim as it relates to himself.  As such, the Court should dismiss Park's counterclaims against HigherGrowth with prejudice.

**B.      In the Alternative To Dismissal Under Rule 12(b)(6), MRBD's Claims Are Subject To Arbitration.**

**1.      Federal And State Law Strongly Favor The Enforcement Of The Arbitration Agreement.**

The FAA provides that a written arbitration agreement involving interstate commerce, such as the Arbitration Agreement at issue here, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The United States Supreme Court, the Ninth Circuit, and Nevada federal and state courts have uniformly endorsed a liberal policy favoring arbitration, and rigorously enforce agreements to arbitrate.  *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) (the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements"); *Comedy Club, Inc. v. Improv W. Assocs*., 553 F.3d 1277, 1284 (9th Cir. 2009) ("It is well established that where the contract contains an arbitration clause, there is a presumption of arbitrability.") (internal quotations omitted); *Raebel v. Tesla, Inc.*, 451 F. Supp. 3d 1183, 1187 (D. Nev. 2020) ("Thus, the standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms."); *Phillips v. Parker*, 106 Nev. 415, 417, 794 P.2d 716, 718 (1990) ("There is a strong public policy favoring contractual provisions requiring arbitration as a dispute resolution mechanism.  Consequently, when there is an agreement to arbitrate we have said that there is a presumption of arbitrability.") (internal quotations omitted).

Here, the Arbitration Agreement expressly provides that "[n]otwithstanding the provisions in this paragraph referencing applicable substantive law, the Federal Arbitration Act (9 U.S.C. §§ 1-16) will govern any arbitration conducted pursuant to the terms of this Agreement."  Ex. 2 § 12.12(a); ECF No. 81-1 § 12.12(a).  Additionally, the parties expressly acknowledged the MSA "evidences a

14

transaction involving interstate commerce[.]" *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("the Internet is an instrumentality and channel of interstate commerce") (internal citations omitted); *see also U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 42 (Nev. 2018) (interstate commerce is interpreted broadly for purposes of the FAA).

### 2.     The Arbitrator Must Decide Whether MRBD's Claims Are Arbitrable.

"Unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013)) (emphasis in original). "Such clear and unmistakable evidence of an agreement to arbitrate arbitrability might include a course of conduct demonstrating assent or an express agreement to do so"—*i.e.* a delegation clause. *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011). "Importantly, an agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the [ ] court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

The MSA clearly and unmistakably delegates threshold issues of arbitrability to the arbitrator in two respects.    Initially, the MSA's arbitration agreement contains a delegation clause that expressly provides "the determination of the scope or applicability of your agreement to arbitrate any dispute, claim or controversy arising from this Agreement [ ] will be determined by arbitration[.]". Ex. 2 § 12.12(a); ECF No. 81-1 § 12.12(a).    This binding contract language constitutes a clear and unmistakable delegation clause.    *See, e.g.*, *Mohamed*, 848 F.3d at 1208-09 (finding that arbitration agreement clearly and unmistakably delegated authority to decide threshold issues of arbitrability to the arbitrator); *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 829-33 (9th Cir. 2021) (delegation of authority to decide "any issue concerning the validity, enforceability, or scope of this Agreement" constituted a clear and unmistakable agreement to arbitrate arbitrability); *see also Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68-69 (2019) ("[A] court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator,

15

CAMPBELL & WILLIAMS

ATTORNEYS AT LAW

710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101

Phone: 702.382.5222 • Fax: 702.382.0540

www.campbellandwilliams.com

even if it appears to the court to be frivolous.  A court has no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.") (internal citations omitted).

Moreover, the MSA states that the arbitration will be governed by AAA's Commercial Arbitration Rules, which provide that the arbitrator decides questions of arbitrability.  To that end, "virtually every court to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Oracle*, 724 F.3d at 1074); *Cordas v. Uber Techs., Inc.*, 228 F.Supp.3d 985, 992 (N.D. Cal. 2017) (granting motion to compel arbitration and finding the "clear weight of authority" supports conclusion that incorporation of the AAA rules delegates arbitrability regardless of the sophistication of the parties). Thus, the Court should compel arbitration because the Arbitration Agreement clearly and unmistakably delegates the resolution of any disputes over arbitrability to the arbitrator.

