UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NORTH BAY CREDIT UNION,<br><br>    Plaintiff and Counter Defendant,<br><br>         v.<br><br>MRB DIRECT, INC., *et al.*,<br><br>    Defendants and Counter Claimants. | Case No. 2:24-cv-00212-MMD-CSD<br><br>ORDER |

**I.   SUMMARY**

Plaintiff North Bay Credit Union ("North Bay") sued Defendants MRB Direct, Inc. and David Park, a principal of MRB, in California state court, alleging that Defendants engaged in business torts, after Defendants allegedly cut off access to an online banking platform for cannabis industry businesses as part of a payment dispute between Defendants and Plaintiff's subsidiary. (ECF No. 1-2 ("Complaint").) Defendants removed the case to federal court (ECF No. 1) and District Judge David O. Carter of the Central District of California transferred it to this Court (ECF No. 36).[1] After the Court granted in part, and denied in part, Defendants' motion to dismiss the Complaint (ECF No. 75 ("Prior Order")), Defendants answered and filed counterclaims against North Bay, Greenbax Marketplace, Inc. ("Greenbax"), and HigherGrowth, LLC d/b/a Greenbax Marketplace ("HigherGrowth").[2] (ECF No. 81 at 8-47.) Before the Court is North Bay's motion to

---

[1] Upon transfer, the case was initially assigned to other judges, but was eventually reassigned to the Court. (ECF No. 68.)

[2] The Court dismissed Park's counterclaims after Defendants clarified in response to the Motion and at the recent hearing that only MRB asserts counterclaims.

dismiss the counterclaims against it. (ECF No. 98 ("Motion").)[3] As further explained below, the Court will grant in part, and deny in part, the Motion.

## II.     BACKGROUND

The following facts are adapted from the counterclaims. (ECF No. 81 at 8-47.) MRB is a Nevada corporation headquartered in Henderson, Nevada. (*Id.* at 8.) North Bay is a California nonprofit corporation headquartered in Santa Rosa, California. (*Id.*) North Bay owns 75% of HigherGrowth. Greenbax is a California corporation also with its principal place of business in Santa Rosa. (*Id.*)

HigherGrowth essentially performed the front-end functions of a bank for cannabis-industry clients, while North Bay operated in the background, handling transactions and the actual money as bank sponsor. (*Id.* at 9-10.) HigherGrowth contracted with MRB to license MRB's platform, which tracks and manages transactions along with ensuring the accuracy of financial data, in addition to providing a banking web application that end customers can use for banking services. (*Id.* at 10, 13-14.) MRB, in turn, sub-contracted with FTA Systems, LLC to build and customize that software. (*Id.* at 12.)

In purported response to a trademark dispute, North Bay formed Greenbax and attempted to push out HigherGrowth and MRB from the overall arrangement providing an online bank for cannabis industry businesses. (*Id.* at 16-17.) Starting in 2022, HigherGrowth stopped paying MRB's invoices in full, and in 2023, counsel representing MRB sent HigherGrowth a letter demanding payment on threat of shutting down the platform behind the online bank for cannabis businesses. (*Id.* at 18.) MRB agreed to keep the platform open for another week for $500,000 of the money it contended it was owed. (*Id.*) But this did not resolve the dispute between MRB and HigherGrowth, so MRB shut the platform down in July 2023. (*Id.* at 18-19.)

---

[3] MRB filed a response (ECF No. 105), and North Bay filed a reply (ECF No. 108). Greenbax and HigherGrowth filed motions to dismiss around the same time (ECF Nos. 101, 106), which the Court resolved at a recent hearing (ECF No. 127).

