GORDON REES SCULLY MANSUKHANI
SEAN P. FLYNN (SBN 15408)
1 East Liberty Street, Suite 424
Reno, NV 89501
Telephone:  (775) 467-2610
Email:  sflynn@grsm.com

BUCHALTER LLP
CHERYL M. LOTT (CA SBN:  232548) (*Admitted pro hac vice*)
MATTHEW L. SEROR (CA SBN: 235043) (*Admitted pro hac vice*)
DAVID E. MARK (CA SBN:  247283) (*Admitted pro hac vice*)
EFRAT M. COGAN (CA SBN: 132131(*Admitted pro hac vice*)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400
Email: clott@buchalter.com
        mseror@buchalter.com
        dmark@buchalter.com
        ecogan@buchalter.com

Attorneys for Plaintiff and Counter-Defendant
NORTH BAY CREDIT UNION and Counter Defendant
HIGHERGROWTH, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NORTH BAY CREDIT UNION, a California nonprofit corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual; and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case No. 2:24-cv-00212-MMD-CSD<br><br>**COUNTER-DEFENDANT HIGHERGROWTH, LLC'S MOTION TO DISMISS MRB DIRECT, INC.'S AMENDED COUNTERCLAIM**<br><br>**\*\*\*ORAL ARGUMENT REQUESTED\*\*\*** |
| MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual,<br><br>                Counter-Plaintiffs,<br><br>        vs.<br><br>NORTH BAY CREDIT UNION, a California nonprofit corporation; HIGHERGROWTH, LLC, a California limited liability company; and GREENBAX MARKETPLACE, INC., a California corporation,<br><br>                Counter-Defendants | |

BUCHALTER LLP
LOS ANGELES

Plaintiff and Counter-Defendant HigherGrowth, LLC ("HigherGrowth"), by and through its undersigned counsel, moves to dismiss the amended counterclaim filed by Defendant and Counterclaimant MRB Direct, Inc. ("MRBD") under Federal Rules of Civil Procedure 12. The motion is based on the papers and pleadings on file in this action, the points and authorities that follow, the concurrently filed request for judicial notice, and any argument at the time of hearing.

BUCHALTER LLP
LOS ANGELES

2

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF PROCEDURAL HISTORY.................................................... 2

      A.      Background ............................................................................................. 2

      B.      The amended counterclaim attempts to allege a trade secret claim against North Bay, and this Court dismisses that claim. ................................................... 3

      C.      Proceedings as to HigherGrowth after this Court ordered that the former's claims go to arbitrator. ................................................................................... 3

III.    STANDARDS OF REVIEW................................................................................ 4

IV.     MRBD HAS NOT AND CANNOT ALLEGE A CLAIM FOR BREACH OF CONTRACT BASED ON TRADE SECRET MISAPPROPRIATION........................... 5

      1.      This Court already found that the trade secret allegations at issue are insufficient. .................................................................................... 5

      2.      MRBD also fails to allege that HigherGrowth had access to MRBD's alleged trade secrets. ......................................................................... 8

V.      THE ALLEGATIONS PERTAINING TO FAILURE TO PAY INVOICES SHOULD BE STRICKEN ................................................................................................. 9

VI.     CONCLUSION................................................................................................... 9

BUCHALTER LLP
LOS ANGELES

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F.Supp.3d 1133 (N.D. Cal. 2019) ............................................................................ 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................1, 4, 5, 6

*Bell Atlantic Corp. v. Twombly*,
  550 US 544 (2007)............................................................................................1, 4, 5, 6

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy,
  Inc.*, 510 U.S. 517 (1994) ............................................................................................ 9

*Hutchison v. KFC Corp.*,
  809 F. Supp. 68 (D. Nev. 1992)................................................................................. 5, 6

*ImageKeeper LLC v. Wright Nat'l Flood Ins. Servs.*,
  No. 22-CV-0147, 2024 WL 1330046 (D. Nev. Mar. 27, 2024) ............................... 6

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
  978 F.3d 653 (9th Cir. 2020) ..................................................................................... 6

*Pellerin v. Honeywell Intern., Inc.*,
  877 F.Supp.2d 983 (S.D. Cal. 2012)........................................................................ 7

*Suprock v. Quantum Energy, Inc.*,
  676 F. Supp. 3d 891 (D. Nev. 2023)...................................................................... 5, 9

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) .................................................................................. 5

