GARMAN TURNER GORDON LLP
DYLAN T. CICILIANO
NV Bar No. 12348
Email: dicicliano@gtg.legal
TERESA M. PILATOWICZ
NV Bar No. 9605
Email: tpilatowicz@gtg.legal
J. SEAN BENEVENTO
NV Bar No. 16498
Email: jsbenevento@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
Tel: (725) 777-3000
Fax: (725) 777-3112
*Attorneys for Defendants and Counter-Claimants*
*MRB Direct, Inc. and David Park.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NORTH BAY CREDIT UNION, a California nonprofit corporation, | Case No. 2:24-cv-00212-MMD-CSD |
| Plaintiff, | |
| v. | **DEFENDANT AND COUNTER-PLAINTIFF MRB DIRECT, INC.'S OPPOSITION TO COUNTER-DEFENDANT HIGHERGROWTH, LLC'S MOTION TO DISMISS MRB DIRECT, INC.'S AMENDED COUNTERCLAIM** |
| MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual; and DOES 1 through 10, inclusive, | |
| Defendants. | |
| MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual, | |
| Counter-Plaintiffs, | |
| v. | |
| NORTH BAY CREDIT UNION, a California nonprofit corporation; HIGHERGROWTH, LLC, a California limited liability company; and GREENBAX MARKETPLACE, INC., a California corporation, | |
| Counter-Defendants. | |

Defendant and Counter-Plaintiff MRB Direct, Inc. ("MRB Direct" or "MRBD") files its Opposition to the Motion to Dismiss MRBD's Amended Counterclaim [ECF No. 150] (the "Motion" or "Motion to Dismiss") filed by Counter-Defendant HigherGrowth, LLC ("HigherGrowth").

<strong>MEMORANDUM OF POINTS AND AUTHORITIES</strong>

<strong>I.     INTRODUCTION</strong>

MRB Direct's Counterclaim in this matter asserts a breach of contract claim alleging that HigherGrowth violated specific IP-related[1] provisions of the MSA when HigherGrowth failed to abide by contractually-created restrictions on the use and possession of MRB Direct's Platform. MRB Direct alleges, as set forth in the Counterclaim, that HigherGrowth was contractually obligated not to reveal, disclose, or improperly utilize MRB Direct's protected information, inclusive of any right, title and interest to all Work Product, Project Technology and associated intellectual property rights assigned by HigherGrowth to MRBD under Section 6 of the MSA. MRB Direct alleges that HigherGrowth did just that. This is sufficient to support a claim for breach of contract and survive a motion to dismiss.

Nevertheless, HigherGrowth completely ignores the actual language of the breach allegations and argues that the breach of contract claim solely and exclusively rests on misappropriation of trade secrets. Even a cursory review of the Counterclaim shows that to be untrue. None of the allegations would require MRB Direct to prove it has a "trade secret" under NUTSA, CUTSA, or any other trade secret act. Instead, the breach of contract claim alleges that HigherGrowth violated contractual restrictions on the use of MRB Direct's Platform, even if MRB

---

[1] Notably, the Arbitrator confirmed that the same breach of contract claim asserting the same breaches is principally related to intellectual property, and therefore not arbitrable. *See* Interim Award on Arbitrability and Choice of Law ("Arbitration Ruling") [ECF No. 146-1] at pp. 7, 20-21 (describing the breach of contract claim at issue as "breach of contract related to MRBD's trade secrets involving the banking platform *and its right, title and interest to all Work Product, Project Technology and associated intellectual property rights assigned by HigherGrowth to MRBD under Section 6 of the MSA*" and ruling that said claim is principally related to intellectual property and therefore not arbitrable). As explained throughout this opposition, while the breach claims are principally related to intellectual property, they are not identical to—and do not rise and fall with—any statutory trade secret claim.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Direct's Platform does not meet the technical, higher standard to allege a claim under NUTSA or CUTSA.  The pleading standard for a breach of contract claim, which requires only a short and plain statement entitling the pleader to relief, has been met here and dismissal is not warranted.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of Rule 8(a)(2) is simply to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[2] Accordingly, Rule 8 does "not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face."[3]  A plausible claim requires facts that merely "raise a right to relief above the speculative level"[4] and allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[5]

## III.    ARGUMENT

**A.    The Court Should Deny HigherGrowth's Motion to Dismiss Because the Amended Counterclaim States a Plausible Claim for Breach of Contract Against HigherGrowth**

The Counterclaim is broader than just a breach of contract for misappropriation of trade secrets: it alleges breach of multiple different IP-related provisions of the MSA, including Section 3.4 (restricting HigherGrowth's ability to use the Platform and MRB Direct's Services in various ways) and Section 6 (assigning ownership of Work Product, Project Technology, and associated intellectual property to MRB Direct) by performing contractually-prohibited acts, regardless of whether those acts meet the statutory definition of misappropriating trade secrets.[6]  For example, the Counterclaim alleges HigherGrowth breached Section 3.4 of the MSA by "allowing

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] *Id.* at 570.

