Sean P. Flynn (SBN 15408)
**Gordon Rees Scully Mansukhani**
1 East Liberty Street, Suite 424
Reno, NV 89501
Telephone:  (775) 467-2610
Email: sflynn@grsm.com

BUCHALTER, LLP
EFRAT M. COGAN (SBN: 132131) (*Admitted pro hac vice*)
MATTHEW L. SEROR (SBN:  235043) (*Admitted pro hac vice*)
DAVID E. MARK (SBN:  247283) (*Admitted pro hac vice*)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400
Email:  ecogan@buchalter.com
Email:  mseror@buchalter.com
Email:  dmark@buchalter.com

*Attorneys for Plaintiff and Counter-Defendant*
NORTH BAY CREDIT UNION *and Counter-Defendant* HIGHERGROWTH, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NORTH BAY CREDIT UNION,  a California nonprofit corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual; and DOES 1 through 10, inclusive,<br><br>    Defendants.<br><br>MRB DIRECT, INC., a Nevada corporation,<br><br>    Counter-Plaintiff,<br><br>    vs.<br><br>NORTH BAY CREDIT UNION, a California nonprofit corporation, *et al.*<br>    Counter-Defendant. | Case No. 2:24-cv-00212-MMD-CSD<br><br>**COUNTER-DEFENDANT HIGHERGROWTH, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |

BUCHALTER LLP
LOS ANGELES

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 5

II. THE RECORD IN ARBITRATION AND IN THIS COURT ESTABLISHES THAT MRBD'S CONTRACT CLAIM IS BASED ON TRADE SECRET MISAPPROPRIATION ...................................................................................................... 5

    A. The early litigation. ............................................................................................ 5

    B. The arbitration shows that MRBD postured its breach of contract claim as one for misappropriation of trade secrets and that the arbitrator adopted that characterization. ................................................................................................... 6

    C. The Amended Counterclaim in this action is based entirely on the alleged use of trade secrets. ................................................................................................... 9

III. MRBD CONCEDES, EVEN IF ONLY IMPLICITLY, THAT IF ITS CLAIM IS BASED ON TRADE SECRETS, IT FAILS – JUST AS DID THE CLAIMS AGAINST NORTH BAY. ...................................................................................... 10

IV. MRBD MAY NOT NOW CHANGE THE NATURE OF ITS BREACH OF CONTRACT CLAIM TO SOMETHING OTHER THAN TRADE SECRETS. ............ 10

V. THE CASES MRBD RELIES ON TO OPPOSE THE MOTION TO DISMISS DO NOT CHANGE THE RESULT. .................................................................................. 13

VI. THE OPPOSITION CONFIRMS THE ALLEGATIONS REGARDING FAILURE TO PAY INVOICES SHOULD BE STRICKEN. .............................................. 16

VII. CONCLUSION .................................................................................................... 16

BUCHALTER LLP
LOS ANGELES

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Albert's Organics, Inc. v. Holzman*,
    445 F.Supp.3d 463 (N.D. Cal. 2020) ........................................................................ 13, 14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 13

*Baughman v. Walt Disney World Co.*,
    685 F.3d 1131 (9th Cir. 2012) ..................................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
    550 US 544 (2007) ........................................................................................................ 13

*Doe I v. Cerebral, Inc.*,
    687 F. Supp. 3d 892 (N.D. Cal. 2023) ......................................................................... 12

*ImageKeeper, LLC v. Wright Nat'l Flood Ins. Services LLC*,
    No. 2:20-cv-01470-CDS-NJK, 2025 WL 1745744 (D.Nev. June 24, 2025.) ................... 13, 14

*Mahon v. Youtube, LLC*,
    No. 24-3570, 2026 WL 508851 (9th Cir. Feb. 24, 2026) ............................................ 12

*Mattson Technology, Inc. v. Applied Materials, Inc.*,
    No. 23-cv-06071-SVK, 2024 WL 3558849 (N.D.Cal. July 25, 2024) ............................ 13, 14

*New Hampshire v. Maine*,
    532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) .......................................... 11