**3.    If The Court Decides The Issue, MRBD's Claims Are Arbitrable And Must Be Stayed And Referred To Arbitration.**

Even if the Court decides that the arbitrability question was not delegated to the arbitrator, MRBD's claims are plainly arbitrable under the MSA.  "[T]he interpretation of an arbitration agreement is generally a matter of state law." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010).  And, the arbitration agreement in the MSA provides that "[t]his Agreement and the legal relations between the parties shall be governed by and construed in accordance with the laws of the State of Nevada."  Ex. 2 § 12.10; ECF No. 81-1 § 12.10.

To compel arbitration under Nevada law, HigherGrowth must establish that: (1) "there is an enforceable agreement to arbitrate" and (2) "that the dispute fits within the scope of the arbitration agreement." *SR Constr., Inc. v. Peek Brothers Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022).  Here, there can be no dispute that there is an enforceable arbitration agreement between the Parties as the MSA provides that the parties agreed to arbitrate any disputes arising out of the agreement with the exception of "any dispute that is principally related to either Party's intellectual property."  Ex. 2 §

12.10; ECF No. 81-1 § 12.10. Thus, the only question is whether MRBD's claims against HigherGrowth fall into that narrow exception to the otherwise all-encompassing arbitration agreement. The answer is clearly no.

Nevada law recognizes "a strong presumption in favor of arbitrating a dispute where a valid and enforceable agreement exists between the Parties." *Id.* That presumption only grows stronger where, as here, the arbitration agreement uses broad language: "Under a broad arbitration provision—*i.e.*, one that encompasses all disputes related to or arising out of an agreement—a presumption of arbitrability applies and ***only the most forceful evidence of a purpose to exclude the claim from arbitration*** can prevail." *Clark County Pub. Emps. Ass'n v. Pearson*, 798 P.2d 136, 138 (Nev. 1990) (emphasis added). In other words, the court "should order arbitration of particular grievances unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 929 P.2d 954, 957 (Nev. 1996) (quoting *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)). In applying this standard, "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Id.*

Here, MRBD's claims fall within the scope of the parties' broad arbitration agreement rather than the narrow exception for disputes that are "principally related" to intellectual property. *Pearson*, 798 P.2d at 138. For starters, MRBD can hardly claim this dispute is "principally related" to intellectual property when only a handful of the 250+ allegations in its counterclaim could conceivably pertain to intellectual property and the vast remainder address issues that are already being litigated in this Court or the Nevada arbitration. *See supra* Point II.B.[14] MRBD, moreover,

---

[14] While MRBD's contract and unjust enrichment claims attempt to draw a nexus to intellectual property, MRBD's flawed claim for conspiracy to defraud claim expressly seeks relief for the alleged "interfer[ence] with MRBD's contract with HigherGrowth" based on acts such as refusing to pay MRBD for services rendered under the MSA and forming GMI to operate a competition online banking platform. ECF No. 81 ¶¶ 237-239. Accordingly, there is no question that MRBD's claim for conspiracy to defraud would be subject to arbitration if it could pass muster under *Iqbal*/*Twombly*—and it cannot.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

contends that its claims arise out of HigherGrowth's purported misuse of intellectual property, yet MRBD's counterclaims exclusively focus on provisions in the MSA that address the defined terms Work Product and Project Technology as well as Section 6 of the MSA, which governs HigherGrowth's assignment to MRBD of any rights to Work Product and Project Technology. ECF No. 81 ¶¶ 56-57, 216-218, 224.