"Upon information and belief, [North Bay] used HigherGrowth's assets to hire coders and other workers, deployed them to one or both of [Greenbax] and HigherGrowth, and enlisted them to create a version of [MRB]'s Platform for [North Bay]'s use." (*Id.* at 26.) And after MRB disabled the online platform, and to this day, "an entity publicly holding itself out as "Greenbax Marketplace . . . a subsidiary of North Bay Credit Union" continues to market itself via a website found at greenbaxmarketplace.io." (*Id.*) Defendants further allege on information and belief that entity is Greenbax, acting at the direction of North Bay. (*Id.*)

Based on these allegations, Defendants allege the following counterclaims against North Bay: (1) intentional interference with contractual relations (*id.* at 29-30); (2) intentional interference with prospective economic advantage (*id.* at 30-31); (3) violation of the Nevada Deceptive Trade Practices Act (*id.* at 34-37 (titled the Fifth Cause of Action)); (4) violation of California Business and Professions Code Section 17200, *et seq.* (*id.* at 37-40 (titled the Seventh Cause of Action)); and (5) civil conspiracy to defraud (*id.* at 43 (titled the Eleventh Cause of Action)). As noted, North Bay moves to dismiss these counterclaims, along with moving to strike some of MRB's affirmative defenses and some allegedly impertinent allegations. (ECF No. 98.)

**III.    DISCUSSION**

The Court first explains why it finds that California law applies to MRB's counterclaims against North Bay, and then proceeds to address each of the arguments raised in North Bay's Motion.

**A.    Choice of Law**

North Bay asserts that California law applies to all MRB's counterclaims against it. (ECF No. 98 at 13-14.) MRB counters that Nevada law applies to all its counterclaims against North Bay except for the Seventh, alleging violation of California Business and Professions Code 17200, to which California law applies. (ECF No. 105 at 5-7.) The Court agrees with North Bay.

///

3

As the Court explained the Prior Order, Nevada applies the "Second Restatement's most significant relationship test" for choice of law analysis as to tort claims as articulated in *Gen. Motors Corp. v. Eighth Jud. Dist. Ct. of State of Nev. ex rel. Cnty. of Clark*, 134 P.3d 111, 116 (Nev. 2006). (ECF No. 75 at 3-4.) MRB's counterclaims against North Bay are tort claims. (ECF No. 81 at 29-31, 34-40, 43.) The Court accordingly applies the most significant relationship test to MRB's counterclaims against North Bay. "The state with the most significant relationship is determined by looking to (1) 'the place where the injury occurred'; (2) 'the place where the conduct causing the injury occurred'; (3) 'the domicil[e], residence, nationality, place of incorporation[,] and place of business of the parties'; and (4) 'the place where the relationship, if any, between the parties is centered.'" *Sivil v. Country Mut. Ins. Co.*, 619 F. Supp. 3d 1072, 1077 (D. Nev. 2022) (footnotes omitted).

In gist, MRB alleges in its counterclaims against North Bay that North Bay used MRB's assets to develop a competing software platform to the one MRB developed for HigherGrowth, and then held that new platform out as Greenbax to end customers. (ECF No. 81 at 29-31, 34-40, 43.) So, while MRB alleges several counterclaims against North Bay, the counterclaims are all based on two acts of alleged wrongdoing. Given this read of MRB's counterclaims, the Court finds it most appropriate to conduct a single most significant relationship analysis instead of the claim-by-claim analysis that MRB invites. (ECF No. 105 at 5-7.)

Beginning with the first factor, the alleged injuries pertinent to these counterclaims occurred in Nevada because, "Counter-Plaintiff [MRB] is and, at all times relevant to this action, was a Nevada corporation with its principal place of business in Henderson, Nevada." (ECF No. 81 at 8.) However, the place where the conduct causing the injury occurred was in California because North Bay is a California business headquartered in Santa Rosa, California. (*Id.*) And since North Bay engaged in the alleged wrongdoing of engaging someone to develop a competing online platform, in concert with HigherGrowth and Greenbax, whose operations are also centered in California, that conduct must have

4

occurred from its corporate headquarters in California. (*Id.*) The first and second factors accordingly balance each other out. And in addition, the third factor is also neutral because it requires the Court in this case to inquire into the headquarters locations of North Bay and MRB; as noted, one is in Nevada, and the other is in California. (*Id.*)