**Other State Cases**

*Fortunet, Inc. v. Coronel*,
  2024 WL 3841864, 554 P.3d 210 (Nev. 2024) ..................................................... 6

*Frantz v. Johnson*,
  116 Nev. 455 (Nev. 2000) .................................................................................... 5

**Other State Statutes**

Bus. & Prof. Code
  § 17200........................................................................................................... 2

BUCHALTER LLP
LOS ANGELES

ii

N.R.S. 600A.090(2)(a) .................................................................................................................. 5

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ................................................................................................................... 4

Fed. R. Civ. P. 12(b) ..................................................................................................................... 4

Fed. R. Civ. P. 12(f) .................................................................................................................. 5, 9

Nev. R. App. P. 36 (c)(3) .............................................................................................................. 6

BUCHALTER LLP
LOS ANGELES

**HIGHERGROWTH'S MOTION TO DISMISS UNDER FED.R.CIV.P. 12**          Case No. 2:24-cv-00212 MMD-CSD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

MRB Direct, Inc. ("MRBD") is attempting to keep alive a case this Court has already dismantled—piece by piece—by repackaging a legally deficient trade secret theory as a breach of contract claim against HigherGrowth, LLC ("HigherGrowth"). That effort fails for a simple reason: the deficiency this Court identified before has not been cured, avoided, or meaningfully addressed. It has merely been relabeled.

After multiple rounds of motion practice, only one counterclaim remains active in this action: MRBD's claim for breach of contract allegedly premised on trade secret misappropriation. That claim rests on the exact same trade secret allegations that this Court already rejected when dismissing MRBD's statutory misappropriation claim against North Bay Credit Union ("North Bay"). In doing so, this Court made findings that are dispositive here. First, the Court held that MRBD's trade secret allegations are not merely insufficient, but fundamentally defective under *Twombly* and *Iqbal*:

"The allegations supporting the misappropriation of trade secrets claim are conclusory and are formulaic, essentially, reiteration of the elements of a cause of action and cannot possibly state a claim for relief." (ECF 143, p. 23:5–12.)

Next, the Court explained that MRBD never actually identified trade secrets at all—only generic software concepts dressed up as proprietary technology:

"[T]hese allegations are conclusory because essentially they describe that the trade secrets contain processes, source codes, and interfaces, … but these are conclusory and do not rise above the speculative level to state a plausible claim for relief." (ECF 143, p. 24:3–24.)

Those findings were not narrow, technical, or limited to statutory labeling. They went to the core problem with MRBD's theory: the absence of any pleaded, particularized trade secret. Nevada law—as this Court is well aware—does not permit a party to evade that pleading requirement by reframing the same allegations as a contract claim. Where a breach of contract theory is "based on the alleged misappropriation of a trade secret," and the trade secret has not been adequately pleaded, the contract claim fails as a matter of law.

MRBD has now had multiple opportunities to articulate what its alleged trade secrets actually are. Each time, it has declined to do so. Nothing prevented MRBD from identifying specific, protectable material; it could have done so under seal if necessary. Its continued reliance on vague references to "platforms," "interfaces," and "processes" confirms the point this Court has already made: there is nothing there to plead.

Because MRBD's remaining counterclaim is built entirely on allegations this Court has already found implausible, conclusory, and speculative, it should be dismissed with prejudice. Allowing yet another iteration would not advance the merits of the case—it would only prolong litigation over a theory this Court has already rejected.

Additionally, even if MRBD sufficiently pled the existence of a trade secret (it did not), there are no facts set forth showing how HigherGrowth gained access to or acquired MRBD's so-called trade secrets.

Finally, MRBD's allegations pertaining to HigherGrowth's failure to pay invoices have nothing to do with the only remaining counterclaim.  Consequently, the Court should strike paragraphs 42-54 of MRBD's counterclaim.

## II.   STATEMENT OF PROCEDURAL HISTORY

### A.   Background

North Bay sued MRBD and its principal, David Park, alleging claims for intentional and negligent interference with prospective economic advantage, violation of Business and Professions Code Sections 17200, and declaratory relief in California. MRBD removed the matter to federal court. (ECF 1, 1-2.) MRBD obtained a transfer to Nevada (ECF 36) and ultimately filed an answer and counterclaims against North Bay, HigherGrowth and Greenbax. (ECF 81.) Each of the counter-defendants moved to dismiss. (ECF 98 [North Bay], 101 [HigherGrowth], 106 [Greenbax], 133 [North Bay].)  Greenbax moved on grounds that the Court lacked personal jurisdiction over it (ECF 106), and the Court agreed, dismissing Greenbax.