[4] *Id*. at 555.

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *See* Defendants' Amended Answer to Complaint and Counterclaims ("Counterclaim") [ECF No. 129], at p. 40 ¶ 86 - p. 41 ¶ 88 (filed June 3, 2025).

unauthorized parties to use the Platform and MRB Direct's intellectual property, selling, reselling, licensing, sublicensing, distributing, making available, renting, or leasing the [P]latform, [and] using its access to the Platform to build or facilitate building a competing product." [7] It similarly alleges HigherGrowth breached Section 6 of the MSA by "accessing the Platform after MRB Direct revoked HigherGrowth's license and by retaining possession of the Work Product, Project Technology, and associated intellectual property that HigherGrowth assigned to MRB Direct under Section 6 of the MSA." [8] None of these claims allege or require proof that MRB Direct possessed a trade secret or that HigherGrowth misappropriated it.[9] In other words, the Counterclaim turns on whether HigherGrowth breached contractual obligations as defined by the MSA, not whether HigherGrowth misappropriated trade secrets as defined by the Uniform Trade Secrets Act.[10]

In Nevada, the elements of a breach of contract claim are "(1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the Plaintiff damages." [11] The Counterclaim alleges facts to plausibly support each element.

/ / /

---

[7] *See* Counterclaim [ECF No. 129], at p. 40 ¶ 86 - p. 41 ¶ 88.

[8] *See id.*

[9] *See Mattson Technology, Inc. v. Applied Materials, Inc.*, No. 23-cv-06071-SVK, 2024 WL 3558849, at *6 (N.D. Cal. July 25, 2024) ("DTSA and breach-of-contract claims do not succeed or fail in tandem; the claims require satisfaction of distinct elements.") That said, HigherGrowth statutorily misappropriating MRB Direct's trade secrets would no doubt constitute a contractual breach of Section 3.4 and Section 6 of the MSA. But the breaches alleged by MRB Direct are not *dependent upon* a finding of UTSA misappropriation.

[10] *See Albert's Organics, Inc. v. Holzman*, 445 F.Supp.3d 463, 476 (N.D. Cal. 2020) ("Trade secrets are defined by statute, but terms such as confidential and proprietary information are defined by the contract. Thus, a defendant may breach a contract for disclosing confidential information that does not constitute a trade secret.").

[11] *Iliescu v. Regional Transportation Commission*, 138 Nev. 741, 746-47, 522 P.3d 453, 458 (Nev. Ct. App. 2022).

As to the first element (a valid contract), the Counterclaim alleges that MRB Direct and HigherGrowth became parties to the MSA on November 1, 2021, and attaches a copy of the version of the governing MSA.[12] Although the Parties dispute which specific version of the MSA applies, HigherGrowth does not dispute the existence of the MSA and raises no argument as to the sufficiency of MRB Direct's allegations as to its formation.[13]

As to the second element (MRB Direct's performance), the Counterclaim alleges that MRB Direct performed all obligations under the MSA. Specifically, it alleges that MRB Direct licensed, provided, and customized the Platform and Services to HigherGrowth as required under the MSA, thereby enabling HigherGrowth to serve customers through the outdated banking systems of its controlling shareholder, NBCU.[14] Once again, HigherGrowth's Motion raises no arguments as to the sufficiency of these allegations supporting MRB Direct's performance.

Regarding the third element (HigherGrowth's breach), the Counterclaim plausibly alleges a breach by tying HigherGrowth's contractual obligations to specific conduct constituting a breach. As to the contractual obligations, the Counterclaim specifically identifies Section 3.4 of the MSA, which prohibits HigherGrowth from 1) allowing unauthorized parties to use the Platform and intellectual property, 2) selling, reselling, licensing, sublicensing, distributing, making available, renting, or leasing the Platform, and 3) using its access to the Platform to build a competing product, among other things.[15] The Counterclaim also cites to Section 6 of the MSA, which assigns the rights, title, and interest in and to all Work Product, Project Technology, and associated intellectual property rights to MRB Direct.[16] Under this section, the Counterclaim alleges that

---

[12] Counterclaim [ECF No. 129], at p. 30 ¶¶ 22-23, p. 40 ¶ 84; Master Subscription Agreement Between MRB Direct and HigherGrowth attached as Exhibit A to the Counterclaim ("MSA") [ECF No. 129-1], at p. 1.