*Perez v. Discover Bank*,
    74 F.4th 1003 (9th Cir. 2023)..................................................................................... 11, 12

*United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*,
    555 F.3d 772 (9th Cir. 2009)....................................................................................... 11

*Whiteslate, LLP v. Dahlin*,
    No. 20-cv-1782, 2021 WL 2826088 (S.D. Cal. 2021)...................................................... 13, 15

**Other State Cases**

*Finkel v. Cashman Pro., Inc.*,
    128 Nev. 68 (2012) ....................................................................................................... 15

BUCHALTER LLP
LOS ANGELES

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

**California Statutes**

California Business and Professions Code
  §§ 17200 ............................................................................................................ 5

California Uniform Trade Secrets Act .......................................................................... 8

BUCHALTER LLP
LOS ANGELES

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

HigherGrowth's review of MRBD's opposition brief elicited surprise and disbelief. In arbitration, MRBD successfully, clearly and unequivocally cast the breach of contract claim it now asserts in this court as a trade secret claim. Its opposition now contends otherwise. The question then, is this: May MRBD recast its contract claim based on trade secret misappropriation *as a different claim* to avoid the consequences of its prior successful position that the claim is one for taking trade secrets. The record—both before this Court and in arbitration—demonstrates a consistent and unequivocal theme: MRBD itself defined its contract claim as one based on the alleged misappropriation of trade secrets. It did so to escape arbitration, and it succeeded.

MRBD may not now walk back those representations, recasting its claim as something other than a trade-secrets-based claim in an effort to survive dismissal. That shift is not a refinement—it is a contradiction. That contradiction is foreclosed by the doctrine of judicial estoppel, inconsistent with the pleadings, and unsupported by any plausible allegations of non–trade secret confidential information. This court has already ruled that MRBD's trade secret allegations are insufficient/implausible. Where, as here, a breach of contract claim is expressly grounded in those same deficient allegations, it cannot be salvaged by rebranding. Nor may MRBD evade the arbitration framework by changing its theory in court after it persuaded the arbitrator that the claim belonged here precisely because it involved trade secrets.

MRBD's claim is either a trade secret claim—which fails for lack of plausible pleading—or it is something else, in which case it never should have been removed from arbitration. Under either scenario, dismissal is required.

### II.    THE RECORD IN ARBITRATION AND IN THIS COURT ESTABLISHES THAT MRBD'S CONTRACT CLAIM IS BASED ON TRADE SECRET MISAPPROPRIATION

#### A.    The early litigation.

North Bay Credit Union (North Bay) sued MRBD and its principal, David Park, alleging claims for intentional and negligent interference with prospective economic advantage, violation of California Business and Professions Code Sections 17200, and declaratory relief. (ECF 1, 1-2,

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

36.) MRBD answered and counterclaimed against North Bay, HigherGrowth, LLC and Greenbax Marketplace, Inc. and each of the counter-defendants moved to dismiss on discrete grounds. (ECF 81 [answer and counterclaim], and motions to dismiss:  ECF 98 [North Bay], 101 [HigherGrowth], 106 [Greenbax].)  Greenbax moved on grounds that the court lacked personal jurisdiction over it (ECF 106), and the court agreed, dismissing Greenbax.  North Bay moved to dismiss all the counterclaims asserted against it as preempted by the Uniform Trade Secrets Act (ECF 98) and the court agreed allowing limited leave to amend.  (ECF 128.)  On North Bay's subsequent motion to dismiss, the court found the trade secret claim was not plausibly alleged, either as to trade secrets or access. HigherGrowth moved to dismiss or, in the alternative, to compel arbitration.  The court granted the motion to compel arbitration to allow the arbitrator to determine arbitrability of claims. (Cogan Decl., ¶ 2.)