To that end, MRBD's counterclaim is conspicuously silent as to the defined term "Intellectual Property Rights" in its preferred version of the MSA. That omission speaks volumes as the definition of Intellectual Property Rights plainly undermines MRBD's attempt to manufacture a dispute with HigherGrowth that is "principally related" to intellectual property. Indeed, the MSA defines Intellectual Property Rights to include "patents, trademarks, service marks, registered designs, applications for any of those rights, trade and business names, unregistered trademarks and service marks, copyrights, know-how, database rights, rights in designs and inventions and all other rights of the same or similar effect or nature, including all renewals, applications and registrations (and the right to apply for registration) relating to any of the foregoing." ECF 81-1 § 1; *see also* Black's Law Dictionary (12th ed. 2024) (defining "intellectual property" as "primarily trademark, copyright, and patent rights, but also includes trade-secret rights, publicity rights, moral rights, and rights against unfair competition").

MRBD, of course, did not specifically identify any intellectual property (*e.g.* patents, trade secrets, trademarks, copyrights) in its counterclaim that would meet the definition of Intellectual Property Rights or the meaning of the term "intellectual property" as it is commonly understood. Instead, MRBD merely cites other provisions of the MSA addressing defined terms such as Work Product or Project Technology, and then vaguely alleges on information and belief that HigherGrowth breached the contract by "allowing unauthorized parties to use the Platform and MRBD's intellectual property." ECF No. 81 ¶ 218. But MRBD cannot avoid the application of the MSA's broad arbitration provision with conclusory allegations that sprinkle in the magic words "intellectual property." To the contrary, MRBD must plausibly allege a claim that is "principally

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

related" to intellectual property and actually identify the specific types of intellectual property that HigherGrowth misused.

Again, "courts should order arbitration of particular grievances unless it may be said with positive assurance that the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute." *Pearson*, 798 P.2d at 138 (original emphasis). As such, to avoid arbitration, MRBD must show that there is no reasonable reading of the MSA that would require their counterclaims against HigherGrowth to be arbitrated. MRBD clearly cannot meet that burden with nothing more than conclusory allegations made on information and belief about HigherGrowth's misuse of unidentified "intellectual property" that may or may meet the definition of that term. To the extent the Court determines it can rule on the arbitrability of MRBD's counterclaims against HigherGrowth in this action, the Court should stay this action as it relates to HigherGrowth and compel arbitration in accordance with the MSA's plain language. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

## IV. CONCLUSION

For the foregoing reasons, HigherGrowth respectfully requests that the Court dismiss MRBD's counterclaims for failure to state a claim under Rule 12(b)(6). Alternatively, the Court should stay and compel arbitration of MRBD's counterclaims because they are subject to the MSA's binding arbitration agreement, including as it relates to any disputes concerning arbitrability.

DATED this 3rd day of February, 2025.

CAMPBELL & WILLIAMS

By: */s/ Philip R. Erwin*
PHILIP R. ERWIN, ESQ.
SAMUEL R. MIRKOVICH, ESQ.
NICHOLAS S. HAGENKORD, ESQ.
710 South Seventh Street
Las Vegas, Nevada 89101
*Attorneys for Defendant*
*HigherGrowth, LLC*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of February, 2025, I caused a true and correct copy of the foregoing **Motion to Dismiss or, in the Alternative, to Compel Arbitration** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

/s/ *Philip R. Erwin*
An employee of Campbell & Williams

20

## INDEX OF EXHIBITS

| Exhibit No. | Document | Page Nos. |
|---|---|---|
| - | Declaration of Philip R. Erwin | - |
| 1 | Email correspondence dated July 23, 2021 | 1 |
| 2 | Master Subscription Agreement dated July 2021 | 2 – 18 |
| 3 | Greenbax Marketplace, Inc.'s Notice of Application for Emergency Relief; Memorandum of Points and Authorities in Support dated July 25, 2023 | 19 – 29 |
| 4 | Email correspondence dated August 2, 2023 | 30 – 31 |
| 5 | Counterclaim dated January 30, 2024 | 32 – 52 |
| 6 | Complaint for Declaratory and Injunctive Relief dated February 29, 2024 | 53 – 89 |
| 7 | Motion to Compel Arbitration dated April 17, 2024 | 90 – 101 |
| 8 | Decision and Order Re: MRB Direct Inc.'s Motion to Compel Arbitration dated July 8, 2024 | 102 – 115 |
| 9 | Email correspondence dated September 10, 2024 | 116 – 124 |

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com