That brings the Court to the fourth factor: "'the place where the relationship, if any, between the parties is centered.'" *Sivil*, 619 F. Supp. 3d at 1077 (footnote omitted). Like the Court did in the Prior Order, the Court finds the parties' relationship is centered in California. (ECF No. 75 at 6.) And as North Bay argues, the parties' relationship as alleged in the counterclaims is "based on the creation of a virtual platform to facilitate banking for California customers[,]" which offers an additional reason to those offered in the Court's prior order as to why the relationship between the parties is centered in California. (ECF No. 98 at 13.) The Court otherwise agrees with North Bay that MRB's counterargument based on the contract between MRB and HigherGrowth, which states it is governed by Nevada law, is unpersuasive because North Bay is not a party to that contract, and North Bay only seeks dismissal of the counterclaims asserted against it. (ECF No. 108 at 7.) The fourth factor favors the application of California law.

In sum, the Court will apply California law to the counterclaims against North Bay because the first through third factors balance each other out and the fourth factor tips the whole analysis in favor of the application of California law. This ruling is also consistent with the choice of law decision the Court reached regarding North Bay's claims against Defendants in the Prior Order. (ECF No. 75 at 6-7.) All claims and counterclaims between North Bay and MRB are governed by California law.[4]

///

///

---

[4]North Bay argues that, if the Court agrees California law applies, then the Court must dismiss the fifth counterclaim for violation of the Nevada Deceptive Trade Practices Act because that statutory claim is not recognized in California. (ECF No. 98 at 14.) The Court agrees and will accordingly dismiss the fifth counterclaim (ECF No. 81 at 34-37) to the extent it is asserted against North Bay. This is an alternative ruling because, as further explained below, the Court is going to dismiss this counterclaim without prejudice as preempted anyway.

5

### B. CUTSA Preemption

North Bay argues MRB's tort claims based on the misappropriation of MRB's "assets" (apparently referring to computer code (ECF No. 81 at 26, 29-33, 39, 43)) and use of the Greenbax name on a website are preempted by California's Uniform Trade Secrets Act ("CUTSA"). (ECF No. 98 at 14.) CUTSA "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (Cal. Ct. App. 2009). "Depending on the particular facts pleaded, the statute can operate to preempt the specific common claims asserted here: breach of confidence, interference with contract, and unfair competition." *Id.* at 958-59.

MRB counters that its counterclaims are not preempted by the CUTSA because they are not based on trade secrets, but instead based on MRB's "copyright interest in the Platform" otherwise described as the software it licensed to, and developed for, HigherGrowth. (ECF No. 105 at 7-13.) The problem with this argument, as North Bay points out in reply (ECF No. 108 at 11), is that MRB does not allege copyright infringement in any of its counterclaims, attach a registered copyright to them, or even mention the word 'copyright' in the nearly 40 pages they devote to those counterclaims (ECF No. 81 at 8-47). Setting MRB's reliance on a copyright interest aside for a moment, MRB otherwise describes how its counterclaims against North Bay focus on its allegation that North Bay directed HigherGrowth to share information with North Bay and its designees that HigherGrowth was not permitted to share under its contract with MRB. (ECF No. 105 at 9-11.) These allegations are preempted under CUTSA. *See K.C. Multimedia*, 171 Cal. App. 4th at 961 (finding interference with contract claim based on inducing breach of a contract between two other parties preempted under CUTSA because "that conduct falls within the statutory definition of 'improper means' of acquiring a trade secret, which 'includes ... breach or inducement of a breach of a duty to maintain secrecy ....'"). The Court will accordingly dismiss the counterclaims against North Bay as preempted under CUTSA.

But as it appears MRB is now relying on a copyright interest in its platform as the basis for its counterclaims against North Bay, the Court notes that only the holder of a registered copyright may sue for copyright infringement in federal court. *See, e.g., Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 309 (2019). Moreover, copyright law may preempt tort claims like those asserted in MRB's counterclaims against North Bay. *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1150-54 (9th Cir. 2008) (explaining how copyright may preempt state-law tort claims and affirming the dismissal of several state law tort claims like those asserted here as preempted under copyright law).

Regardless, facts raised for the first time in a plaintiff's opposition papers should be considered by the Court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001). And one of the factors the Court must consider in deciding whether to grant leave to amend is the number of times a plaintiff has already been permitted to amend. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). MRB has not previously been granted leave to amend its counterclaims.