North Bay first moved to dismiss all the counterclaims asserted against it as preempted by the Uniform Trade Secrets Act ("UTSA") (ECF 98) and the Court agreed, allowing limited leave to amend.  (ECF 128.)  HigherGrowth moved to dismiss or, in the alternative, to compel arbitration.

The Court granted the motion to compel arbitration to allow the arbitrator to determine arbitrability of claims. (ECF 130.) MRBD filed an amended answer and counterclaim.  (ECF 129.)

**B.** **The amended counterclaim attempts to allege a trade secret claim against North Bay, and this Court dismisses that claim.**

The answer and counterclaim asserted a claim for misappropriation of trade secrets against North Bay. (ECF 129, Count 1.) MRBD asserted that North Bay acquired knowledge of MRBD's trade secrets through inducing HigherGrowth to breach HigherGrowth's duty of secrecy under the operative agreement between HigherGrowth and MRBD ("MSA"), and used/disclosed those trade secrets to create a competing platform.  (*Id.*, ¶¶ 57, 60-82.)

North Bay moved to dismiss MRBD's statutory counterclaim for misappropriation of trade secrets, arguing that the claim cannot survive because it failed to sufficiently describe the alleged trade secrets.  (ECF 133.)   North Bay argued that MRBD merely relied on generally named programs, claiming they were proprietary, without more.  (*Id.*)  This Court granted North Bay's motion.  (ECF 143.)  *In doing so, this Court agreed with North Bay, finding that MRBD's descriptions of alleged trade secrets were "conclusory and are formulaic, essentially, reiteration of the elements of a cause of action and cannot possibly state a claim for relief."*  (ECF 143, p. 23:4-12.)  *Further, this Court noted that the allegations of MRBD's alleged trade secrets merely describe generic processes rather than actual trade secrets*.  (*Id.*, pp. 23:13-25:7.)

**C.** **Proceedings as to HigherGrowth after this Court ordered that the former's claims go to arbitrator.**

While the court stayed MRBD's claims against HigherGrowth and ordered the HigherGrowth claims to arbitration (leaving to the arbitrator the responsibility to determine arbitrability), the amended counterclaim (ECF 129) included claims for breach of contract and breach of the covenant of good faith and fair dealing against HigherGrowth, but footnote 2 of the amended counterclaim acknowledged that it was simply restating the stayed claims against HigherGrowth. (ECF 129, p. 26:26-28.)

In the arbitration, MRBD filed an answer and counterclaims.

Per the arbitrator's interim award on arbitrability MRBD alleged five counts:

"(1) misappropriation of trade secrets under several California Civil Code provisions concerning the banking platform MRBD licensed to HigherGrowth under the terms of the MSA; (2) breach of contract related to misappropriation of MRBD's trade secrets involving the banking platform and its right, title and interest to all Work Product, Project Technology and associated intellectual property rights assigned by HigherGrowth to MRBD under Section 6 of the MSA; (3) breach of contract for HigherGrowth's failure to pay amounts due under the MSA; (4) in the alternative to breach of contract, unjust enrichment for amounts due under the MSA; and (5) breach of the implied covenant of good faith and fair dealing."

(ECF 146-1, Ex. 1-A to Pilatowicz Declaration, pp. 4, 7.)

As noted in the papers relating to MRBD's recent motion to lift the stay on its breach of contract claim, the arbitrator did not rule on the substantive validity of those claims – it simply determined whether, on the allegations alleged, the first two counts (misappropriation and breach of contract for trade secrets) fell within or without the scope of the arbitration clause. The interim award recognizes that MRBD's position is that only those two claims are outside the scope of the arbitration. (ECF 146-1, Ex. 1-A to Pilatowicz Decl., p. 8.) The award concludes that only those two claims might be pursued in the district court. (ECF 146-1, Ex. 1-A to Pilatowicz Decl., p. 20.)

MRBD then moved to lift the stay on its claims for breach of contract and breach of the covenant of good faith and fair dealing. HigherGrowth opposed, on a number of grounds, including among them that the breach of the covenant claim was still in the arbitration. (ECF 146, 147.) This Court lifted the stay only on MRBD's counterclaim for breach of contract based on misappropriation of trade secrets. (ECF 149.)