[13] Motion to Dismiss [ECF No. 150], at p. 8 n.5 (recognizing "a motion to dismiss is not the proper vehicle for this dispute").

[14] Counterclaim [ECF No. 129], at p. 30 ¶ 25, p. 40 ¶ 85.

[15] Id. at p. 40 ¶ 86; MSA [ECF No. 129-1], at pp. 5-6.

[16] Counterclaim [ECF No. 129], at p. 40 ¶ 87; MSA [ECF No. 129-1], at p. 7.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

MRB Direct's and FTA Systems' customizations to the Platform belong to MRB Direct, and do not belong to HigherGrowth.[17]

As to the conduct constituting a breach, the Counterclaim alleges that MRB Direct licensed the platform to HigherGrowth and began customizing it for HigherGrowth (as sole licensee) in November 2021.[18]    In August 2022, HigherGrowth began to do business as Greenbax Marketplace.[19]    After a failed merger, HigherGrowth then worked with its 75% controlling shareholder, NBCU, and its sister company, Greenbax Marketplace, Inc. ("GMI") to take the Platform in violation of the MSA.[20]    The Parties' relationship ultimately ended in a billing dispute that caused MRB Direct to terminate HigherGrowth's license to the Platform under the MSA.[21]

The Counterclaim alleges that shortly thereafter, an NBCU subsidiary using HigherGrowth's trade name "Greenbax Marketplace" continued to market and provide the services developed by MRB Direct.[22]    It alleges the entity actually operating and providing those services is GMI, using the same "processes, techniques and methods" as MRB Direct's Platform, which were "improperly obtained . . . from HigherGrowth." [23]    Specifically, HigherGrowth had been able to obtain those proprietary "processes, techniques and methods" through HigherGrowth's "access to and use of" information that falls under the MSA-restricted Platform, Services, Work Product, and Project Technology, including the Platform's bankers' interface, the Platform's administrator interface, the proprietary Application Programming Interfaces developed by MRB Direct as part of the Platform (including the associated source code), MRB Direct's data structures and

---

[17] Counterclaim [ECF No. 129], at p. 40 ¶ 87; MSA [ECF No. 129-1], at p. 7.

[18] Counterclaim [ECF No. 129], at p. 30 ¶¶ 22, 25, p. 31 ¶ 26.

[19] *Id.* at p. 32 ¶ 35.

[20] *Id.* at p. 32 ¶ 37 – p. 33 ¶ 41.

[21] *Id.* at p. 33 ¶ 42 – p. 34 ¶ 53.

[22] *Id.* at p. 35 ¶¶ 55 – 57.

[23] *Id.*

methodology contained within the Platform, MRB Direct's Integration Platform as a Service methodologies utilized in the Platform, MRB Direct's Robotic Process Automation methodologies for the Platform, and workflow instructions for the Platform.[24] HigherGrowth's access to and use of that information was strictly governed by the MSA.[25] In addition, the Counterclaim alleges NBCU and GMI proceeded to "creat[e] a competing platform and/or reconstitut[e] MRB Direct's Platform" after HigherGrowth lost its license.[26]

Finally, the Breach of Contract counterclaim alleges these acts by HigherGrowth constitute breach of the MSA by 1) "allowing unauthorized parties to use the Platform and MRB Direct's intellectual property" (such as NBCU, GMI, and the current operator of the Greenbax website); 2) "selling, reselling, licensing, sublicensing, distributing, making available, renting, or leasing the platform" (such as allowing NBCU and GMI to obtain MRB Direct's proprietary processes, techniques, and methods using HigherGrowth's access to MRB Direct's Platform, Services, Work Product, and Project Technology); 3) "using [HigherGrowth's] access to the Platform to build or facilitate building a competing product," (such as the services offered on the Greenbax Marketplace website after MRB Direct terminated HigherGrowth's license); 4) "accessing the Platform after MRB Direct revoked HigherGrowth's license" (to facilitate providing the services on the Greenbax Marketplace website after MRB Direct terminated HigherGrowth's license); and 5) "by retaining possession of the Work Product, Project Technology, and associated intellectual property that HigherGrowth assigned to MRB Direct under Section 6 of the MSA" (including the Platform's bankers' interface, the Platform's administrator interface, the proprietary Application Programming Interfaces developed by MRB Direct as part of the Platform, MRB Direct's data structures and methodology contained within the Platform, MRB Direct's Integration Platform as a Service methodologies utilized in the Platform, MRB Direct's Robotic Process Automation

///

---

[24] *Id.* at p. 36 ¶ 58.