**B.      The arbitration shows that MRBD postured its breach of contract claim as one for misappropriation of trade secrets and that the arbitrator adopted that characterization.**

In the arbitration, MRBD filed an answer and counterclaims.  The arbitrator did not rule on the substantive validity of those claims.  Instead, asked for briefing on which claims MRBD claimed were outside the scope of arbitration. MRBD alleged five counts, ***only two of which*** were the subject of any arbitrability determination: the first cause of action for misappropriation of trade secrets and the second cause of action for breach of contract for misappropriation of trade secrets. (ECF 146-1, Ex. 1-A to Pilatowicz Declaration, pp. 4, 7.)[1]

As shown below, MRBD never claimed or contended that the two misappropriation based claims were based on anything other than trade secrets, and no one understood MRBD as doing otherwise. In the arbitration, the parties actively litigated two issues.  The first, not relevant here, is whether the FAA or Nevada law governed interpretation of the scope of the arbitration clause.[2] The second issue was whether trade secrets fell within the "intellectual property" carve out in the arbitration.    MRBD's arguments drew no distinction between the arbitrability of its

---

[1] Future references to the arbitrator's award attached the Pilatowicz Decl. shall be as follows: (ECF 146-1 [AAI], pp. 1-1.)

[2] Ultimately, the arbitrator found that Nevada law governed the substantive issues.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

misappropriation claim or its breach of contract for misappropriation claim. It cited the same case law and made the same arguments regarding both claims – i.e. that *in both* claims, trade secrets were the issue.[3]

*MRBD's initial brief.* MRBD began its argument stating: "MRBD's counterclaim for (1) Misappropriation of Trade Secrets and (2) breach of contract related to misappropriation of trade secrets are excluded from the MSA's arbitration clause." (Ex. A: p. 2:1-4.)[4] MRBD affirmatively contended that both causes of action "fall within the scope of the [Master Services Agreement's] intellectual property carve out. *Both of these causes of action relate to MRBD's trade secrets and HigherGrowth's misappropriation of those trade secrets*. [citation to arbitration counterclaims]. And *trade secrets are indisputably a form of intellectual property* [digesting cases]." (*Id*. at p. 4:9-27, emphasis added.) MRBD cited case law for the proposition that trade secret claims are not subject to arbitration. (*Id*. at p. 3:18-28.)

MRBD prayed that the arbitrator find that its misappropriation and breach of contract claims, both for trade secrets, be referred to this court. (*Id*. at p. 6.) And in a footnote, MRBD advised the arbitrator that if the "Arbitrator agrees that MRBD's trade secrets causes of action are not subject to arbitration, MRBD will bring them in the federal court" either under California or Nevada law. (*Id*. at p. 5-6 at fn. 1)

*The arbitrator understood MRBD as claiming a trade secret exception for both claims*. The arbitrator correctly understood that MRBD was claiming that its first two causes of action were based on trade secrets, and MRBD never corrected that perception:.

> "In its opening brief MRBD maintains its counterclaims for (1) misappropriation of trade secrets and (2) breach of contract related to misappropriation of trade secrets are excluded from the MSA's arbitration clause and should be referred to the Nevada federal district court." (ECF 146-1 [AAI], p. 4)

*HigherGrowth's brief on arbitratility*. Given MRBD's sole reliance on trade secrets to argue the intellectual property carve out, HigherGrowth responded that the "intellectual property"

---

[3] In other words, if the breach of contract claim were based on something other than the misappropriation of trade secrets, MRBD affirmatively hid that fact from the arbitrator and from Higher Growth.
[4] Exhibits A through D are authenticated in the Cogan Declaration.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

exception did not include trade secrets. Intellectual property was undefined in the MSA between the parties; further, MRBD's subsequent amendments to its MSA show that the term was understood by MRBD to be limited. Those amendments show that when MRBD chose to define the term, that defined term covered copyright, patent and trademark rights, none of which were at issue here. (Ex. B, pp. 14:18-18:15.) HigherGrowth further argued that MRBD's cases were inapposite because (a) they were not contract interpretation cases and/or (b) they all involved contracts where the term intellectual property *was a defined term that included trade secrets*. (*Id*. at pp. 18:16-23.) Therefore, MRBD's trade secrets claims did not fall within the intellectual property carve out. The arbitrator's interim award accurately summarizes these arguments. (ECF 146-1 [AAI], p. 5-7.)