Because MRB asserts its counterclaims should not be dismissed for a reason not stated in the counterclaims—some infringement of a copyright interest—and MRB has not previously amended those counterclaims, the Court finds the most judicially efficient approach here is to dismiss all the counterclaims against North Bay with leave to amend. The Court specifically dismisses without prejudice MRB's first, second, fifth, seventh, and 11th causes of action to the extent they are asserted against North Bay. (ECF No. 81 at 29-31, 34-40, 43.) If MRB seeks to file amended counterclaims against North Bay consistent with the Court's rulings, it must file them within 15 days.

### C.    Affirmative Defenses

North Bay additionally moves to dismiss some of Defendants' affirmative defenses "that consist of a single line or sentence" because they "only state the nature of the

defense and not the grounds for it." (ECF No. 98 at 19-21.) Defendants counter that the Court should deny North Bay's Motion as to their affirmative defenses because North Bay has fair notice of their affirmative defenses, relying on the United States Court of Appeals' opinion in *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) to make the supporting argument that the *Twombly/Iqbal* framework applicable to complaints does not apply to affirmative defenses. (ECF No. 105 at 13-15.) The Court agrees with Defendants as to the standard, but nonetheless agrees with North Bay that it must dismiss some of the defenses under the correct standard.

While "this District is split on the proper pleading standard for affirmative defenses" *Snow Covered Cap., LLC v. Weidner*, No. 2:19-cv-00595-JAD-NJK, 2019 WL 6719526, at *2 (D. Nev. Nov. 22, 2019), *report and recommendation adopted*, No. 2:19-cv-00595-JAD-NJK, 2019 WL 6718087 (D. Nev. Dec. 10, 2019), "after a close review of case law, the Court finds that the proper standard to apply is 'whether [the affirmative defense] gives [the plaintiff] fair notice of the defense.'" *Id.* (citations omitted). Indeed, and as Defendants argue, this is the standard the Ninth Circuit recited in *Kohler*, citing the Wright and Miller treatise. *See* 779 F.3d at 1019. The Wright and Miller treatise, updated as recently as last month, in turn continues to assert that *Kohler* is the leading Ninth Circuit case on the pleading standard for affirmative defenses. *See Wright and Miller*, § 1274 Pleading Affirmative Defenses, 5 Fed. Prac. & Proc. Civ. § 1274 n.9 (4th ed.) (April 2025 Update). The treatise authors assert that *Kohler* is representative of the cases that have the correct view of the pleading standard for affirmative defenses because of the differences between the words used in Fed. R. Civ. P. 8(a)(2), "showing that the pleader is entitled to relief," and (c)(1), "affirmatively state any avoidance or affirmative defense." *See generally id.* "Given that *Twombly*'s plausibility standard is based on an interpretation of Rule 8(a)(2)'s requirement of a 'showing' of entitlement to relief—a requirement that Rule 8(c) lacks—those courts declining to apply the plausibility standard to the pleading of affirmative defenses have the better view." *Id.* The Court agrees, and accordingly rejects North Bay's

contrary argument based on the textual similarities between Fed. R. Civ. P. 8(a) and 8(b). (ECF No. 108 at 11-14.)

Under this standard, North Bay accordingly argues that Defendants' answer does not give it fair notice of Defendants' indispensable party, estoppel, fraud, illegality, and mitigation defenses.[5] (ECF No. 98 at 19-21.) Beginning with the indispensable party defense, North Bay appears to have fair notice of it because North Bay speculates in its Motion that Austin Capital Trust Company ("Austin") is the allegedly indispensable party Defendants are referring to (*id.* at 20-21), and Defendants confirm North Bay is correct in response (ECF No. 105 at 14).[6] The Court accordingly denies North Bay's Motion to the extent it seeks to strike Defendants' indispensable party affirmative defense.