### III.   STANDARDS OF REVIEW

***Fed. R. Civ. P. 12(b) motions generally***. A complaint or counterclaim must give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 US 544, 555 (2007). In addition to providing "fair notice" of the claim, the pleading's factual allegations must show "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, *supra*, 550 U.S. at 570. To determine whether it does so, *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) requires a two-prong analysis: First, courts disregard conclusory allegations or formulaic recitations of the elements of claims. *Twombly, supra*, 550 U.S. at 555. Second, considering only well-pleaded facts, courts must determine if the facts (not any conclusions or argumentative

characterization) plausibly suggest grounds for relief. See *Iqbal*, *supra*, 556 U.S. at 680. When a claim has not crossed the line "from conceivable to plausible," the complaint or counterclaim must be dismissed. *Twombly*, 550 U.S. at 570.

*Fed. R. Civ. P. 12(f)*. The district court may strike portions of a pleading as insufficient, redundant, immaterial, impertinent, or scandalous. Such motions allow courts to avoid the expense that arises from having to litigate spurious (or non) issues by dispensing with them at an early stage in the proceedings. *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010).[1] This benefits the parties as well as the courts because it reduces and streamlines the case to focus on the actual issues. *Suprock v. Quantum Energy, Inc*., 676 F. Supp. 3d 891, 896 (D. Nev. 2023). The decision to grant a motion to strike lies within the discretion of the trial court. *Id*.

## IV.     MRBD HAS NOT AND CANNOT ALLEGE A CLAIM FOR BREACH OF CONTRACT BASED ON TRADE SECRET MISAPPROPRIATION

### 1.      This Court already found that the trade secret allegations at issue are insufficient.

MRBD's breach of contract claim arises under a contract that has a Nevada choice of law provision.[2] Nevada's uniform trade secrets act (UTSA) – like California's -- displaces all tort claims for misappropriation of trade secrets but allows a party to allege a breach of contract claim for misappropriation. *Frantz v. Johnson*, 116 Nev. 455, 465 (Nev. 2000), fn. 4; N.R.S. 600A.090(2)(a). In other words, one can allege a breach of contract claim for misappropriation along with, or in place of, a statutory claim.

However, where (as here) the alleged basis of a statutory or contractual trade secret claim are the same, and where the statutory claim fails, so does the contractual claim. This is what happened in *Hutchison v. KFC Corp*., 809 F. Supp. 68, 71 (D. Nev. 1992). Plaintiffs failed to allege a claim for violation of the UTSA. Their breach of contract for misappropriation was based on the same facts. So, the court held plaintiffs' breach of contract claim likewise failed: "Plaintiffs' breach

---

[1]Motion denied, but only because it sought to strike damages allegations on the grounds that they were precluded by law, a ground unavailable on ordinary motion to strike.

[2]The MSA provides that Nevada law governs disputes between HigherGrowth and MRBD pertaining to the MSA. ECF 129-1 [MSA], p. 11, [§ 12.8, "Governing Law and Severability"].

BUCHALTER LLP
LOS ANGELES

5

of contract theory is based on the alleged misappropriation of a trade secret. As stated above, Plaintiffs have not sufficiently pleaded their causes of action for misappropriation and theft of a trade secret. Since their breach of contract theory is based upon correctly pleading these two causes of action," the court dismissed the breach of contract claim as well. (*Id*. at 71.) In other words, in order for a breach of contract theory based on alleged misappropriation of trade secrets to survive a motion to dismiss, the underlying misappropriation of trade secrets must be sufficiently plead. (*Ibid*.)

Not only *Bell* and *Iqbal*, but Nevada law requires more than generic, conclusory descriptions of trade secrets as well. *Fortunet, Inc. v. Coronel,* 2024 WL 3841864 *4, 554 P.3d 210 (Nev. 2024).[3]  Parties must "clearly refer to tangible trade secret material" instead of referring to a "system which potentially qualifies for trade secret protection." *InteliClear, LLC v. ETC Glob. Holdings, Inc.,* 978 F.3d 653, 658 (9th Cir. 2020)*; see, e.g*., *ImageKeeper LLC v. Wright Nat'l Flood Ins. Servs*., No. 22-CV-0147, 2024 WL 1330046 at *3-5 (D. Nev. Mar. 27, 2024) [digesting cases on specificity required and finding that most of the alleged trade secrets alleged were too generic, and finding that only two trade secrets which included specification as to the source code comprising the allegedly secret formula and the documentation itself could qualify as trade secrets].[4]  Moreover, *Fortunet* instructs that "[p]articularized identification is especially important when source code is claimed as a trade secret *because an individual's source code may be largely derived from open-source code, which is generally known and available to the public*." *Fortunet,* 2024 WL 3841864 at *4, 554 P.3d 210 (emphasis added).

---

[3]Under Nevada rules, a party may cite an unpublished disposition issued by the Supreme Court on or after January 1, 2016 for its persuasive value, if any. Nev. R. App. P. 36 (c)(3).

[4]In that case, the defendants did not move to dismiss on grounds that trade secrets were inadequately alleged.  Instead, they moved to dismiss various iterations of the complaint on the grounds they were preempted under Nevada's UTSA (Docket for 22-CV-01470, ECF 59, 74) or on jurisdictional grounds (Docket for 22-CV-01470, ECF 89 [later withdrawn at ECF 101].)

As a result, the issue was never joined on a motion to dismiss. When the plaintiff refused to provide the necessary specification, the *ImageKeeper* court ordered that it do so, and that it would not be permitted to vary or expand that description.  *ImageKeeper*, 2024 WL 1330046, at *1.

Given the pleading standards for trade secrets, a motion to dismiss is entirely proper.  Parties should not have to litigate a trade secrets case if (as here) a counterclaimant cannot identify the alleged secrets.

California district courts similarly frequently hold the requirement to identify trade secrets with particularity when pleading UTSA claims also applies to breach of contract claims based on misappropriation of trade secrets. *Pellerin v. Honeywell Intern., Inc*., 877 F.Supp.2d 983, 990-991 (S.D. Cal. 2012) [breach of contract claim based on misappropriation of trade secrets dismissed for failure to describe trade secrets with sufficient particularity]; *AlterG, Inc. v. Boost Treadmills LLC*, 388 F.Supp.3d 1133, 1147 (N.D. Cal. 2019) [breach of contract claim based on alleged misappropriation of trade secrets dismissed due to failure to allege trade secrets with specificity].)

Here, the entirety of MRBD's alleged description of its trade secrets are contained in paragraphs 19 and 20 of the amended counterclaim. ***In granting North Bay's recent motion to dismiss, this Court already found this exact description insufficient including specifically under Bell and Iqbal standards***:

> I agree with North Bay that the counterclaim as to what a trade secret is is generic and conclusory. For example, Paragraph 20 states that the platform contained unique, nonpublic information related to the methods, techniques, and processes of providing banking services to cannabis customers. This is I think the epitome of what's conclusory. This paragraph, however, then goes onto try to describe the functions of the platform. MRBD alleges that trade secret is its banking platform which includes a banker's interface and an administrator's interface for a licensee to administer the functions of the platform, proprietary application programming interfaces and associated source codes, data structure processes and methodologies that dictate the relationship, and structures so everything works together. But these allegations are conclusory because essentially they describe that the source -- the trade secrets contain processes, source codes, and interfaces, just as counsel reiterated today that the trade secrets are processes, source codes, and interfaces which MRBD claims sets a boundary as to what they allege to be a trade secret, but these are conclusory and do not rise to the -- above the speculative level to state a plausible claim for relief.

(ECF 143, p. 24:3-24.)

MRBD's allegation that its platform was designed for "heavily-regulated" cannabis banking that lead to "specific innovations" does not allege or describe a trade secret. (*Cf*. ECF 129 [FACC], at p. 29, ¶ 19.) Certainly, if there were specific innovations, they could be described. The allegation (at ¶ 20) that the Platform allegedly contains "unique, non-public information related to the methods, techniques and processes of providing banking services to cannabis customers" is wholly generic, conclusory and lacks any factual basis, let alone one that would satisfy either intellectual

property, or trade secret case law. The fact that the platform provides "web", "bankers'" and "administrative" interfaces does not describe a trade secret; nor does naming those interfaces as application programing interfaces (APIs) that are "proprietary." (*Id*. at p. 29, ¶ 20.) Likewise, paragraph 20's reference to APIs, or to integration platforms (iPaaS) or robotic process automation programs, or to alleged source code, methods, processes or workflow instructions offers nothing but generic conclusions.

This court has already found these allegations insufficient to sustain a misappropriation claim. They are thus equally insufficient to allege a breach of contract claim for misappropriation of trade secrets. And of course, if the breach of contract claim is for something else, then the claim belongs in arbitration, not here. MRBD has already had the opportunity to allege a trade secrets claim. It could not do so.

**2. MRBD also fails to allege that HigherGrowth had access to MRBD's alleged trade secrets.**

MRBD has not only failed to identify protectable trade secrets, but it has not shown that it gave access to any protected elements of its code to HigherGrowth such that HigherGrowth could allow unauthorized parties to use MRBD's intellectual property. (ECF 129 [FACC], at p. 41, ¶ 88.) The MSA between MRBD and HigherGrowth states that it only gave HigherGrowth access to Content, which is defined to exclude source code or source code documentation. (ECF 129-1 [MSA], p. 2, [§ 1, defining "Content"] and p. 7 [§6.3].)[5] Thus, there are no facts on which to plausibly base an assertion that HigherGrowth had possession of, or access to, MRBD's purported trade secrets. (ECF 129 [FACC], at p. 40, ¶¶ 83, 88, 90.)[6]

The only claim against HigherGrowth in the counterclaim – the claim for breach of contract for misappropriation of trade secrets, should be dismissed without leave to amend.

---

[5]MRBD attaches ECF 129-1 as the operative MSA between the parties. HigherGrowth disputes this, but a motion to dismiss is not the proper vehicle for that dispute and HigherGrowth reserves all rights in that regard. References here to the MSA are not a concession that the attachment to ECF-129 is the operative contract.

[6]Moreover, ECF 129-1 explicitly carves out reverse engineered content or services as a breach. (*Id*., pp. 5, 6 [§ 3.4, defining "Usage Restrictions"].) MRBD merely claims broadly that HigherGrowth obtained certain processes, techniques and methods from MRBD, yet fails to explain how such processes, techniques and/or methods (if obtained at all) were not merely reverse engineered.

## V. THE ALLEGATIONS PERTAINING TO FAILURE TO PAY INVOICES SHOULD BE STRICKEN

Fed. R. Civ. Proc. 12(f) provides that a court may strike "immaterial" matter which "has no essential or important relationship to the claim for relief or the defenses being pleaded". *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Similarly, a court may strike "impertinent" material, which consists of statements that do not pertain, and are not necessary, to the issues in question. *Id.* Consequently, a motion to strike is warranted where the challenged allegations do not relate to any element of the claim at issue. *Suprock v. Quantum Energy, Inc.*, 676 F.Supp.3d 891, 897 (D. Nev. 2023) [granting motion to strike where the reference to extortion did not relate to any element of the breach of contract claim].

Here, MRBD incorporates allegations pertaining to HigherGrowth's purported failure to pay invoices into MRBD's counterclaim for breach of contract based on trade secret misappropriation. (ECF ¶¶ 42-54, 83.) These allegations do not relate to any element of the counterclaim. Moreover, MRBD's counterclaim for breach of contract based on failure to pay invoices against HigherGrowth is currently pending in arbitration. This is precisely why this Court lifted the stay solely with respect to MRBD's counterclaim for breach of contract based on trade secret misappropriation. (ECF 149, p. 2.) Consequently, paragraphs 42 through 54 are immaterial, impertinent and should be stricken.

## VI. CONCLUSION

MRBD's sole remaining counterclaim is based on the same conclusory trade secret allegations this Court has already rejected. Recasting those allegations as a breach of contract does not cure their fatal defect. MRBD has had multiple opportunities to plead an actual trade secret and access to the same. It has not done so.

Accordingly, the counterclaim should be dismissed with prejudice. Paragraphs 42 through 54, which concern issues pending in arbitration and have no bearing on the remaining claim, should be stricken.

Dated:  April 27, 2026

**BUCHALTER LLP**

By: */s/ Matthew L. Seror*
    Cheryl M. Lott (CA SBN: 232548)
    (*Admitted pro hac vice*)
    Matthew L. Seror (CA SBN:
    235043) (*Admitted pro hac vice*)
    David E. Mark (CA SBN: 247283)
    (*Admitted pro hac vice*)

**GORDON REES SCULLY MANSUKHANI**

By: */s/ Sean Flynn*
    Sean Flynn

*Attorneys for Plaintiff and Counter-Defendant*
NORTH BAY CREDIT UNION and
Counter-Defendant HIGHERGROWTH,
LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of April, 2026, I caused a true and correct copy of the foregoing **COUNTER-DEFENDANT HIGHERGROWTH, LLC'S MOTION TO DISMISS MRB DIRECT, INC.'S AMENDED COUNTERCLAIM** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

/s/ *Matthew L. Seror*
An employee of Buchalter LLP

BUCHALTER LLP
LOS ANGELES

11