[25] *Id.* at p. 40 ¶ 86 – p. 41 ¶ 88.

[26] *Id.* at p. 35 ¶ 57.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

methodologies for the Platform, and workflow instructions for the Platform, which the Counterclaim alleges HigherGrowth had access to).[27]

HigherGrowth raises no argument as to the adequacy of MRB Direct's pleadings regarding damages, the fourth element of a breach of contract claim. MRB Direct adequately alleged that, as a result of the breaches identified above, HigherGrowth caused MRB Direct damages in excess of $75,000.[28]

HigherGrowth's Motion does not address the breaches that are actually alleged in the Counterclaim. Instead, it attempts to turn the Counterclaim into something it is *not*—a claim that alleges breach exclusively by means of misappropriating trade secrets. HigherGrowth's Motion confuses the arbitrability dispute with the present dispute over whether MRB Direct has asserted a plausible claim for breach of contract. The arbitrability dispute involved questions of whether the breach of contract claim is principally related to intellectual property, such as trade secrets.[29] Those questions have already been decided.[30] The Arbitrator reviewed the breach of contract claim, and in light of the Parties' arguments, ruled that the same breach of contract claim asserted here is not arbitrable because it is principally related to intellectual property.[31] While the breach claims have this relationship to intellectual property, as demonstrated throughout this Opposition, those claims remain distinctive from trade secret misappropriation claims. The breach claims do not rise and fall with trade secret misappropriation claims as a matter of fact or as a matter of law.

/ / /

---

[27] *Id.* at p. 40 ¶ 86 – p. 41 ¶ 88.

[28] *See id.* at p. 41 ¶ 89.

[29] *See* Arbitration Ruling, [ECF No. 146-1] at pp. 20-21.

[30] *See id.*

[31] *See id.* HigherGrowth briefly asserts that "if the breach of contract claim is for something else [other than misappropriation of trade secrets], then the claim belongs in arbitration, not here." Motion [ECF No. 150], at p. 13:9-10. But the Arbitrator already decided that issue based on the same breach of contract claim at issue here—the claim is not arbitrable because it is principally related to intellectual property. Arbitration Ruling [ECF No. 146-1], at pp. 20-21.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

The question the Court now faces requires looking to the allegations that were *actually pleaded* in the Counterclaim and determining whether those allegations state a claim for breach of contract. They do. The disposition of MRB Direct's misappropriation claim against NBCU does not alter that fact. In *Albert's Organics*, the Northern District of California recognized that contractual obligations of confidentiality and use of proprietary information can be breached even if the alleged information and acts do not meet the statutory definitions of trade secret misappropriation.[32] "Trade secrets are defined by statute, but terms such as confidential and proprietary information are defined by the contract."[33] Accordingly, claims for breach of contract based on use of proprietary information "do not succeed or fail in tandem" with misappropriation of trade secret claims.[34]

Courts in this Circuit have reaffirmed that principle multiple times.[35] In *ImageKeeper*, the District of Nevada rejected an argument that the "failure to prove misappropriation" prevented the same party from proving breach of contract.[36] Even though it rejected one of the relevant trade secret claims, the *ImageKeeper* Court nevertheless held there was a genuine dispute of fact as to whether the contract was violated by improper disclosure of confidential information, and/or improper attempts to reverse engineer proprietary functions.[37] In doing so, *ImageKeeper* implicitly recognized that the contract created obligations as to the use of confidential and

---

[32] *See Albert's Organics, Inc.*, 445 F.Supp.3d at 476.

[33] *Id.*

[34] *Mattson*, 2024 WL 3558849, at *6 ("DTSA and breach-of-contract claims do not succeed or fail in tandem; the claims require satisfaction of distinct elements. Thus, a plaintiff may fail to state a DTSA claim but nevertheless succeed in stating a breach-of-contract claim.").

[35] *See, e.g.*, *Whiteslate, LLP v. Dahlin*, No. 20-CV-1782 W (BGS), 2021 WL 2826088, at *8 (S.D. Cal. July 7, 2021) (holding that Plaintiff adequately pleaded a breach of contract claim even where it failed to plead facts to establish a misappropriation claim);

[36] *ImageKeeper, LLC v. Wright Nat'l Flood Ins. Services LLC*, No. 2:20-cv-01470-CDS-NJK, 2025 WL 1745744, at *21 (D. Nev. June 24, 2025).

[37] *See id.*

proprietary information different than the prohibitions of statutory trade secret law.[38]  Likewise, the Ninth Circuit's breach-of-contract analysis in *Zunum Aero, Inc. v. The Boeing Co.* focused on contractual obligations not to use proprietary information, rather than the simultaneously-litigated misappropriation of trade secrets claim.[39]

The Nevada Supreme Court has also confirmed that confidential and proprietary information can be protected by contract, even where it does not rise to meet the statutory definition of trade secret.  In *Finkel v. Cashman Professional, Inc.*, Cashman sought a preliminary injunction based on claims for breach of contract and misappropriation of trade secrets.[40]  Underlying both claims were allegations that Finkel disclosed Cashman's confidential information.[41]  The trial court issued the injunction but refused to dissolve it after Finkel exercised his contractual right to terminate the agreement.[42]  The Nevada Supreme Court held that the trial court should have dissolved the injunction "to the extent that it restricted Finkel's business activities based on the terminated Agreement, as there was no longer any basis for enforcing that part of the injunction." [43]  However, the Court also held that misappropriation of trade secrets could have formed "a valid ground for maintaining a preliminary injunction beyond the termination date of the parties' agreement" under trade secret law.[44]  In other words, the Nevada Supreme Court recognized that Cashman's breach of contract claim and Cashman's trade secret misappropriation claim were independent causes of action, even where they arose from the same underlying disclosure of confidential information.

---

[38] *See id.*

[39] Nos. 24-5212, 24-5751, 2025 WL 2364602, at *2 (9th Cir. Aug. 14, 2025).

[40] *See Finkel v. Cashman Professional, Inc.*, 128 Nev. 68, 71-72, 270 P.3d 1259, 1261-62 (Nev. 2012).

[41] *See id.*

[42] *See id.*

[43] *See Finkel*, 128 Nev. at 76, 270 P.3d at 1265.

[44] *See Finkel*, 128 Nev. at 77, 270 P.3d at 1265.

Just as in *Albert's Organics*, MRB Direct's "breach of contract claim is not coextensive with the misappropriation of trade secret claims." [45]  Instead, MRB Direct alleges HigherGrowth breached restrictions on how HigherGrowth was permitted to use contractually-defined confidential and proprietary information. [46]  Accordingly, the Court should deny HigherGrowth's Motion. [47]

The cases cited by HigherGrowth do not warrant a different result.  In *Hutchison v. KFC Corp.*, the Plaintiff specifically alleged Defendants breached a contract "not to use the trade secrets of Plaintiff." [48]  In other words, the breach alleged in *Hutchison* could not have been proven without proving the plaintiff's possession of trade secrets and the defendant's unauthorized use of those trade secrets.  The same is true of *Pellerin v. Honeywell International, Inc.*: the allegations specifically identified misappropriation of a trade secret as the act constituting breach. [49]  MRB Direct's breach of contract claim is different than *Hutchison* and *Honeywell*.  It alleges more than just breach by using MRB Direct's trade secrets: it alleges breach of an agreement not to use the Platform, Services, Work Product, and Project Technology in contractually-prohibited ways. [50]  Misappropriation of trade secrets is not necessary to prove that breach, though it would be sufficient to do so.

---

[45] *Albert's Organics, Inc.*, 445 F.Supp.3d at 476.

[46] *Albert's Organics, Inc.*, 445 F.Supp.3d at 476 ("Thus, a defendant may breach a contract for disclosing confidential information that does not constitute a trade secret.").

[47] *Mattson*, 2024 WL 3558849, at *6 ("In lieu of presenting an independent attack against the breach-of-contract claim, Defendants . . . argue only that this claim necessarily rises and falls with the DTSA claim and therefore fails along with [the] insufficiently pled DTSA claim. . . . The Court rejects this argument.").

[48] 809 F. Supp. 68, 71 (D. Nev. 1992).

[49] 877 F.Supp.2d 983, 990-991 (S.D. Cal. 2012) ("Honeywell alleges that . . . 'Pellerin has breached the Employment Agreement and/or the NDA by, among other things, developing a foam earplug manufacturing process for Honeywell's competitors that incorporate Honeywell's trade secrets and/or confidential information.").

[50] Counterclaim [ECF No. 129], at p. 40 ¶ 86 – p. 41 ¶ 88.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

*AlterG, Inc. v. Boost Treadmills LLC* is inapposite for a different reason.[51]  *AlterG* turned on the failure to adequately plead the existence of a contract.[52]  *AlterG* pleaded that contracts existed between the parties, but failed to allege the essential terms of those contracts and failed to attach the agreements to its complaint.[53]  Without the contracts themselves or allegations describing the essential terms (including "the types of information protected" by the agreements), the Court found AlterG failed to allege the first element of a breach of contract claim, the existence of a contract.[54]  In granting leave to amend, the Court suggested that AlterG's pleading deficiencies could be remedied by simply attaching the contracts, without adjusting the specificity of its other breach of contract allegations: "AlterG is granted leave to amend its complaint to *either* attach the relevant confidentiality agreements or to allege their essential terms." [55]  Here, there is no dispute as to the existence of a contract between HigherGrowth and MRB Direct.[56]  Indeed, MRB Direct attached the MSA itself to the Counterclaim and alleged breach of the specific, contractual provisions that restricted HigherGrowth's ability to use and access MRB Direct's Platform, Services, Work Product and Project Technology.[57]

---

[51] 388 F.Supp.3d 1133 (N.D. Cal. 2019).

[52] *Id.* at 1147.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 1148 (emphasis added).

[56] Although the parties dispute which particular version of the MSA applies, the Parties agree that "a motion to dismiss is not the proper vehicle for that dispute . . . ."  Motion [ECF No. 150], at p. 13 n.5.

[57] Counterclaim [ECF No. 129], at p. 40 ¶ 86 - p. 41 ¶ 88; MSA [ECF No. 129-1], at pp. 3-4, 5-6, 7 (definitions, Section 3.4, and Section 6).  *Honeywell* can be distinguished on the same grounds: the *Honeywell* Court noted its concerns that Honeywell did not plead "what the 'trade secrets and/or confidential information' [were] or whether the confidential information falls within the terms of the agreements . . . ."  *Honeywell*, 877 F.Supp.2d at 990.  Here, MRB Direct's Counterclaim identifies the information at issue (MRB Direct's Platform, Services, Work Product, and Project Technology, as defined by the MSA), specifies the provisions that restrict use of that information (Sections 3.4 and 6), and how HigherGrowth breached those restrictions.  *See* Counterclaim [ECF No. 129], at p. 40 ¶ 86 – p. 41 ¶ 88.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Finally, HigherGrowth's footnote that it might have "merely reverse engineered" MRB Direct's proprietary technology actually supports the plausibility of MRB Direct's breach of contract claim.[58] The Counterclaim expressly asserts breach under Section 3.4 of the MSA.[59] And as HigherGrowth admits, Section 3.4 "explicitly carves out reverse engineered content or services as a breach." [60] In particular, Section 3.4(k) provides that it is a breach of contract to "disassemble, reverse engineer, or decompile Services, Platform, or Content or access it to (1) build a competitive product or service, (2) build a product or service using similar ideas, features, functions, or graphics of Services and Platform, (3) copy any ideas, features, functions, or graphics of Purchased Services and Platform, or (4) determine whether Services or Platform are within the scope of any patent." [61] After invoking Section 3.4, the breach of contract claim alleges HigherGrowth did exactly that: it "us[ed] its access to the Platform to build or facilitate building a competing product . . . ." [62]

**B.    HigherGrowth's Argument Regarding Misappropriation Is Based on a Misreading of the MSA**

HigherGrowth's Motion includes a four-sentence argument that MRB Direct cannot show misappropriation. As an initial matter, this argument fails for the same reasons discussed above: MRB Direct's Counterclaim does not require proof of misappropriation of a trade secret. On top of that, HigherGrowth's only argument on this point is based on a clear misreading of the MSA. HigherGrowth claims that the MSA "only gave HigherGrowth access to 'Content.'" [63] That is patently incorrect.

---

[58] Motion [ECF No. 150], at p. 13 n.6.

[59] Counterclaim [ECF No. 129], at p. 40 ¶ 86, p. 41 ¶ 88.

[60] Motion [ECF No. 150], at p. 8 n.6.

[61] MSA [ECF No. 129-1], at p. 6.

[62] Counterclaim [ECF No. 129], at p. 41 ¶ 88.

[63] Motion [ECF No. 150], at p. 8:14-23.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

In reality, the MSA provides that HigherGrowth would also have "access to the Platform" and "Purchased Services." [64] So in addition to Content, HigherGrowth was provided both the "tools, applications and processes integrated by MRBD and delivered over the internet" (the "Platform"), and MRBD's "products, software, services, Technical Support, . . . and Consultancy Services." (the "Purchased Service(s)"/"Services"). [65] This is confirmed throughout the MSA, which reiterates the provision of not just Content, but the Platform, Services, Consultancy Services, and Technical Support to HigherGrowth. [66]

Section 6.3—the entire basis for HigherGrowth's argument—simply states HigherGrowth had the contractual right to access and use Content under the MSA. [67] It does not follow that HigherGrowth *only* had access to Content. Indeed, much of the Agreement would be rendered meaningless if that were the case—including the provisions giving HigherGrowth access to the Platform it licensed.

Beyond the confines of the MSA, the Counterclaim identifies the access and use of the MRB Direct Platform, Services, Work Product, and Project Technology that enabled the alleged breach:

> Such access and use would have included access to and use of . . . a bankers' interface and an administrator interface for a licensee to administer the function of the Platform, proprietary Application Programming Interfaces ("APIs") and associated source code, data structure processes and methodology that dictated relationships and structure so everything worked together, Integration Platform as a Service ("iPaaS") methodologies and processes, Robotic Process Automation methodologies and processes, and workflow instructions. [68]

/ / /

---

[64] MSA [ECF No. 129-1], at p. 5 (Section 2.1).

[65] MSA [ECF No. 129-1], at p. 3-4 (defining "Platform" and "'Purchased Service(s)' or 'Services'").

[66] *See, e.g.*, MSA [ECF No. 129-1], at p. 5 (Section 3 describing use of services and content).

[67] Motion [ECF No. 150], at p. 8:14-23; MSA [ECF No. 129-1], at p. 7.

[68] Counterclaim [ECF No. 129] at p. 36 ¶ 58.

Likewise, Paragraph 86 of the Counterclaim alleges that Section 3.4 "prohibits HigherGrowth from . . . using their access to the Platform to build a competing product . . . ." [69] Finally, Paragraph 88 of the Counterclaim alleges HigherGrowth breached the MSA by "using its access to the Platform" and "accessing the Platform after MRB Direct revoked HigherGrowth's license." [70]  Not only does the MSA itself refute HigherGrowth's argument that MRB Direct only alleged access to "Content," but so does the Counterclaim. [71]

## C.    The Court Should Deny HigherGrowth's Motion to Strike Because the Allegations Are Relevant to MRB Direct's Breach of Contract Claim and Do Not Prejudice HigherGrowth

In the Ninth Circuit, motions to strike are "generally regarded with disfavor because of the limited importance of pleading in federal practice, . . . because they are often used as a delaying tactic" and because of the strong policy favoring resolution on the merits. [72]  As a result, "[s]uch motions should only be granted if the matter has no logical connection to the controversy at issue *and* may prejudice one or more of the parties to the suit." [73]  The purpose of a Rule 12(f) Motion is

---

[69] Counterclaim [ECF No. 129] at p. 40 ¶ 86.

[70] *Id.* at p. 40 ¶ 88.

[71] This portion of HigherGrowth's Motion also incorrectly equates the definition of trade secrets with "source code or source code documentation."  *See* Motion at p. 8:17-21.  HigherGrowth argues "there are no facts on which to plausibly base an assertion that HigherGrowth had possession of, or access to, MRBD's purported trade secrets" because "Content" is "defined to exclude source code or source code documentation."  *Id.*  But trade secrets include "without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction, or code."  *See* NRS 600A.030.

[72] *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1152 (C.D. Cal. 2003); *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1170 (N.D. Cal. 2010).

[73] *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848-WHO, 2019 WL 2476620, at *3 (N.D. Cal. June 13, 2019) (emphasis in original) (internal quotations omitted) ("Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f).").

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

"to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."[74]

HigherGrowth asserts, without analysis, that the allegations relating to its failure to pay invoices "do not relate to any element of the counterclaim."[75] HigherGrowth's conclusory statement is wrong. This short set of allegations is relevant to the Counterclaim because they explain how and when MRB Direct revoked HigherGrowth's license.[76] At minimum, the revocation of HigherGrowth's license is directly probative of MRB Direct's allegations that HigherGrowth breached the MSA by 1) accessing the Platform after MRB Direct revoked HigherGrowth's license, and 2) retaining possession of Work Product, Project Technology, and associated intellectual property after HigherGrowth was no longer entitled to possession of that material (because MRB Direct revoked its license).[77] The mere fact that those allegations are also relevant to claims currently pending in arbitration has no bearing on their materiality or pertinence in this dispute.

Moreover, HigherGrowth is not prejudiced by the inclusion of these allegations in the Counterclaim because only a few pages prior, substantially similar allegations are asserted in support of MRB Direct's Fourth, Fifth, Seventh, Ninth, Tenth, and Twelfth Affirmative Defenses.[78] HigherGrowth does not argue that any of those allegations should be stricken, so even if the Court strikes Paragraphs 42-54 from the Counterclaim, the very same allegations will remain present on the record in the very same document. Moreover, allegations about this payment dispute have been present in the record since the very inception of this case, via NBCU's

---

[74] *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

[75] Motion [ECF No. 150], at p. 14:12-15.

[76] Counterclaim [ECF No. 129] at p. 33 ¶ 42 – p. 34 ¶ 54.

[77] Counterclaim [ECF No. 129] at p. 40 ¶ 88.

[78] Counterclaim [ECF No. 129] at p. 9 ¶ 22 – p. 10 ¶ 28 (Fourth Affirmative Defense), p. 11 ¶ 35 – p. 12 ¶ 41 (Fifth Affirmative Defense), p. 14 ¶ 56 – p. 15 ¶ 68 (Seventh Affirmative Defense), p. 17 ¶¶ 77 – 83 (Ninth Affirmative Defense), p. 19 ¶¶ 94 – 100 (Tenth Affirmative Defense), p. 21 ¶ 115 – p. 22 ¶ 125 (Twelfth Affirmative Defense).

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Complaint.[79]  The allegations HigherGrowth ask to be stricken simply assert MRB Direct's side of that same dispute.

Accordingly, the Court should deny HigherGrowth's Motion to Strike because it provided only conclusory statements in support, because the subject allegations are not immaterial or impertinent to this case or the breach of contract claim, and because HigherGrowth is not prejudiced by their inclusion.

## IV.   CONCLUSION

For these reasons, MRB Direct respectfully requests that the Court deny HigherGrowth's Motion to Dismiss and its Motion to Strike in their entirety.

Dated this 11th day of May 2026.

GARMAN TURNER GORDON LLP


*/s/ Teresa M. Pilatowicz*
DYLAN T. CICILIANO
NV Bar No. 12348
TERESA M. PILATOWICZ
NV Bar No. 9605
J. SEAN BENEVENTO
NV Bar No. 16498
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
Tel: (725) 777-3000
Fax: (725) 777-3112
*Attorneys for Defendants and Counter-Claimant MRB Direct, Inc. and David Park.*

---

[79] *See* Complaint [ECF No. 1-2], at ¶ 11.

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Garman Turner Gordon LLP, and that on the 11th day of May 2026, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, I served a true and correct copy of the foregoing **DEFENDANT AND COUNTER-PLAINTIFF MRB DIRECT, INC.'S OPPOSITION TO COUNTER-DEFENDANT HIGHERGROWTH, LLC'S MOTION TO DISMISS MRB DIRECT, INC.'S AMENDED COUNTERCLAIM [ECF No. 150]** via the Court's CM/ECF system as follows:

| | |
|---|---|
| SEAN P. FLYNN<br>Nevada Bar No. 15408<br>TOMIKO A. ORTIZ<br>Nevada Bar No. 16599<br>GORDON REES SCULLY MANSUKHANI<br>1 East Liberty Street, Suite 424<br>Reno, NV 89501<br>Email: sflynn@grsm.com<br>        tortiz@grsm.com | CHERYL M. LOTT (*pro hac vice*)<br>DAVID E. MARK (*pro hac vice*)<br>MATTHEW L. SEROR (*pro hac vice*)<br>BUCHALTER, PC<br>1000 Wilshire Boulevard, Suite 1500<br>Los Angeles, California 90017-1730<br>Email: clott@buchalter.com<br>        mseror@buchalter.com<br>        dmark@buchalter.com |
| *Attorneys for Plaintiff North Bay Credit Union and Counter-Defendant Highergrowth, LLC* | *Attorneys for Plaintiff North Bay Credit Union and Counter-Defendant Highergrowth, LLC* |

 /s/ Teresa M. Pilatowicz
An employee of
GARMAN TURNER GORDON LLP

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

18