*MRBD's reply brief*. MRBD's reply brief (very much lengthier than its initiating brief) argued that the MSA's arbitration clause contains "an unambiguous intellectual property carve out that excludes MRBD's trade secrets claims from the arbitration proceeding" and the carve out "necessarily includes MRBD's trade secrets claims, because trade secrets are encompassed within the common definition of 'intellectual property.'" (Ex. C, pp. 5:18-26.) MRBD insisted that the case law "demonstrate[s] that the definition of "intellectual property" consistently includes trade secrets. (*Id*. at p. 10:1-27.) According to MRBD: "In sum, MRBD's claim under the California Uniform Trade Secrets Act and the breach of contract claim related to the theft of MRBD's trade secrets fall squarely within the scope of the MSA's mandatory intellectual property carve out." (*Id*. at p. 12:22-24.)

*Again, the arbitrator understood the narrow nature of MRBD's claim and MRBD never corrected that understanding*. In summarizing MRBD's arguments on reply, the arbitrator's summary showed she understood these arguments to be that MRBD's statutory misappropriation claim and its contract claim were both for misappropriation of trade secrets. (ECF 146-1 [AAI], p. 9 [top of page].) MRBD never corrected that understanding.

*HigherGrowth's surreply brief*. The arbitrator allowed HigherGrowth to file a surreply because of the new matter raised in the reply brief. (Cogan Decl., ¶ 2(d).) HigherGrowth distinguished MRBD's cases and offered case law to show that where intellectual property is not

BUCHALTER LLP
LOS ANGELES

8

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

defined, the term has been found ambiguous. (Ex. D, Sections IV and V.)

*The arbitrator's interim award*. Believing that MRBD's breach of contract claim was based on trade secrets (unsurprising given MRBD's arguments), the arbitrator found that MRBD's counterclaims for statutory misappropriation and for breach of contract for misappropriation of trade secrets were carved out by virtue of the arbitration carve out for intellectual property. (ECF 146-1 [AAI], p. 10, first paragraph.) The arbitrator's interim award ended with a finding that the statutory and breach of contract claims for misappropriation are not arbitrable. (ECF, p. 17.) And in the interim between pages 10 and 17, the arbitrator – understanding that both claims were based on misappropriation of trade secrets – determined that the trade secret claims (misappropriation and breach of contract for misappropriation) were be resolved in the federal district court, not the arbitration.

**C.    The Amended Counterclaim in this action is based entirely on the alleged use of trade secrets.**

The amended counterclaim makes clear that the claims against HigherGrowth are trade secrets claims.  They allege that MRBD's platform contains "unique, non-public information related to the methods, techniques, and processes providing banking services to cannabis customers":  i.e. the "web interface", "banking interface" and "administrative interface" to administer the platform and the associated source code, data structure processes."  It went on to state that "these trade secrets" (not something else) provided "seamless" banking transactions and the "architecture" to perform banking functions. (ECF 129, ¶ 20.)

These are the same allegations that the court found were insufficient to support an allegation of trade secrets.  To make even more clear that the claim against HigherGrowth was based on trade secrets, the amended counterclaim alleges that the "Platform used MRB Direct's *proprietary and strongly guarded trade secrets* to provide banking solutions." (ECF 129, ¶ 25.)  When addressing the access/taking of the information, the counterclaim references "access to and use of trade secrets, including trade secrets in the methods, techniques, and processes of providing banking services to cannabis customers. . . . "The Platform was effectively a program, set of processes, techniques and methods that, when combined, allowed a licensee – such as HigherGrowth – to act as a bank. And

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

it is a trade secret of MRB Direct." (ECF 129, ¶ 56.) Paragraph 61 and 62 further confirm that the claim is based on the use or alleged reverse engineering of the platform and use of the processes, methods and interfaces in the platform all of which were claimed to be trade secrets. (ECF 129, ¶¶ 61-62, see also ¶¶ 65.) The "confidentiality" of the processes of the alleged interfaces, data and source codes in the platform (i.e. the trade secrets) is what was protected by any confidentiality provisions in the MSA. (ECF 129, ¶ 21, see also ¶ 64 ["The MSA includes confidentiality provisions, such as Section 3.4 and Section 6, which restrict HigherGrowth's ability to use and disclose the information contained in MRB Direct's trade secrets."] All of these paragraphs (are realleged in the breach of contract claim against HigherGrowth.) Hence, when MRBD alleges that HigherGrowth breached the confidentiality provisions in sections 3.4 and 6 of the MSA, it alleges that HigherGrowth breached them by improperly using and/or sharing trade secrets.

### III. MRBD CONCEDES, EVEN IF ONLY IMPLICITLY, THAT IF ITS CLAIM IS BASED ON TRADE SECRETS, IT FAILS – JUST AS DID THE CLAIMS AGAINST NORTH BAY.

MRBD does not claim that it can, or has, adequately alleged a trade secrets claim. It may not do so given that this court has already said that its allegations are insufficient to support such a claim. So, it attempts to save its breach of contract claim by now arguing that the contract claim is not a trade secret claim, but is based on the taking of other, different, non-trade secret information. As set forth belowm MRBD is estopped from doing so. Further, the case law on which it relies in the abstract cannot save its claim from dismissal in light of the concrete record here.

### IV. MRBD MAY NOT NOW CHANGE THE NATURE OF ITS BREACH OF CONTRACT CLAIM TO SOMETHING OTHER THAN TRADE SECRETS.

As the facts above show: **(1)** MRBD argued its breach of contract claim was related to misappropriation of trade secrets in the arbitration; **(2)** MRBD never asked the arbitrator to determine if its claims arose out of other, non-trade secret information if any there were, and it would have to have done so. The arbitrator would have needed this information to determine if allegedly other non-trade secret, undefined and vague "confidential" or "proprietary information" fell within the intellectual property exception to arbitration; **(3)** All of MRBD's arguments in

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

arbitration were about trade secrets, not something else.[5]  That is what the arbitrator ruled on, and that is what the arbitrator allowed back in this court; **(4)** In this court, all of MRBD's allegations are tied to the alleged taking of the methods and processes of a Platform, including its source code, all of which are alleged to be trade secrets, not something else.

Judicial estoppel prevents MRBD from now arguing that its breach of contract claim does not depend on trade secrets.  The doctrine "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment" and prevents "the perception that either the first or the second court was misled." *Perez v. Discover Bank*, 74 F.4th 1003, 1008 (9th Cir. 2023)(finding party to be estopped); *New Hampshire v. Maine*, 532 U.S. 742, 750-755, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001)(likewise finding application proper).  The elements all apply here:

*First*, MRBD has taken and is taking inconsistent positions.  *Id*. at 1008. MRBD's current position is that its breach of contract claim is not based on misappropriation of trade secrets; however, it argued to the arbitrator that its breach of contract claim is based on misappropriation to avoid having the claim arbitrated so that it could be tried in court.  *Second*, MRBD successfully persuaded the arbitrator that the court, and not the arbitrator, should hear MRBD's statutory misappropriation claim and its breach of contract for misappropriation claim because they both involved trade secrets. *Id*. at 1009.[6] *Third*, MRBD would obtain an unfair benefit if it were allowed to change position now.  *Perez*, 74 F.4th at 1009.  As this court has previously ruled, there is an arbitration clause in the MSA that compels MRBD to arbitrate any and all claims against HigherGrowth, unless there is an exemption in the arbitration clause and it is the arbitrator's job to determine the scope of arbitration.  In this context, MRBD sought to exempt its breach of contract for trade secrets claim from arbitration on the grounds that the claim was focused on trade secrets. If MRBD is now permitted to claim that the cause of action is not for trade secrets, it will have

---

[5] There is no evidence or allegation here that a patent is involved, or a trademark.  MRBD did attempt to amend to state a copyright claim in this court, but the court rejected that.  MRBD does not have a registered copyright.

[6] A party successfully persuades a court to accept the party's earlier position when the court "accept[s] and relie[s] upon" the position "when making its ruling." *United Nat. Ins. Co. v. Spectrum Worldwide, Inc*., 555 F.3d 772, 779 (9th Cir. 2009)(finding judicial estoppel applied).

obtained an improper exemption from arbitration, allowing it to litigate a claim in this court that should be in arbitration.

In *Perez*, the plaintiff sought to invalidate an arbitration agreement because it was unconscionable. Discovery Bank opposed the unconscionability claim because Perez could opt out of it on all her claims. 74 F.4th at 1009. When Perez then opted out and pursued action in the district court, Discovery Bank argued that she could not opt out of the arbitration agreement. (*Ibid*.) The court refused to allow Discover Bank to play fast and loose with the court and the judicial system finding that this would allow Discovery Bank to prevail on a position it had previously and successfully discredited. (*Ibid*.) Just as the Bank could not change position in *Perez*, MRBD may not do so.[7]

MRBD's position in arbitration did not have to be made in declarations. Its arguments -- intended to get itself out of its agreement to arbitrate -- are enough.[8] MRBD's arguments were not peripheral to the question at issue in the arbitration. They were central to the question of whether the claims remain in arbitration with the other claims[9] or are outside of arbitration because of the intellectual property exemption. All of the arguments went to whether MRBD was making a trade secrets claim, and whether that claim fell within the definition of intellectual property.

MRBD did not argue that they had a copyright claim. This court had already rejected that argument and there is no evidence that MRBD has a registered copyright in anything. MRBD did not allege a trademark claim, nor argue that it had one. MRBD did not and does not contend that it had a patent claim. It argued only that it should be allowed to pursue a statutory and contract-based misappropriation claim because its trade secrets were taken. The arbitrator's interim award finds that the claims are exempted because they are based on misappropriation of trade secrets.

---

[7] The doctrine is often applied to prevent parties from taking inconsistent positions in a variety of contexts. *Doe I v. Cerebral, Inc.*, 687 F. Supp. 3d 892, 897 (N.D. Cal. 2023)(company estopped from arguing its principal place of business was not California where it had successfully prevailed on a contrary claim); *Mahon v. Youtube, LLC*, No. 24-3570, 2026 WL 508851, at *1 (9th Cir. Feb. 24, 2026)(district court did not abuse discretion in finding that judicial estoppel applied to a party's contention concerning ownership of copyrights)

[8] *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (finding estoppel and explaining that judicial estoppel prevents a party from changing its "position in a legal proceeding." Positions need not be taken under oath. The point is to "prevent[ ] a party from asserting a claim in a legal proceeding that is inconsistent" with a previous claim (internal citations omitted).)

[9] Those include claims for breach of contract not arising from trade secrets.

BUCHALTER LLP
LOS ANGELES

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

Indeed, in its motion to lift the stay on its breach of contract claim against HigherGrowth, MRBD told this court that the arbitrator found the claim was based on trade secrets. (ECF 146, ¶ ¶ 10-11.) MRBD *may not now* argue that its contract claim *is not* based on misappropriation.

This fast and loose conduct poses another problem for MRBD.  MRBD cannot take the position that its claim involves trade secrets in one forum, and that it does not involve trade secrets in another forum without providing a factual basis for what – outside the alleged trade secrets in the counterclaim – constitutes the proprietary or confidential information on which its breach of contract claim rests.  Its prior uniform, consistent statements and arguments all involve alleged trade secrets (alleged processes, methods, programs and source code that derive value from their secrecy).  MRBD does not plausibly allege a claim for "proprietary" or "confidential" information other than alleged trade secrets.[10]  *Bell Atlantic Corp. v. Twombly*, 550 US 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

MRBD is not writing here on a clean slate.  There is a history, and it may not change or rewrite that history.  Nor may it claim that it is relying on conclusory phrases (like confidential or proprietary information) to avoid the conclusion that its claim is a trade-secrets-based claim.  What is the confidential information?  What is the proprietary information?  The only thing alleged in the amended counterclaim are conclusory, implausible allegations of trade secrets. As noted in the motion to dismiss, those allegations fail just as a statutory misappropriation claim would.

## V.   THE CASES MRBD RELIES ON TO OPPOSE THE MOTION TO DISMISS DO NOT CHANGE THE RESULT.

MRBD cites *Albert's Organics*,[11] *Mattson Technology*,[12] *Imagekeeper*,[13] and *Whiteslate*,[14] for the proposition that breach of contract claims may exist independent of trade secrets claims.  However, none of these cases addresses the record in this case.  Here, MRBD itself defined its

---

[10] Trade secrets that this court found had never been plausibly alleged in connection with North Bay Credit Union's motion to dismiss.

[11] *Albert's Organics, Inc. v. Holzman*, 445 F.Supp.3d 463 (N.D. Cal. 2020)

[12] *Mattson Technology, Inc. v. Applied Materials, Inc.*, No. 23-cv-06071-SVK, 2024 WL 3558849 (N.D.Cal. July 25, 2024)

[13] *ImageKeeper, LLC v. Wright Nat'l Flood Ins. Services LLC*, No. 2:20-cv-01470-CDS-NJK, 2025 WL 1745744 (D.Nev. June 24, 2025.)

[14] *Whiteslate, LLP v. Dahlin*, No. 20-cv-1782, 2021 WL 2826088 (S.D. Cal. 2021)

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

breach of contract claim as a trade secrets claim. Here, unlike the cases on which MRBD relies – there is a case history that constrains MRBD's new theory, rendering it implausible.

*Albert's Organics*, involved Albert's purchase of all of the assets of Purity Organics (PACO), and the purchase was conditioned on Albert's giving employment to PACO's two former owners (Holzman and Akagaki). The employment agreements provided (as do most employment agreements) that the employees keep Albert's confidential and trade secret information secret and separately prevented them from operating a competing business. Albert's alleged that after Holzman was terminated, he shared confidential and trade secret information with third parties, and then formed a competing company.

On defendant's motion to dismiss under California and federal law (not Nevada law as would apply by contract here), the court found that Albert's had adequately alleged a trade secret claim; hence it had also validly alleged a breach of contract claim coextensive with that claim.[15] The same holds true in *Mattson* which discusses only a federal Defense of Trade Secrets Act claim and in which the court declined to dismiss because the plaintiff had alleged a plausible trade secrets claim. *Mattson*, 2024 WL 3558849, *6

*ImageKeeper* is a summary judgment case. It alleged as a breach of contract the misappropriation of trade secrets, reverse engineering (which is allowed under the MSA at issue here), failing to comply with security and other authorization protocols, and making a competing product available for sale to third parties. Other than a trade secrets claim, there are no similar allegations here. In *ImageKeeper*, the court found that because there were triable issues of trade secrets on the trade secret claims, there were likewise genuine issues on the breach of contract claims. *ImageKeeper*, 2025 WL 1745744, at *21.

---

[15] *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 476 (N.D. Cal. 2020): "defendants argue that plaintiff's breach of contract claim is coextensive with (or derivative of) its trade secret claims. Mtn. at 8. Accordingly, defendants contend that, to the extent there is no plausible allegation of a trade secret, there is no breach of the contract. Id. ***Because plaintiff has alleged a valid misappropriation of trade secrets claim, then defendants' argument fails***. *Albert's Organics*, 445 F. Supp. 3d at 476 (N.D. Cal. 2020)
Separately, *Albert's* breach of contract claim included an obligation by the employee not to open a competing grocery, which would – as Albert's found – support an alternative contract claim. But HigherGrowth is not an employee and it does not operate a competing business (nor does MRBD claim that it does). Albert's likewise does not contain the extensive record here – one demonstrating that MRBD's claim is based on misappropriation.

BUCHALTER LLP
LOS ANGELES

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

Additionally, *Whiteslate*, 2021 WL 2826088, *8, cites to *Albert's* simply for the general proposition that a defendant may breach a contract for disclosing confidential information other than trade secrets if the contract provides for it – but again: What is the confidential information if not the platform and its processes that were claimed to be trade secrets? This court has found that a trade secret claim had not been sufficiently or plausibly pleaded because it was unclear what was secret and what was open source. And of course, anything that is public cannot be confidential. Further to that point, in *Whiteslate*, the non-trade secret information consisted of the law firm's clients, client lists (of course if not otherwise a matter of public record), costing and pricing lists, finances, marketing plans and the like. (Dkt. in 3:20-cv-01782, ECF 1-2, and Ex. A.) According to *Whiteslate*, the confidential information (as distinct from trade secrets) was defined similarly in *Albert's*. That is not in issue here. Indeed, if it were – if MRBD were claiming that HigherGrowth had taken client lists, pricing data (other than the contractual price changed to it of course), financial documents or spreadsheets, it should have made that clear to the arbitrator so that the arbitrator could determine if those claims were arbitrable as "intellectual property" claims. Again, MRBD cannot change the nature of its claims asserted here now – especially in light of the arbitration clause and the pending arbitration.

The Nevada state court case MRBD cites fairs no better. *Finkel v. Cashman Pro., Inc.*, 128 Nev. 68 (2012) involves a district court's duty to reassess the existence trade secrets following termination of an agreement and dissolution of an injunction. As in *Hutchison v. KFC* and *Pellerin v. Honeywell International*, the "confidential" information here constitutes alleged trade secrets. It was on this basis that the claims were removed from arbitration under the intellectual property exemption. MRBD's claim for statutory misappropriation (which it has abandoned) and for contractual misappropriation (which MRBD pursues) arise from trade secrets. The breach of contract claim alleges the breach of confidentiality provisions by taking and using trade secrets.[16]

---

[16] MRBD simply contends that its access allegations were sufficient. But they were not sufficient for purposes of North Bay's claim, and there is no showing that MRBD did anything other than (a) license a platform, and (b) request payment. And any claims concerning payment are in arbitration. Note: if licensing a platform gives a licensee access to trade secrets, and if a licensor then licenses its platform to customers, it is entirely implausible to believe that what it licenses is somehow secret. The plausible facts are that the platform (like a word processing platform) allows the user to use it without making the inner workings available.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

According to MRBD, the claim falls outside arbitration because it is a trade secret claim. The claim must be dismissed.

## VI.    THE OPPOSITION CONFIRMS THE ALLEGATIONS REGARDING FAILURE TO PAY INVOICES SHOULD BE STRICKEN.

MRBD's opposition fails to plausibly explain how its allegations pertaining to HigherGrowth's alleged failure to pay invoices relate to any element of it's the counterclaim for breach of contract alleged here, especially when the failure to pay claim is in arbitration.

MRBD asserts that the failure to pay invoices allegations are material because they explain how and why MRBD revoked HigherGrowth's license. ECF no. 151, p. 16:3-11. That is an affirmative defense. It does not belong in the counterclaim. MRBD claims the revocation of the license is shows HigherGrowth breached the MSA by improperly accessing the platform and retaining work product, project technology and intellectual property. *Id*., p. 16:6-11. Payment, or failure to pay, has nothing to do with breaching "confidential" terms. The failure to pay claim is in arbitration.   The motion to strike should be granted.

## VII.    CONCLUSION

MRBD is not proceeding on a blank slate. It advanced a clear and consistent position in arbitration—that both its statutory and contract claims were rooted in the alleged misappropriation of trade secrets—and it prevailed on that basis. It cannot now reverse course to avoid dismissal of of claims based on the same set of facts. The motion to dismiss should be granted without leave to amend. The motion to strike should separately be granted.

Dated: May 18, 2026

**BUCHALTER LLC**

By:  _/s/ Matthew L. Seror_____
        Matthew L. Seror

**GORDON REES SCULLY MANSUKHANI**

By:  _/s/ Sean Flynn_____
        Sean Flynn

*Attorneys for Plaintiff and Counter-Defendant* NORTH BAY CREDIT UNION *and Counter-Defendant* HIGHERGROWTH, LLC