However, North Bay also argues it lacks fair notice of Defendants estoppel, fraud, illegality, and mitigation affirmative defenses because they are unaccompanied by any factual allegations. (ECF No. 98 at 21.) Defendants do not point to any factual allegations supporting these defenses in response. (ECF No. 105 at 14-15.) And indeed, there are no factual allegations supporting these defenses in the Answer (ECF No. 81 at 7-8), nor can the Court determine what Defendants might mean by these defenses from reviewing the rest of the Answer and counterclaims (*see generally id.*). The Court accordingly finds Defendants have not provided North Bay with fair notice of these defenses and will strike them.

However, the Court's decision to strike them is without prejudice to their inclusion in an amended answer—if Defendants choose to file one—because the Court cannot say

---

[5]North Bay asks the Court to strike all of Defendants' affirmative defenses, but only offers argument as to the specific defenses noted above. (ECF No. 98 at 20.) The Court declines to strike any affirmative defense for which North Bay provides no specific argument.

[6]North Bay otherwise argues that MRB lacks standing to assert any injuries that Austin suffered and notes that the Court already dismissed Austin's claims against North Bay, Chris Call, and Carole McCormick for lack of personal jurisdiction in *Austin Capital Trust Company, LLC v. North Bay Credit Union, et al.*, Case 3:23-cv-00444-MMD-CSD, ECF No. 52 (D. Nev. Aug. 12, 2024). (ECF No. 108 at 15-16.) That seems correct. But for these purposes, it suffices to say that North Bay has fair notice of Defendants' contention that Austin is an indispensable party.

that amendment would be futile. While Defendants do not explicitly request leave to amend their affirmative defenses in the pertinent section of their response to the Motion, the Court construes them as having made such a request because they argue North Bay 'does not establish that amendment is futile' and that issues with their defenses 'can easily be cured by way of amendment.' (ECF No. 105 at 14-15.) And North Bay concedes granting Defendants leave to amend their affirmative defenses is within the Court's discretion. (ECF No. 108.) The Court accordingly grants Defendants leave to file an amended answer at the same time MRB files its amended counterclaims if Defendants wish to amend their estoppel, fraud, illegality, and mitigation affirmative defenses to include supporting factual allegations.

### D.    Striking Allegations

North Bay finally moves to strike allegations about Austin from MRB's counterclaims, contending that they are immaterial and impertinent. (ECF No. 98 at 22-24.) MRB counters that the allegations regarding Austin are logically connected and relevant to its counterclaims against North Bay, specifically pointing out that North Bay itself stated in a prior notice of related cases it filed in this case that the case Austin filed against North Bay (again, which the Court later dismissed for lack of personal jurisdiction), "is based on the same or related facts that underlie this Complaint." (ECF No. 105 at 15-17 (citing in pertinent part ECF No. 52 at 2).) The Court agrees with MRB and will not strike the allegations in the counterclaims about Austin. North Bay effectively conceded in its notice of related cases that Austin was involved in the events giving rise to all this related litigation, and the Court views the allegations involving Austin in the counterclaims as nothing more than context. Austin is not a party to this case, so North Bay does not need to defend against any allegations based on its relationship (or lack thereof) with Austin in it.

That said, the notice pleading requirements of Rule 8(a) can be violated not only "when a pleading says too little," but also "when a pleading says too much." *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (citations omitted). MRB spends pages of its

counterclaims describing alleged harm to Austin, who is not a party to this case. (ECF No. 81 at 8-37.) Since the Court is giving MRB the opportunity to file an amended pleading anyway, the Court encourages MRB to either substantially pare down or entirely remove the allegations regarding Austin in any amended pleading it files.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that North Bay's motion to dismiss (ECF No. 98) is granted in part, and denied in part, as specified herein.

It is further ordered that MRB's first, second, fifth, seventh, and 11th causes of action (ECF No. 81 at 29-31, 34-40, 43) are dismissed to the extent they are asserted against North Bay in the counterclaims, without prejudice and with leave to amend, consistent with this order, within 15 days.

It is further ordered MRB's counterclaims against North Bay will be dismissed with prejudice and without further warning to MRB if MRB does not file amended counterclaims within 15 days.

It is further ordered that the Court strikes Defendants' affirmative defenses of estoppel, fraud, illegality, and mitigation, but Defendants may amend their affirmative defenses within 15 days.

DATED THIS 19th Day of May 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE