GARMAN TURNER GORDON LLP
DYLAN CICILIANO
Nevada Bar No. 12348
Email: dciciliano@gtg.legal
TERESA M. PILATOWICZ
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
J. SEAN BENEVENTO
Nevada Bar No. 16498
E-mail: jsbenevento@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
Fax: (725) 777-3112
*Attorneys for Defendants MRB Direct, Inc. and David Park*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NORTH BAY CREDIT UNION, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>MRB DIRECT, INC., a Nevada corporation; DAVID PARK, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-00212-MMD-CSD<br><br>**DEFENDANTS' AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIMS** |
| MRB DIRECT, INC., a Nevada corporation;<br><br>Plaintiff,<br><br>v.<br><br>NORTH BAY CREDIT UNION, a California nonprofit corporation; and HIGHERGROWTH, LLC, a California limited liability company,<br><br>Defendants. | |

Defendants MRB Direct, Inc. ("MRB Direct") and David Park ("Mr. Park," and collectively with MRB Direct, "Defendants") by and through the law firm Garman Turner Gordon LLP, hereby amend[1] their answer to the Complaint ("Complaint") filed by Plaintiff North Bay Credit Union ("Plaintiff" and "North Bay"), as follows:

1. Answering Paragraph 1 of the Complaint, Defendants are without sufficient information to admit or deny the allegations contained in Paragraph 1 of the Complaint, and on that basis, deny them.

2. Answering Paragraph 2 of the Complaint, Defendants admit that MRB Direct was, and is, a Nevada corporation with its principal place of business in Henderson, Nevada. Defendants admit that 18575 Jamboree Road, Suite 250, Irvine CA 92612 is affiliated with MRB Direct. Defendants deny the remaining allegations in Paragraph 2 of the Complaint.

3. Answering Paragraph 3 of the Complaint, Defendants deny the allegations contained within Paragraph 3 of the Complaint.

4. Answering Paragraph 4 of the Complaint, Defendants are without sufficient information to admit or deny the allegations contained in Paragraph 4 of the Complaint, and on that basis, deny them.

5. Answering Paragraph 5 of the Complaint, Defendants deny the allegations in Paragraph 5 of the Complaint.

6. Answering Paragraph 6 of the Complaint, Defendants deny the allegations in Paragraph 6 of the Complaint.

7. Answering Paragraph 7 of the Complaint, Defendants deny the allegations contained in Paragraph 7 of the Complaint.

## GENERAL ALLEGATIONS

8. Answering Paragraph 8 of the Complaint, Defendants admit that "After Proposition 64 legalized the sale of recreational marijuana in the State of California in 2016, legal marijuana

[1] This corrected Amended Answer to Complaint and Counterclaims is filed to reflect the stricken paragraphs as required by the Court's September 25, 2026, Minute Order (Dkt. 156). No changes have been made other than to strike the paragraphs identified by the Court's ruling.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

businesses struggled to open and maintain bank accounts because marijuana remains illegal at the federal level, and many banks, which are governed by federal law, refused their business." Defendants are without sufficient information to admit or deny the remaining allegations contained within Paragraph 8 of the Complaint, and on that basis, deny them.

9. Answering Paragraph 9 of the Complaint, Defendants admit that North Bay formed HigherGrowth, LLC (hereinafter "HigherGrowth")—which specializes in providing banking accounts and services to the cannabis industry—and that North Bay sold a 25% interest in that company to Fintech Fund II. Defendants deny the allegation that Fintech Fund II is under the sole control of Mr. Park. Defendants admit that North Bay contracted with HigherGrowth, LLC. Defendants deny the remaining allegations in Paragraph 9 of the complaint.

10. Answering Paragraph 10 of the Complaint, Defendants admit that MRB Direct licensed an online banking platform to HigherGrowth. Defendants deny the remaining allegations in Paragraph 10 of the complaint.

11. Answering Paragraph 11 of the Complaint, Defendants admit that MRB Direct sent a demand letter for payment on the balance owed, which amount was approximately $1.2 million. Defendants admit that HigherGrowth and/or Greenbax, Inc. paid $500,000 toward the debt it owed MRB Direct, and that MRB Direct revoked HigherGrowth's license to the Platform pursuant to the terms of the MSA when HigherGrowth failed to pay the remaining debt. MRB Direct is without sufficient information to admit or deny the remaining allegations in Paragraph 11 of the Complaint, and on that basis, denies them.

12. Answering Paragraph 12 of the Complaint, Defendants are without sufficient information to admit or deny the allegations in Paragraph 12 of the Complaint, and on that basis, deny them.

13. Answering Paragraph 13 of the Complaint, Defendants admit that MRB Direct revoked HigherGrowth's license to use the Platform on July 26, 2023, after HigherGrowth's failure to pay its outstanding bills. Defendants admit that HigherGrowth's license has not been restored to date. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 13 of the Complaint, and on that basis, deny them.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

14. Answering Paragraph 14 of the Complaint, Defendants are without sufficient information to admit or deny the allegations in Paragraph 14 of the Complaint, and on that basis, deny them.

15. Answering Paragraph 15 of the Complaint, Defendants deny the allegations in Paragraph 15 of the Complaint.

16. Answering Paragraph 16 of the Complaint, Defendants are without sufficient information to admit or deny 1) that "payroll for many of the North Bay existing and prospective customers was due on August 1, with funding required by July 31," 2) that "state excise tax payments were due on August 1 and carried a 25% - 50% penalty if not paid by August 1," and 3) that "the State Board of Equalization taxes were due on August 1, as well as local taxes, all of which carried heavy late penalties," and on that basis, deny them. Defendants deny the remaining allegations in Paragraph 16 of the Complaint.

17. Answering Paragraph 17 of the Complaint, Defendants are without sufficient information to admit or deny the allegations contained in Paragraph 17 of the Complaint, and on that basis, deny them.

18. Answering Paragraph 18 of the Complaint, Defendants deny that "because MRB turned off the platform through which customers had access to their accounts, MRB has left these North Bay existing and prospective customers without access to their bank deposits, or the ability to make payroll, pay various state and local taxes, and pay trade creditors, or any other ordinary course payments to maintain their operations." Defendants are without sufficient information to admit or deny the remaining allegations contained in Paragraph 18 of the Complaint, and on that basis, deny them.

**FIRST CAUSE OF ACTION**

Intentional Interference with Prospective Economic Advantage

(Against All Defendants)

19. Answering Paragraph 19 of the Complaint, Defendants repeat, re-allege, and incorporate by reference the answers set forth above.

…

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

20. Answering Paragraph 20 of the Complaint, Defendants are without sufficient information to admit or deny the allegations contained in Paragraph 20 of the Complaint, and on that basis, deny them.

21. Answering Paragraph 21 of the Complaint, Defendants deny the allegations in Paragraph 21 of the Complaint.

22. Answering Paragraph 22 of the Complaint, Defendants deny the allegations in Paragraph 22 of the Complaint.

23. Answering Paragraph 23 of the Complaint, Defendants deny the allegations in Paragraph 23 of the Complaint.

24. Answering Paragraph 24 of the Complaint, Defendants deny the allegations in Paragraph 24 of the Complaint.

**SECOND CAUSE OF ACTION**

Negligent Interference with Prospective Economic Advantage

(Against All Defendants)

25. Answering Paragraph 25 of the Complaint, Defendants repeat, re-allege, and incorporate by reference the answers set forth above.

26. Answering Paragraph 26 of the Complaint, Defendants deny the allegations in Paragraph 26 of the Complaint.

27. Answering Paragraph 27 of the Complaint, Defendants deny the allegations in Paragraph 27 of the Complaint.

28. Answering Paragraph 28 of the Complaint, Defendants deny the allegations in Paragraph 28 of the Complaint.

29. Answering Paragraph 29 of the Complaint, Defendants deny the allegations in Paragraph 29 of the Complaint.

…

…

…

…

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**THIRD CAUSE OF ACTION**

Violation of California Business & Professions Code Section 17200, *et seq.*

(Against All Defendants)

30. Answering Paragraph 30 of the Complaint, Defendants repeat, re-allege, and incorporate by reference the answers set forth above.

31. Answering Paragraph 31 of the Complaint, Defendants deny the allegations in Paragraph 31 of the Complaint.

32. Answering Paragraph 32 of the Complaint, Defendants states that California Business and Professions Code section 17203 speaks for itself and denies the remaining allegations in Paragraph 32 of the Complaint.

33. Answering Paragraph 33 of the Complaint, Defendants deny the allegations in Paragraph 33 of the Complaint.

34. Answering Paragraph 34 of the Complaint, the allegations in Paragraph 34 are requests for relief to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 34 of the Complaint.

**FOURTH CAUSE OF ACTION**

Declaratory Relief

(Against All Defendants)

35. Answering Paragraph 35 of the Complaint, as the cause of action has been dismissed, no response is necessary, but Defendants otherwise deny the remaining allegations in Paragraph 35 of the Complaint.

36. Answering Paragraph 36 of the Complaint, as the cause of action has been dismissed, no response is necessary, but Defendants otherwise deny the remaining allegations in Paragraph 36 of the Complaint.

37. Answering Paragraph 37 of the Complaint, as the cause of action has been dismissed, no response is necessary, but Defendants otherwise deny the remaining allegations in Paragraph 37 of the Complaint.

…

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

38. Answering Paragraph 38 of the Complaint, as the cause of action has been dismissed, no response is necessary, but Defendants otherwise deny the remaining allegations in Paragraph 38 of the Complaint.

39. Answering Paragraph 39 of the Complaint, as the cause of action has been dismissed, no response is necessary, but Defendants otherwise deny the remaining allegations in Paragraph 39 of the Complaint.

## PRAYER FOR RELIEF

To the extent a response to Plaintiff's prayer for relief is required, Defendants deny any wrongdoing, deny that Plaintiff suffered any monetary damages, and deny that Plaintiff is entitled to recovery against Defendants.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1. Plaintiff fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

2. Plaintiff's claims are barred, in whole or in part, for failure to join a necessary party.

3. North Bay's Complaint in this action contains references to an unnamed "third party." It alleges that the "third party" is an entity related to MRB Direct. Upon information and belief, Austin Capital Trust Company ("Austin Capital") is the unnamed third party.

4. North Bay's complaint alleges harm as a result of 1) customers being unable to access their accounts (HigherGrowth's responsibility), and 2) the unnamed third party's (*i.e.*, Austin Capital's) failure to transfer funds.

5. MRB Direct does not hold any funds. As bank sponsor, North Bay was the only entity responsible for holding and processing funds for HigherGrowth LLC ("HigherGrowth") customers. North Bay deposited some of those funds with Austin Capital, who held and processed those funds as a custodian for North Bay, and only transferred them pursuant to the direction of North Bay. Similarly, HigherGrowth was the only entity that held a duty to ensure HigherGrowth customers had access to their accounts. MRB Direct's responsibility to license the Platform began and ended with the Master Subscription Agreement ("MSA"), which provided that the Platform

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

would be shut down upon ten days' notice of unpaid bills.

6. Despite these complex, interwoven business relationships and the various duties distributed between and among the parties, North Bay failed to name HigherGrowth as a party to this action.[2] On the face of the complaint alone, it is evident that complete relief cannot be accorded without joining HigherGrowth, as it is HigherGrowth's failure to pay for the platform that led to North Bay's purported claims. And North Bay's allegation that MRB Direct "manufactured a billing dispute" with HigherGrowth was likely made in anticipation of one of MRB Direct's defenses—that it was justified in shutting down the Platform due to HigherGrowth's failure to pay.

7. Moreover, to proceed with this litigation without joining HigherGrowth would risk inconsistent results. MRB Direct's liability to North Bay is inextricably connected to MRB Direct's agreement with HigherGrowth. Should the current case proceed as-is, it would risk inconsistent results with the currently pending arbitration between MRB Direct and HigherGrowth.

**THIRD AFFIRMATIVE DEFENSE**

8. Plaintiff is estopped from asserting the claims for relief set forth in its Complaint.

9. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

10. Early on in the relationship between MRB Direct and the North Bay-affiliated parties (HigherGrowth, North Bay, and later Greenbax, Inc.), there was an agreement to pay MRB Direct to license the Platform and related development services.

11. Despite that agreement to pay for the Platform, full payments for the Platform ceased in or about May 2022.

…

---

[2] The recently dismissed action wherein Austin Capital sued North Bay was not filed until after North Bay's complaint in the instant action. Accordingly, North Bay's failure to name Austin Capital in this case cannot have been due to a belief that the two actions combined will adequately accord relief.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

12. In reliance on the earlier agreement, MRB Direct attempted to work out the payment issues, providing detailed invoices and information on the basis for the charges while continuing to allow access to the Platform. MRB Direct was unaware that it would never be paid in full.

13. Nevertheless, after attempting to work out the payment issues, MRB Direct still had not received payment in full by June 2023.

14. MRB Direct sent a letter to Carole McCormick ("McCormick") about the payment issues on July 14, 2023. The letter identified the amount due and owing and notified the North Bay-related entities that the failure to pay constituted a breach of the MSA.

15. The parties worked out an arrangement where MRB Direct would accept a payment of $500,000 to keep the platform open for an additional week.

16. Even after that additional week, the remaining balance had not been paid in full.

17. The remaining balance still has not been paid in full.

18. It was this failure to pay that caused any alleged damages North Bay sustained.

19. In other words, North Bay's claims are based upon a breached promise to pay, which MRB Direct relied on to its detriment.

**FOURTH AFFIRMATIVE DEFENSE**

20. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

21. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

22. HigherGrowth initially paid MRB Direct's invoices for the services MRB Direct provided. HigherGrowth stayed current on invoices sent at the end of each month from November 2021 through April 2022.

23. Starting in or about May 2022, HigherGrowth began to fail to pay MRB Direct's invoices in full.

24. In or about early- to mid-2023, HigherGrowth first questioned aspects of MRB Direct's invoices.

…

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

25. After attempting to resolve the payment issues, counsel representing MRB Direct and related entities sent a letter to HigherGrowth's representative Carole McCormick on July 14, 2023. The letter noted that HigherGrowth was in breach of the MSA in that it had failed to pay $620,552.00 to MRB Direct as of May 31, 2023 and $526,746.50 to FTA Systems as of June 30, 2023. The letter noted that MRB Direct's charges would also include late fees and/or interest. The letter demanded payment of the past due invoices by the close of business on July 18, 2023, and asserted that all services being provided to HigherGrowth would cease in the absence of such payment.

26. Counsel for MRB Direct subsequently agreed that MRB Direct would accept $500,000 in partial payment of the outstanding invoices in exchange for keeping the platform open for one week. HigherGrowth and/or Greenbax Marketplace, Inc. ("Greenbax, Inc.") paid or caused $500,000 to be paid, and as a result, MRB Direct kept the platform open for an additional week.

27. HigherGrowth failed to pay MRB Direct the remaining, outstanding balance. Accordingly, on or about July 26, 2023, MRB Direct disabled its Platform in accordance with the terms of the MSA.

28. To date, HigherGrowth has not paid the outstanding balances owed to MRB Direct.

29. Upon information and belief, North Bay, as 75% owner of HigherGrowth, directed HigherGrowth to refuse to pay the amounts HigherGrowth owed MRBD under the MSA.

30. After MRB Direct revoked HigherGrowth's license to use the Platform due to nonpayment, North Bay and its officers, Chris Call ("Call") and Carole McCormick, began an e-mail campaign against Austin Capital intended to indirectly assert pressure on MRB Direct to reinstate the Platform license, despite HigherGrowth's continued nonpayment of amounts owed. Austin Capital and MRB Direct operate separately, but Call, McCormick, and North Bay apparently believed that applying pressure to Austin Capital would result in MRB Direct capitulating to its demands based on North Bay's mistaken assumption that Austin Capital and/or its management would attempt to intervene in the MRB Direct-HigherGrowth dispute.

31. In addition, as further described in the Counterclaim, North Bay and Greenbax Inc. used MRB Direct's intellectual property—including trade secrets—that makes up the Platform in

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

violation of the MSA to continue operating as Greenbax Marketplace by creating a competing platform and/or reconstituting MRB Direct's Platform after MRB Direct revoked the license.

32. North Bay's acts, such as directing HigherGrowth not to pay, orchestrating an e-mail campaign against a third party to pressure MRB Direct to reinstate the Platform without being paid, and misappropriating MRB Direct's trade secrets, constitute misconduct such that North Bay's claims are barred in whole or in part by the doctrine of unclean hands.

**FIFTH AFFIRMATIVE DEFENSE**

33. Plaintiff's claims are barred, in whole or in part, because Defendants' actions were not the proximate cause of Plaintiff's damages.

34. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

35. HigherGrowth initially paid MRB Direct's invoices for the services MRB Direct provided. HigherGrowth stayed current on invoices sent at the end of each month from November 2021 through April 2022.

36. Starting in or about May 2022, HigherGrowth began to fail to pay MRB Direct's invoices in full.

37. In or about early- to mid-2023, HigherGrowth first questioned aspects of MRB Direct's invoices.

38. After attempting to resolve the payment issues, counsel representing MRB Direct and related entities sent a letter to HigherGrowth's representative Carole McCormick on July 14, 2023. The letter noted that HigherGrowth was in breach of the MSA in that it had failed to pay $620,552.00 to MRB Direct as of May 31, 2023 and $526,746.50 to FTA Systems as of June 30, 2023. The letter noted that MRB Direct's charges would also include late fees and/or interest. The letter demanded payment of the past due invoices by the close of business on July 18, 2023, and asserted that all services being provided to HigherGrowth would cease in the absence of such payment.

39. Counsel for MRB Direct subsequently agreed that MRB Direct would accept $500,000 in partial payment of the outstanding invoices in exchange for keeping the platform open

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

for one week. HigherGrowth and/or Greenbax, Inc. paid or caused $500,000 to be paid, and as a result, MRB Direct kept the platform open for an additional week.

40. HigherGrowth failed to pay MRB Direct the remaining, outstanding balance. Accordingly, on or about July 26, 2023, MRB Direct disabled the Greenbax platform in accordance with the terms of the MSA.

41. To date, HigherGrowth has not paid the outstanding balances owed to MRB Direct.

42. Upon information and belief, North Bay, as 75% owner of HigherGrowth, directed HigherGrowth to refuse to pay the amounts HigherGrowth owed MRBD under the MSA.

43. The next day, North Bay and its officers, Call and McCormick, began an e-mail campaign against Austin Capital intended to indirectly assert pressure on MRB Direct to reinstate the Platform license, despite HigherGrowth's nonpayment of amounts owed. Austin Capital and MRB Direct operate separately, but Call, McCormick, and North Bay apparently believed that applying pressure to Austin Capital would result in MRB Direct capitulating to its demands based on North Bay's mistaken assumption that Austin Capital and/or its management would attempt to intervene in the MRB Direct-HigherGrowth dispute.

44. However, if any customers lacked immediate access to funds relating to uncleared transactions, it was solely because North Bay and HigherGrowth refused to timely provide the requisite reconciliation information to Austin Capital.

45. HigherGrowth, not MRB Direct or Austin Capital, had the responsibility to provide its customers with access to their respective accounts, including the ability for clients to make transfer requests. It was North Bay's responsibility, not Austin Capital's or MRB Direct's, to effect those transfers, including by providing instructions to Austin Capital regarding the funds that Austin Capital held in custody for North Bay. It was both HigherGrowth's and North Bay's responsibilities to provide Austin Capital with reconciliation information so that, prior to any transfers, Austin Capital could ensure that North Bay was not trying to withdraw or deposit more money than North Bay actually held for HigherGrowth.

46. In an effort to undercut both Austin Capital and the HigherGrowth customers, North Bay failed to post transactions that were pending when the Platform was disabled. Had North Bay

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

posted the pending transactions, Austin Capital was ready and able to immediately process those transactions. North Bay and HigherGrowth also failed to provide banking reconciliations to Austin Capital to allow it to account for and securely transfer the funds for customers.

47. By depriving Austin Capital of this information, North Bay precluded Austin Capital from being able to immediately reconcile and account for the exact balances it held for North Bay on an individual HigherGrowth customer basis.

48. Therefore, any delay in HigherGrowth clients' access to funds was a direct result of North Bay and HigherGrowth refusing to supply necessary, updated information to Austin Capital.

49. Accordingly, Defendants' alleged conduct was not the proximate cause of North Bay's alleged damages.

**SIXTH AFFIRMATIVE DEFENSE**

50. Plaintiff's claims are barred, in whole or in part, because Defendants did not and do not have control over the activities or conduct of the unnamed third parties and the unnamed, alleged coconspirators identified in Plaintiff's complaint.

51. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

52. As discussed herein, HigherGrowth's conduct led to North Bay's alleged damages. Defendants have no control over HigherGrowth's actions.

53. Upon information and belief, North Bay contends Austin Capital failed to remit funds to North Bay's customers. MRB Direct has no control over Austin Capital's actions.

**SEVENTH AFFIRMATIVE DEFENSE**

54. Plaintiff's claims are barred, in whole or in part, because MRB Direct was justified in revoking HigherGrowth's license to use the Platform under the MSA due to HigherGrowth's refusal to pay.

55. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

…

56. HigherGrowth initially paid MRB Direct's invoices for the services MRB Direct provided. HigherGrowth stayed current on invoices sent at the end of each month from November 2021 through April 2022.

57. Starting in or about May 2022, HigherGrowth began to fail to pay MRB Direct's invoices in full.

58. In or about early- to mid-2023, HigherGrowth first questioned aspects of MRB Direct's invoices.

59. MRB Direct provided detailed invoices relating to all of its charges to HigherGrowth.

60. While HigherGrowth claimed or insinuated that unspecified charges were either incorrect or fabricated, HigherGrowth failed to specifically state what was incorrect about any particular invoice or billing entry.

61. In many instances, HigherGrowth failed to pay for customization work that HigherGrowth specifically asked MRB Direct and/or FTA Systems to perform.

62. MRB Direct, on the other hand, provided details about the users and accounts whose fees accounted for certain charges on the outstanding invoices. HigherGrowth could have verified these figures but, upon information and belief, chose not to and simply alleged that the charges or the invoices they were based on were wrong, while failing to provide any evidence to support the claim.

63. In response to HigherGrowth's nonpayment of MRB Direct's invoices, counsel representing MRB Direct and related entities sent a letter to HigherGrowth's representative Carole McCormick on July 14, 2023. The letter noted that HigherGrowth was in breach of the MSA in that it had failed to pay $620,552.00 to MRB Direct as of May 31, 2023 and $526,746.50 to FTA Systems as of June 30, 2023. The letter noted that MRB Direct's charges would also include late fees and/or interest. The letter demanded payment of the past due invoices by the close of business on July 18, 2023, and asserted that all services being provided to HigherGrowth would cease in the absence of such payment.

…

64. Counsel for MRB Direct subsequently agreed that MRB Direct would accept $500,000 in partial payment of the outstanding invoices in exchange for keeping the platform open for one week. HigherGrowth and/or Greenbax, Inc. paid or caused $500,000 to be paid, and as a result, MRB Direct kept the platform open for an additional week.

65. During the following week plus, HigherGrowth failed to provide any evidence that it was not obligated to pay the remaining amounts outstanding. HigherGrowth was provided data for all the transactions underlying the outstanding amounts. For example, MRB Direct provided HigherGrowth information about what HigherGrowth had specifically requested, who made those requests, and the work that MRB Direct performed in response. HigherGrowth failed to specifically dispute any of these charges, and instead later asserted that all the charges were fraudulent or inappropriate.

66. Section 5.4 of the MSA is titled "Suspension of Service and Acceleration." It addresses MRB Direct's remedies in the event HigherGrowth failed to pay. It provides that "If any charge owing by customer to MRB Direct under this or other agreements for Services is 30 days or more overdue, . . . MRB Direct may, without limiting its other rights and remedies, accelerate Customer's unpaid fee obligations under such agreements so that all such obligations become immediately due and payable, and **suspend all Services until such amounts are paid in full**, provided that . . . MRB Direct will give Customer at least 10 days' prior notice that its account is overdue."

67. HigherGrowth failed to pay MRB Direct the remaining, outstanding balance. Accordingly, on or about July 26, 2023, MRB Direct disabled the Greenbax platform in accordance with the terms of the MSA.

68. To date, HigherGrowth has not paid the outstanding balances owed to MRB Direct.

## EIGHTH AFFIRMATIVE DEFENSE

69. Plaintiff's claims are barred, in whole or in part, because Defendants did not owe a duty of care to Plaintiff.

70. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

71. Section 5.4 of the MSA is titled "Suspension of Service and Acceleration." It addresses MRB Direct's remedies in the event HigherGrowth failed to pay. It provides that "If any charge owing by customer to MRB Direct under this or other agreements for Services is 30 days or more overdue, . . . MRB Direct may, without limiting its other rights and remedies, accelerate Customer's unpaid fee obligations under such agreements so that all such obligations become immediately due and payable, and **suspend all Services until such amounts are paid in full**, provided that . . . MRB Direct will give Customer at least 10 days' prior notice that its account is overdue."

72. HigherGrowth failed to pay MRB Direct the outstanding balance for its services. Accordingly, on or about July 26, 2023, MRB Direct disabled the Greenbax platform in accordance with the terms of the MSA.

73. MRB Direct and North Bay have no direct relationship, contractual or otherwise.

74. HigherGrowth, not Defendants, had the responsibility to provide its customers with access to their respective accounts, including the ability for clients to make transfer requests. It was North Bay's responsibility, not Defendants', to effect those transfers, including by providing instructions to Austin Capital regarding the funds that Austin Capital held in custody for North Bay. It was both HigherGrowth's and North Bay's responsibilities, not Defendants', to provide Austin Capital with reconciliation information so that, prior to any transfers, Austin Capital could ensure that North Bay was not trying to withdraw or deposit more money than North Bay actually held for HigherGrowth.

**NINTH AFFIRMATIVE DEFENSE**

75. Plaintiff's claims are barred, in whole or in part, because the damages, if any, suffered by Plaintiff were proximately caused in whole or in part, or were contributed to by, Plaintiff's actions, omissions, and/or negligence.

76. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

77. HigherGrowth initially paid MRB Direct's invoices for the services MRB Direct provided. HigherGrowth stayed current on invoices sent at the end of each month from November

2021 through April 2022.

78. Starting in or about May 2022, HigherGrowth began to fail to pay MRB Direct's invoices in full.

79. In or about early- to mid-2023, HigherGrowth first questioned aspects of MRB Direct's invoices.

80. After attempting to resolve the payment issues, counsel representing MRB Direct and related entities sent a letter to HigherGrowth's representative Carole McCormick on July 14, 2023. The letter noted that HigherGrowth was in breach of the MSA in that it had failed to pay $620,552.00 to MRB Direct as of May 31, 2023 and $526,746.50 to FTA Systems as of June 30, 2023. The letter noted that MRB Direct's charges would also include late fees and/or interest. The letter demanded payment of the past due invoices by the close of business on July 18, 2023, and asserted that all services being provided to HigherGrowth would cease in the absence of such payment.

81. Counsel for MRB Direct subsequently agreed that MRB Direct would accept $500,000 in partial payment of the outstanding invoices in exchange for keeping the platform open for one week. HigherGrowth and/or Greenbax, Inc. paid or caused $500,000 to be paid, and as a result, MRB Direct kept the platform open for an additional week.

82. HigherGrowth failed to pay MRB Direct the remaining, outstanding balance. Accordingly, on or about July 26, 2023, MRB Direct disabled the Greenbax platform in accordance with the terms of the MSA.

83. To date, HigherGrowth has not paid the outstanding balances owed to MRB Direct.

84. Upon information and belief, North Bay, as 75% owner of HigherGrowth, directed HigherGrowth to refuse to pay the amounts HigherGrowth owed MRBD under the MSA.

85. The next day, North Bay and its officers, Call and McCormick, began an e-mail campaign against Austin Capital intended to indirectly assert pressure on MRB Direct to reinstate the Platform license, despite HigherGrowth's nonpayment of amounts owed. Austin Capital and MRB Direct operate separately, but Call, McCormick, and North Bay apparently believed that applying pressure to Austin Capital would result in MRB Direct capitulating to its demands based

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

on North Bay's mistaken assumption that Austin Capital and/or its management would attempt to intervene in the MRB Direct-HigherGrowth dispute.

86. However, if any customers lacked immediate access to funds relating to uncleared transactions, it was solely because North Bay and HigherGrowth refused to timely provide the requisite reconciliation information to Austin Capital.

87. HigherGrowth, not MRB Direct or Austin Capital, had the responsibility to provide its customers with access to their respective accounts, including the ability for clients to make transfer requests. It was North Bay's responsibility, not Austin Capital's or MRB Direct's, to effect those transfers, including by providing instructions to Austin Capital regarding the funds that Austin Capital held in custody for North Bay. It was both HigherGrowth's and North Bay's responsibilities to provide Austin Capital with reconciliation information so that, prior to any transfers, Austin Capital could ensure that North Bay was not trying to withdraw or deposit more money than North Bay actually held for HigherGrowth.

88. In an effort to undercut both Austin Capital and the HigherGrowth customers, North Bay failed to post transactions that were pending when the Platform was disabled. Had North Bay posted the pending transactions, Austin Capital was ready and able to immediately process those transactions. North Bay and HigherGrowth also failed to provide banking reconciliations to Austin Capital to allow it to account for and securely transfer the funds for customers.

89. By depriving Austin Capital of this information, North Bay precluded Austin Capital from being able to immediately reconcile and account for the exact balances it held for North Bay on an individual HigherGrowth customer basis.

90. Therefore, any delay in HigherGrowth clients' access to funds was a direct result of North Bay and HigherGrowth refusing to pay MRB Direct and then refusing to supply necessary, updated information to Austin Capital.

91. Accordingly, North Bay's conduct was the proximate cause of its own damages.

**TENTH AFFIRMATIVE DEFENSE**

92. Plaintiff's claims are barred, in whole or in part, by the voluntary payment doctrine.

…

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

93. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

94. HigherGrowth initially paid MRB Direct's invoices for the services MRB Direct provided. HigherGrowth stayed current on invoices sent at the end of each month from November 2021 through April 2022.

95. Starting in or about May 2022, HigherGrowth began to fail to pay MRB Direct's invoices in full.

96. In or about early- to mid-2023, HigherGrowth first questioned aspects of MRB Direct's invoices.

97. After attempting to resolve the payment issues, counsel representing MRB Direct and related entities sent a letter to HigherGrowth's representative Carole McCormick on July 14, 2023. The letter noted that HigherGrowth was in breach of the MSA in that it had failed to pay $620,552.00 to MRB Direct as of May 31, 2023 and $526,746.50 to FTA Systems as of June 30, 2023. The letter noted that MRB Direct's charges would also include late fees and/or interest. The letter demanded payment of the past due invoices by the close of business on July 18, 2023, and asserted that all services being provided to HigherGrowth would cease in the absence of such payment.

98. Aware of the surrounding facts, HigherGrowth voluntarily paid $500,000 to MRB Direct.

99. By voluntarily making a partial payment of $500,000 to MRB Direct, HigherGrowth acknowledged the existence of its debt to MRB Direct.

100. HigherGrowth failed to pay MRB Direct the remaining, outstanding balance. Due to HigherGrowth's failure to pay, MRB Direct disabled the Greenbax platform on or about July 26, 2023, as it was entitled to do under the MSA.

**ELEVENTH AFFIRMATIVE DEFENSE**

101. Plaintiff's claims are barred, in whole or in part, based on fraud or illegality.

102. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

103. Upon information and belief, Greenbax, Inc. is using the processes, techniques, and methods that made up the Platform in its own business. Those processes, techniques, and methods were improperly obtained by Greenbax, Inc. and North Bay from HigherGrowth.

104. North Bay and Greenbax, Inc. used MRB Direct's intellectual property—including trade secrets—that makes up the Platform in violation of the MSA in order to continue operating as Greenbax Marketplace by creating a competing platform and/or reconstituting MRB Direct's Platform after MRB Direct revoked the license.

105. North Bay, HigherGrowth, and Greenbax, Inc. concealed and did not disclose their efforts to misappropriate MRB Direct's trade secrets and create a competing platform to MRB Direct.

106. Those efforts are material facts known to North Bay.

107. As a third party to the relationship between HigherGrowth, North Bay, and Greenbax, Inc., MRB Direct could not have reasonably discovered their collective efforts to misappropriate trade secrets and create a competing platform. North Bay knew as much.

108. North Bay intended MRB Direct to rely on its nondisclosure and concealment such that MRB Direct continued to provide HigherGrowth access to MRB Direct's Platform.

109. MRB Direct indeed relied on North Bay's nondisclosure and concealment; it continued to provide HigherGrowth access to MRB Direct's Platform until Higher Growth ultimately refused to pay.

110. At minimum, MRB Direct's reliance was justifiable because of the terms of the MSA, which included terms protecting MRB Direct's proprietary information and prohibiting creation of a competing Platform.

111. MRB Direct was damaged by this reliance because North Bay was able to misappropriate trade secrets to create a competing platform.

112. As part of this scheme to defraud MRB Direct, HigherGrowth eventually refused to pay for the license, which led to the shutdown of the Platform.

…

…

## TWELFTH AFFIRMATIVE DEFENSE

113. Plaintiff's claims are barred, in whole or in part, as a result of the wrongful actions of their agents, officers, directors, affiliates and representatives.

114. Defendants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

115. HigherGrowth initially paid MRB Direct's invoices for the services MRB Direct provided. HigherGrowth stayed current on invoices sent at the end of each month from November 2021 through April 2022.

116. Starting in or about May 2022, HigherGrowth began to fail to pay MRB Direct's invoices in full.

117. In or about early- to mid-2023, HigherGrowth first questioned aspects of MRB Direct's invoices.

118. MRB Direct provided detailed invoices relating to all of its charges to HigherGrowth.

119. While HigherGrowth claimed or insinuated that unspecified charges were either incorrect or fabricated, HigherGrowth failed to specifically state what was incorrect about any particular invoice or billing entry.

120. In many instances, HigherGrowth failed to pay for customization work that HigherGrowth specifically asked MRB Direct and/or FTA Systems to perform.

121. In response to HigherGrowth's nonpayment of MRB Direct's invoices, counsel representing MRB Direct and related entities sent a letter to HigherGrowth's representative Carole McCormick on July 14, 2023. The letter noted that HigherGrowth was in breach of the MSA in that it had failed to pay $620,552.00 to MRB Direct as of May 31, 2023 and $526,746.50 to FTA Systems as of June 30, 2023. The letter noted that MRB Direct's charges would also include late fees and/or interest. The letter demanded payment of the past due invoices by the close of business on July 18, 2023, and asserted that all services being provided to HigherGrowth would cease in the absence of such payment.

…

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

122. Counsel for MRB Direct subsequently agreed that MRB Direct would accept $500,000 in partial payment of the outstanding invoices in exchange for keeping the platform open for one week. HigherGrowth and/or Greenbax, Inc. paid or caused $500,000 to be paid, and as a result, MRB Direct kept the platform open for an additional week.

123. During the following week plus, HigherGrowth failed to provide any evidence that it was not obligated to pay the remaining amounts outstanding. HigherGrowth was provided data for all the transactions underlying the outstanding amounts. For example, MRB Direct provided HigherGrowth information about what HigherGrowth had specifically requested, who made those requests, and the work that MRB Direct performed in response. HigherGrowth failed to specifically dispute any of these charges, and instead later asserted that all the charges were fraudulent or inappropriate.

124. Upon information and belief, North Bay, as 75% owner of HigherGrowth, directed HigherGrowth to refuse to pay the amounts HigherGrowth owed MRBD under the MSA.

125. Regardless of whether it was at North Bay's direction, HigherGrowth failed to pay MRB Direct the remaining, outstanding balance. Due to HigherGrowth's failure to pay, on or about July 26, 2023, MRB Direct disabled the Greenbax platform in accordance with the terms of the MSA.

126. The next day, North Bay and its officers, Call and McCormick, began an e-mail campaign against Austin Capital intended to indirectly assert pressure on MRB Direct to reinstate the Platform license, despite HigherGrowth's nonpayment of amounts owed. Austin Capital and MRB Direct operate separately, but Call, McCormick, and North Bay apparently believed that applying pressure to Austin Capital would result in MRB Direct capitulating to its demands based on North Bay's mistaken assumption that Austin Capital and/or its management would attempt to intervene in the MRB Direct-HigherGrowth dispute.

127. However, if any customers lacked immediate access to funds relating to uncleared transactions, it was solely because North Bay and HigherGrowth refused to timely provide the requisite reconciliation information to Austin Capital.

…

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

128. HigherGrowth, not MRB Direct or Austin Capital, had the responsibility to provide its customers with access to their respective accounts, including the ability for clients to make transfer requests. It was North Bay's responsibility, not Austin Capital's or MRB Direct's, to effect those transfers, including by providing instructions to Austin Capital regarding the funds that Austin Capital held in custody for North Bay. It was both HigherGrowth's and North Bay's responsibilities to provide Austin Capital with reconciliation information so that, prior to any transfers, Austin Capital could ensure that North Bay was not trying to withdraw or deposit more money than North Bay actually held for HigherGrowth.

129. In an effort to undercut both Austin Capital and the HigherGrowth customers, North Bay failed to post transactions that were pending when the Platform was disabled. Had North Bay posted the pending transactions, Austin Capital was ready and able to immediately process those transactions. North Bay and HigherGrowth also failed to provide banking reconciliations to Austin Capital to allow it to account for and securely transfer the funds for customers.

130. By depriving Austin Capital of this information, North Bay precluded Austin Capital from being able to immediately reconcile and account for the exact balances it held for North Bay on an individual HigherGrowth customer basis.

**THIRTEENTH AFFIRMATIVE DEFENSE**

131. MRB Direct is entitled to a setoff against any claims and/or damages Plaintiff might have.

132. MRB Direct hereby repeats, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

133. MRB Direct is asserting a Counterclaim against North Bay for misappropriation of trade secrets under the California Uniform Trade Secrets Act. *See below*.

134. MRB Direct is entitled to recover on its Counterclaim.

135. MRB Direct is entitled to set off any recovery under its Counterclaim against any claims Plaintiff may have and/or damages Plaintiff might recover.

**FOURTEENTH AFFIRMATIVE DEFENSE**

136. Plaintiff was required, but failed, to mitigate its damages, if any.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

137. North Bay and its officers, Call and McCormick, began an e-mail campaign against Austin Capital intended to indirectly assert pressure on MRB Direct to reinstate the Platform license, despite HigherGrowth's nonpayment of amounts owed. Austin Capital and MRB Direct operate separately, but Call, McCormick, and North Bay apparently believed that applying pressure to Austin Capital would result in MRB Direct capitulating to its demands based on North Bay's mistaken assumption that Austin Capital and/or its management would attempt to intervene in the MRB Direct-HigherGrowth dispute.

138. However, if any customers lacked immediate access to funds relating to uncleared transactions, it was solely because North Bay and HigherGrowth refused to timely provide the requisite reconciliation information to Austin Capital.

139. HigherGrowth, not MRB Direct or Austin Capital, had the responsibility to provide its customers with access to their respective accounts, including the ability for clients to make transfer requests. It was North Bay's responsibility, not Austin Capital's or MRB Direct's, to effect those transfers, including by providing instructions to Austin Capital regarding the funds that Austin Capital held in custody for North Bay. It was both HigherGrowth's and North Bay's responsibilities to provide Austin Capital with reconciliation information so that, prior to any transfers, Austin Capital could ensure that North Bay was not trying to withdraw or deposit more money than North Bay actually held for HigherGrowth.

140. In an effort to undercut both Austin Capital and the HigherGrowth customers, North Bay failed to post transactions that were pending when the Platform was disabled. Had North Bay posted the pending transactions, Austin Capital was ready and able to immediately process those transactions. North Bay and HigherGrowth also failed to provide banking reconciliations to Austin Capital to allow it to account for and securely transfer the funds for customers.

141. By refusing to provide these reports, North Bay and Greenbax intentionally deprived Austin Capital of the ability to maintain the integrity and accuracy of the client records. Had they provided the reports consistent with North Bay's obligations as bank sponsor, Austin Capital could have immediately transferred funds to HigherGrowth's clients. By intentionally depriving Austin Capital of this information, North Bay precluded Austin Capital from being able

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

to immediately reconcile and account for the exact balances it held for North Bay on an individual HigherGrowth customer basis.

142. Therefore, any delay in Austin Capital's ability to provide HigherGrowth clients with funds was a direct result of North Bay and HigherGrowth refusing to supply updated information to Austin Capital.

143. Notwithstanding, Austin Capital took extraordinary steps to request data from MRB Direct so it could attempt to reconcile the HigherGrowth accounts. Austin Capital's actions required significant expense and time and would not have been necessary but for NCBU and HigherGrowth refusing to provide the routine reconciliation data to Austin Capital.

144. With the help of MRB Direct, Austin Capital completed this process to the best of its ability by July 31, 2023, within two business days of the Platform being disabled. In many or most instances, with absolutely no assistance from North Bay, Call, or McCormick, Austin Capital was able to assist the HigherGrowth customers by transferring assets to a new custodian the same day that those customers requested that Austin Capital do so. Beginning on August 3, 2023, Austin Capital provided HigherGrowth clients that had not already transferred their assets elsewhere online access to information about their transaction and funds free of charge.

145. North Bay could have mitigated its damages by, among other things, directing HigherGrowth to pay what it owed under the MSA as 75% owner, providing Austin Capital with reconciliation information as it did in the usual course of business, and/or working with Austin Capital to address HigherGrowth customer concerns, rather than shifting blame to Austin Capital and directing HigherGrowth customers to file regulatory complaints.

146. Defendants reserve the right to raise any additional affirmative defenses, not asserted herein or withdraw, amend or modify its Answer upon discovery or investigation of additional facts or other proceedings in this case and others that may warrant such action.

…

…

…

…

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

## COUNTERCLAIMS

Defendant/Counterclaimant MRB Direct, Inc. ("MRB Direct" and "Counterclaimant"), by and through its counsel of record Garman Turner Gordon LLP, alleges Counterclaims[3] against Counter-Defendants North Bay Credit Union ("North Bay") and HigherGrowth, LLC d/b/a Greenbax Marketplace ("HigherGrowth") [4] as follows:

## PARTIES AND JURISDICTION

1. Counter-Plaintiff MRB Direct is and, at all times relevant to this action, was a Nevada corporation with its principal place of business in Henderson, Nevada.

2. Upon information and belief, Counter-Defendant North Bay is a California nonprofit corporation with its principal place of business in Santa Rosa in the County of Sonoma, California. Chris Call is and was the CEO of North Bay, and Carole McCormick is and was the Chief Compliance Officer of North Bay.

3. Counter-Defendant HigherGrowth is a Limited Liability Corporation. Carole McCormick is and was the President and a manager or member of HigherGrowth. Chris Call is and was a manager or member of HigherGrowth. North Bay owns 75% of HigherGrowth. A Nevada Limited Liability Partnership known as FinTech Fund II ("FinTech Fund") owns the other 25% of HigherGrowth. The managing partner of FinTech Fund is Austin Capital General Partners, a Limited Limited Liability Partnership. Austin Capital General Partners is owned by Austin Capital Family Office.

4. Upon information and belief, Greenbax Marketplace, Inc. ("Greenbax, Inc.") is a California corporation with its principal place of business in Santa Rosa, California. Chris Call is and was a director of Greenbax Inc. Carole McCormick is and was the President of Greenbax Inc.

---

[3] Pursuant to the Court's May 16, 2025, Minute Order and May 19, 2025, Order, MRB Direct has not included claims against Greenbax, Inc. and has removed certain other claims. MRB Direct is not abandoning any claims and reserves all rights.

[4] The Court's May 16, 2025, Minute Order stayed MRB Direct's counterclaims against HigherGrowth, while the Court's May 19, 2025, Order dismissed MRB Direct's claims against NBCU with leave to file this Amended Answer and Counterclaim. Accordingly, MRB Direct restates the stayed claims against HigherGrowth herein.

5. This Court has personal jurisdiction over counter-defendant North Bay as Plaintiff in this action.

6. Counter-defendant HigherGrowth consented to the jurisdiction of this court for matters principally related to the parties' intellectual property under the MSA between HigherGrowth and MRB Direct.

7. This court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 diversity of citizenship jurisdiction. The amount in controversy exceeds $75,000. Upon information and belief, all counter-plaintiffs are completely diverse from all counter-defendants with respect to the counterclaims.

8. In the alternative, this court has subject matter jurisdiction over these counterclaims pursuant to supplemental jurisdiction. Each and every counterclaim, including those involving joinder of new parties, is so related to the claims within the Court's subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Upon information and belief, to the extent that the Court's subject matter jurisdiction over other claims in this action rests on diversity of citizenship, exercising supplemental jurisdiction over the counterclaims brought herein would not destroy complete diversity.

## GENERAL ALLEGATIONS

9. Banking options are limited for businesses operating in the cannabis industry. To provide banking services to the cannabis industry while complying with federal law, North Bay formed a financial technology ("FinTech") company called HigherGrowth, LLC ("HigherGrowth").

10. FinTech companies like HigherGrowth are usually non-financial institutions that afford their end client to access financial services. Because FinTech companies do not have a bank charter to perform certain financial services, those companies need a bank sponsor.

11. North Bay is and was the bank sponsor for HigherGrowth. Bank sponsors like North Bay enable FinTech companies like HigherGrowth to legally perform financial services, such as issuing bank accounts, processing automated clearing house ("ACH") payments, and wiring money. In this instance North Bay was a "bank sponsor" for its own affiliate.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

12. Under this arrangement, when a cannabis customer needed to open a bank account, HigherGrowth helped them to do so and performed the requisite regulatory compliance work. HigherGrowth essentially performed all the front-end functions of a bank, while North Bay operated in the background, processing the HigherGrowth transactions and handling the money as bank sponsor.

13. Because HigherGrowth acted as a bank, they needed a platform to, among other things, interface with customers, perform legal and regulatory functions, track transactions, interface with bank sponsors, provide workflows that would complete the steps associated with customer transactions and the associated legal and regulatory requirements, and structure all of the aspects of the banking relationship so that it seamlessly and accurately facilitates all aspects of the banking relationship.

14. North Bay, like many financial institutions, uses legacy systems of record that were developed and implemented prior to the digitalization of banking and the financial system. As a result, their systems of record are ill equipped to handle modern banking demands. In simple terms, the legacy systems of record speak a different language than the modern financial system.

15. Rather than rebuild their systems of record, financial institutions use third-party banking platforms that integrate their antiquated systems of record into the modern world. These systems are complex and proprietary and require developers to connect old and antiquated record keeping with modern developments. Given the nature of the systems of records, banking platforms have to be specifically designed for the financial institution and their customers.

16. In effect, when a banking customer logs into a web-based banking application, they are often interfacing with a third-party banking platform. That banking platform allows customers to access the systems of record and obtain banking services, while permitting the bank to use an antiquated system that was not built for the services provided. The banking platform translates commands between the financial institution and customer and allows the financial institutions to offer modern conveniences. When implemented, the platform serves as a seamless window and enables financial institutions to use antiquated systems of record.

…

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

17. Accordingly, the builders of these banking platforms derive value from the ability to effectively merge the modern banking system with legacy systems of records. The complexity of the process cannot be understated. As a result, the means and processes by which these builders design systems are closely guarded secrets.

18. As relevant to this case, MRB Direct designs and builds a technology banking platform specific to the cash-intensive businesses in the cannabis industry. This banking platform is customizable to the needs of its customers, such as HigherGrowth.

**MRB Direct's Platform**

19. Unlike typical platforms provided by competitors, MRB Direct's platform (the "Platform") was specially developed for heavily-regulated cannabis banking. The challenges of complying with the cannabis banking regulations raises the barrier of entry for FinTech companies. Those same challenges led to specific innovations contained within MRB Direct's Platform.

20. The Platform contained unique, non-public information related to the methods, techniques, and processes of providing banking services to cannabis customers. As described above, it provided a web interface for customers, a bankers' interface and administrator interface for a licensee to administer the function of the Platform, proprietary Application Programming Interfaces ("APIs") and associated source code, data structure processes and methodology that dictated relationships and structure so everything worked together, Integration Platform as a Service ("iPaaS") methodologies and processes, Robotic Process Automation methodologies and processes, and workflow instructions. These trade secrets give MRB Direct's customers the ability to provide seamless and accurate banking transactions while complying with legal and regulatory requirements. They also provide the architecture necessary to ensure that a cannabis customer could easily perform banking functions with a licensee while the licensee complied with all of its internal requirements, in addition to legal and regulatory requirements. In sum, the Platform created by MRB Direct provides the complete process through which a company such as HigherGrowth could act as a bank for its customers. The Platform was effectively a program, set of processes, techniques, and methods that, when combined, allowed a licensee—such as HigherGrowth—to act as a modern day bank.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

21. MRB Direct tightly secured the Platform to ensure the proprietary nature of the Platform was not disclosed. Specifically, its agreements include confidentiality provisions like Section 3.4 and Section 6 to protect exactly this type of non-public information.

**MRB Direct Licenses the Platform to HigherGrowth**

22. In or about 2021, not having a platform that would provide all the necessary functions, HigherGrowth entered a Master Subscription Agreement ("MSA") with MRB Direct to license the Platform. HigherGrowth licensed the Platform from MRB Direct and requested that MRB Direct customize the Platform for HigherGrowth. In other words, HigherGrowth contracted with MRB Direct to create and employ a unique and proprietary system that would allow HigherGrowth to provide modern banking services to its customers while using NBCU's antiquated system of record.

23. HigherGrowth and MRB Direct became parties to a Master Subscription Agreement between them, the effective date of which was November 1, 2021, and which agreement was periodically updated (the "MSA"). A true and correct copy of the MSA as of January 2022, without its exhibits or schedules, is attached hereto as Exhibit A.

24. Several exhibits to the MSA further established the terms of the parties' relationship, including Exhibit A, entitled "Support and Maintenance Services", Exhibit B, entitled "Data Processing Addendum", and Exhibit C, entitled "Acceptable Use and External-Facing Services Policy."

25. Pursuant to the MSA, MRB Direct licensed the Platform to HigherGrowth and customized the Platform according to its requirements. The Platform used MRB Direct's proprietary and strongly guarded trade secrets to provide banking solutions. Most importantly, MRB Direct utilized its proprietary technology to serve as the digital front-end banking platform. It provided the user interface (UI) and user experience (UX) through which clients of HigherGrowth accessed and managed their accounts. By abstracting and interfacing with NBCU's antiquated system of record, MRB Direct delivered a seamless, compliant, and intuitive digital banking experience, specifically tailored to meet the needs of end users. These services were

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

invaluable, and absent MRB Direct's knowhow, HigherGrowth would have been unable to provide services to its customers.

26. MRB Direct's sole licensee was HigherGrowth.

27. Pursuant to section 5.1 of the MSA, HigherGrowth agreed to pay various fees to MRB Direct, including fees established by an Order Form or SOW.

28. HigherGrowth agreed to pay various fees, including a $25,000 per year Platform Software Fee, $150 per client per month for the MRB Direct Client Account Fee, $50 per client per month for Ancillary or CBD Client Account Fee, and $100 per user per month HigherGrowth employee workspace fee, with the first 10 HigherGrowth employees' use being free.

29. Because the creation of the Platform and its ability to service cannabis banking customers provides independent economic value to MRB Direct through its ability to license it, the MSA contained several provisions designed to protect MRB Direct's proprietary information, trade secrets, and intellectual property that made up the Platform.

30. Section 3.4 of the MSA prohibited HigherGrowth from 1) allowing unauthorized parties to use the Platform and intellectual property, 2) selling, reselling, licensing, sublicensing, distributing, making available, renting, or leasing the Platform, and 3) using their access to the Platform to build a competing product, among other things.

31. Section 6 of the MSA provides that HigherGrowth assigns the rights, title, and interest in and to all Work Product, Project Technology, and associated intellectual property rights to MRB Direct. To the extent such rights, title, and interest are not assignable, Section 6 grants MRB Direct an exclusive, royalty-free, transferable, irrevocable, worldwide license to those rights, title, and interest. The MSA defines Work Product as (i) any and all discoveries, works of authorship, innovations or inventions, knowledge, ideas, concepts, techniques, know-how, methods, processes, systems and devices authored, created, found or conceived by MRB Direct in the course of providing services to HigherGrowth. The MSA defines Project Technology as any information, materials, and technology used or developed in connection with or otherwise relating to the services provided by MRB Direct, including without limitation, any techniques, data, models, inventions, methods and patent and legal data or descriptions. Thus, MRB Direct's and

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

FTA Systems' customizations to the Platform belong to MRB Direct, and do not belong to HigherGrowth.

32. As part of these protections, MRB Direct and HigherGrowth agreed that disputes pertaining to improper use of intellectual property would not be subject to the MSA's arbitration agreement. Section 12.12 of the MSA specifically excludes from arbitration "any dispute principally related to either Party's intellectual property (which such dispute will be resolved in litigation before the United States District Court for the District of Nevada) . . . ."

33. HigherGrowth customers, using the MRB Direct Platform, processed payments and deposits through North Bay as the "sponsor bank", which provided money movement.

**North Bay Forms Greenbax Marketplace, Inc.**

34. In or about 2022, HigherGrowth received notice of a potential trademark infringement issue in relation to the name HigherGrowth.

35. In or about August 2022, HigherGrowth filed a fictitious business name statement to do business as Greenbax Marketplace.

36. In or about November 2022, articles of incorporation were filed with the California Secretary of State to form an entity named Greenbax Marketplace, Inc. ("Greenbax, Inc."). North Bay created Greenbax, Inc. with the express intent of merging HigherGrowth into Greenbax, Inc.

37. Upon information and belief, North Bay saw this as an opportunity to replace HigherGrowth with Greenbax, Inc., and to misappropriate the technology developed and employed by MRB Direct for HighGrowth to Greenbax, Inc.

**North Bay Attempts Merger Between HigherGrowth and Greenbax Inc.**

38. North Bay began its attempt to oust HigherGrowth and MRB Direct when it proposed that HigherGrowth should merge into Greenbax, Inc. North Bay's purported reason for this merger was the trademark issues with HigherGrowth's name.

39. But North Bay's proposals did not simply effect a name change. It quickly became clear that North Bay sought to dilute the rights and ownership of the minority interest owner in HigherGrowth.

40. The minority owner of HigherGrowth rejected the proposed merger.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

41. Faced with the inability to merge HigherGrowth into Greenbax, Inc. and thereby achieve its goal to acquire more control over the combined entity, North Bay did not dissolve or wind down Greenbax, Inc. Instead, North Bay set upon a plan with HigherGrowth and Greenbax, Inc. to steal the Platform and operate NBCU's cannabis banking interest through a company unfettered with the duties owed to the minority shareholder and the contractual obligations to MRB Direct.

**Greenbax, Inc. and North Bay, Began Operating as Greenbax Marketplace In Place of HigherGrowth, Using the Processes, Techniques, and Methods of the Platform**

42. After MRB Direct disabled the Platform under the MSA, an entity publicly holding itself out as "Greenbax Marketplace . . . a subsidiary of North Bay Credit Union" continued to market itself via a website found at greenbaxmarketplace.io—the website created by MRB Direct and transferred to HigherGrowth. Upon information and belief, that entity is Greenbax, Inc. In so doing, Greenbax, Inc. is, upon information and belief, acting at the direction of North Bay.




43. Upon information and belief, Greenbax, Inc. operates the same business as HigherGrowth and servicing the same customers as HighGrowth. Greenbax, Inc. is using the processes, techniques, and methods that it obtained from MRB Direct's Platform to operate its own business. Those processes, techniques, and methods were improperly obtained by Greenbax,

Inc. and North Bay from HigherGrowth.

44. North Bay and Greenbax, Inc. used MRB Direct's intellectual property that makes up the Platform in violation of the MSA in order to continue operating as Greenbax Marketplace by creating a competing platform and/or reconstituting MRB Direct's Platform after MRB Direct revoked the license.

45. Such access and use would have included access to and use of trade secrets, including trade secrets in the methods, techniques, and processes of providing banking services to cannabis customers. Those include a bankers' interface and an administrator interface for a licensee to administer the function of the Platform, proprietary Application Programming Interfaces ("APIs") and associated source code, data structure processes and methodology that dictated relationships and structure so everything worked together, Integration Platform as a Service ("iPaaS") methodologies and processes, Robotic Process Automation methodologies and processes, and workflow instructions. These trade secrets provide the ability to provide seamless and accurate banking transactions while complying with legal and regulatory requirements. They also provide the architecture necessary to ensure that a cannabis customer could easily perform banking functions with a licensee while the licensee complied with all of its internal requirements, in addition to legal and regulatory requirements. In sum, the Platform created by MRB Direct provides the complete process through which a company such as HigherGrowth could act as a bank for its customers. The Platform was effectively a program, set of processes, techniques, and methods that, when combined, allowed a licensee—such as HigherGrowth—to act as a bank. And it is a trade secret of MRB Direct.

46. HigherGrowth's use and/or distribution of MRB Direct's intellectual property is not subject to the MSA's arbitration agreement (Section 12.12), which specifically excludes from arbitration "any dispute principally related to either Party's intellectual property (which such dispute will be resolved in litigation before the United States District Court for the District of Nevada) . . . ."

…

…

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**FIRST CAUSE OF ACTION**

**(Misappropriation of Trade Secrets Against North Bay[5])**

47. Counterclaimant hereby repeats, realleges, and incorporates by reference the allegations in preceding paragraphs as though set forth fully herein.

48. MRB Direct possesses trade secrets in the Platform, including a bankers' interface and administrator interface for a licensee to administer the function of the Platform, proprietary Application Programming Interfaces ("APIs") and associated source code, data structure processes and methodology that dictate relationships and structure so everything works together, Integration Platform as a Service ("iPaaS") methodologies and processes, Robotic Process Automation methodologies and processes, and workflow instructions. These trade secrets give MRB Direct's customers the ability to provide seamless and accurate banking transactions while complying with legal and regulatory requirements. They also provide the architecture necessary to ensure that a cannabis customer could easily perform banking functions with a licensee while the licensee complied with all of its internal requirements, in addition to legal and regulatory requirements. In sum, the Platform created by MRB Direct provides the complete process through which a company such as HigherGrowth could act as a bank for its customers. The Platform was effectively a program, set of processes, techniques, and methods that, when combined, allowed a licensee—such as HigherGrowth—to act as a modern day bank.

49. The Platform used these proprietary and strongly guarded trade secrets to provide banking solutions. Most importantly, MRB Direct utilized its proprietary technology to serve as the digital front-end banking platform. It provided the user interface (UI) and user experience (UX) through which clients of HigherGrowth accessed and managed their accounts. By abstracting and interfacing with NBCU's antiquated system of record, MRB Direct delivered a seamless, compliant, and intuitive digital banking experience, specifically tailored to meet the needs of end

[5] MRB Direct intends to assert claims against HigherGrowth under the California Uniform Trade Secrets Act ("CUTSA") for misappropriation of trade secrets. However, given the Court's order that questions of arbitrability must be decided by the Arbitrator, MRB Direct will first seek a determination of the arbitrability of a CUTSA claim from the Arbitrator.

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

users. These services were invaluable, and absent MRB Direct's knowhow, HigherGrowth would have been unable to provide services to its customers.

Moreover, Banking systems of record—particularly legacy systems—do not ordinarily process transactions in a way that is compliant with the numerous and onerous regulations placed on cannabis businesses. Thus, in addition to the above, MRB Direct's trade secrets in the Platform are outside the general knowledge of the field because they allow the Platform to uniquely operate in compliance with cannabis banking regulations.

50. MRB Direct took reasonable steps to protect the secrecy of the information covered by its trade secrets. For example, it entered into the MSA—a valid, enforceable contract—with HigherGrowth in connection with the Platform. The MSA includes confidentiality provisions, such as Section 3.4 and Section 6, which restrict HigherGrowth's ability to use and disclose the information contained in MRB Direct's trade secrets. In addition to the MSA, MRB Direct implemented its own internal controls to maintain the secrecy of the information covered by its trade secrets.

51. MRB Direct's trade secrets derive value by virtue of their secrecy. As described herein, the trade secrets enable the ability to effectively merge the modern banking system with legacy systems of record in a highly complex process. The complexity of that merger combined with the complicated federal and state regulatory schemes governing cannabis banking creates a high barrier to entry for businesses wishing to develop their own cannabis-compliant banking platform. If the proprietary information covered by MRB Direct's trade secrets were public, they would substantially drop in value because that barrier would cease to exist.

52. As bank sponsor to and 75% owner of HigherGrowth, North Bay knew of the MSA between MRB Direct and HigherGrowth.

53. Specifically, North Bay knew that the MSA imposed on HigherGrowth a duty to maintain the secrecy of the Platform and MRB Direct's trade secrets.

54. Under the California Uniform Trade Secrets Act ("CUTSA"), misappropriation is the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Cal. Civ. Code 3426.1(b)(1).

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

55. North Bay, acting in concert with its wholly owned subsidiary, Greenbax, Inc., acquired knowledge of MRB Direct's trade secrets through the improper means of inducing HigherGrowth to breach its duty of secrecy to MRB Direct.

56. Given Chris Call and Carole McCormick's overlapping positions at all three entities (North Bay, HigherGrowth, and Greenbax, Inc.), North Bay knew or had reason to know that its knowledge of MRB Direct's trade secrets was acquired by improper means.

57. Accordingly, North Bay misappropriated MRB Direct's trade secrets in the Platform by acquiring knowledge of MRB Direct's trade secrets knowing, or with reason to know, the knowledge was acquired by improper means.

58. CUTSA also defines misappropriation as the unauthorized "[d]isclosure or use of a trade secret of another . . . by a person who: used improper means to acquire knowledge of the trade secret." Cal. Civ. Code 3426.1(b)(2)(A).

59. After acquiring knowledge of MRB Direct's trade secrets through improper means, North Bay disclosed MRB Direct's trade secrets in the Platform to Greenbax, Inc.

60. Greenbax, Inc., acting in concert with North Bay, used MRB Direct's trade secrets to develop a competing platform.

61. Accordingly, North Bay misappropriated MRB Direct's trade secrets by disclosing and/or using those trade secrets after using improper means to acquire knowledge of them.

62. CUTSA also defines misappropriation as unauthorized "[d]isclosure or use of a trade secret of another . . . by a person who: . . . [a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." Cal. Civ. Code 3426.1(b)(2)(B).

63. As 75% shareholder of HigherGrowth, North Bay knew or had reason to know that its knowledge of MRB Direct's trade secrets was derived form HigherGrowth, an entity who owed a duty to MRB Direct under the MSA to maintain the secrecy of or limit the use of MRB Direct's trade secrets.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

64. Accordingly, North Bay misappropriated MRB Direct's trade secrets by disclosing and/or using those trade secrets, knowing or with reason to know that they were acquired from HigherGrowth, who owed MRB Direct a duty of secrecy.

65. MRB Direct sustained damages in excess of $75,000 as a result of North Bay's misappropriation of MRB Direct's trade secrets.

66. Accordingly, MRB Direct is entitled to recover its actual damages caused by misappropriation and damages for any unjust enrichment to North Bay. Cal. Civ. Code § 3426.3(a). Alternatively, MRB Direct is entitled to recover payment of reasonable royalties under Cal. Civ. Code § 3426.3(b).

67. North Bay's scheme to misappropriate MRB Direct's trade secrets while simultaneously directing HigherGrowth to stop paying for the Platform was willful and malicious, warranting double damages under Cal. Civ. Code § 3426.3(c) and an award of attorneys' fees and costs under Cal. Civ. Code § 3426.4.

68. MRB Direct is entitled to injunctive relief as set forth in Cal. Civ. Code § 3426.2.

**SECOND CAUSE OF ACTION**

**(Breach of Contract Against HigherGrowth)**

69. Counterclaimants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

70. The MSA between MRB Direct and HigherGrowth is a valid and enforceable contract.

71. Upon information and belief, MRB Direct performed all of its obligations under the MSA.

72. Section 3.4 of the MSA prohibits HigherGrowth from 1) allowing unauthorized parties to use the Platform and intellectual property, 2) selling, reselling, licensing, sublicensing, distributing, making available, renting, or leasing the Platform, and 3) using their access to the Platform to build a competing product, among other things.

73. Section 6 of the MSA provides that HigherGrowth assigns the rights, title, and interest in and to all Work Product, Project Technology, and associated intellectual property rights

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

to MRB Direct. To the extent such rights, title, and interest are not assignable, Section 6 grants MRB Direct an exclusive, royalty-free, transferable, irrevocable, worldwide license to those rights, title, and interest. The MSA defines Work Product as (i) any and all discoveries, works of authorship, innovations or inventions, knowledge, ideas, concepts, techniques, know-how, methods, processes, systems and devices authored, created, found or conceived by MRB Direct in the course of providing services to HigherGrowth. The MSA defines Project Technology as any information, materials, and technology used or developed in connection with or otherwise relating to the services provided by MRB Direct, including without limitation, any techniques, data, models, inventions, methods and patent and legal data or descriptions. Thus, MRB Direct's and FTA Systems' customizations to the Platform belong to MRB Direct, and do not belong to HigherGrowth.

74. Upon information and belief, in the course of conspiring with North Bay and Greenbax, Inc. to replace MRB Direct as provider of the Platform, HigherGrowth breached the MSA by, among other things, allowing unauthorized parties to use the Platform and MRB Direct's intellectual property, selling, reselling, licensing, sublicensing, distributing, making available, renting, or leasing the platform, using its access to the Platform to build or facilitate building a competing product, accessing the Platform after MRB Direct revoked HigherGrowth's license, and by retaining possession of the Work Product, Project Technology, and associated intellectual property that HigherGrowth assigned to MRB Direct under Section 6 of the MSA.

75. As a result of this breach, MRB Direct sustained damages in excess of $75,000.

76. The breaches of contract alleged against HigherGrowth herein are principally related to MRB Direct's intellectual property and are therefore specifically excluded from the arbitration agreement within the MSA.

**<u>THIRD CAUSE OF ACTION</u>**

**(Unjust Enrichment Against HigherGrowth)**

77. Counterclaimants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

…

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

78. Upon information and belief, in the course of conspiring to replace MRB Direct as technology provider, HigherGrowth unjustly retained Work Product, Project Technology, and associated intellectual property, as well as profits derived therefrom, that rightfully belongs to MRB Direct pursuant to Section 6 of the MSA.

79. That unjust retention is against fundamental principles of justice, equity and good conscience.

80. MRB Direct was damaged by HigherGrowth's unjust retention of the Work Product, Project Technology, associated intellectual property, and profits derived therefrom, in an amount to be determined at trial.

81. The unjust enrichment alleged against HigherGrowth herein is principally related to MRB Direct's intellectual property and is therefore specifically excluded from the arbitration agreement within the MSA.

**FOURTH CAUSE OF ACTION**

**(Breach of the Covenant of Good Faith and Fair Dealing Against HigherGrowth)**

82. Counterclaimants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

83. MRB Direct and HigherGrowth entered into the MSA, a contract that limited HigherGrowth's ability to use MRB Direct's Platform and intellectual property in certain ways, such as prohibiting HigherGrowth from developing a competing platform.

84. Accordingly, MRB Direct had justified expectations under the MSA that HigherGrowth would not use its access to MRB Direct's Platform and intellectual property to develop a competing platform and/or to reconstitute MRB Direct's Platform after MRB Direct revoked HigherGrowth's license.

85. The MSA contains a choice of law provision designating Nevada law as the applicable substantive law.

86. In every contract, Nevada law imposes upon the contracting parties a duty of good faith and fair dealing.

…

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

87. HigherGrowth therefore owed a duty of good faith and fair dealing to MRB Direct under the MSA.

88. HigherGrowth breached that duty by, among other things, conspiring with North Bay and Greenbax, Inc. to replace MRB Direct as provider of the Platform and, upon information and belief, to create a competing platform using MRB Direct's intellectual property.

89. MRB Direct's justified expectations were thus denied by HigherGrowth's breach.

90. MRB Direct was damaged by HigherGrowth's breach of the duty of good faith and fair dealing in an amount to be determined at trial.

91. The breach of the covenant of good faith and fair dealing alleged against HigherGrowth herein is principally related to MRB Direct's intellectual property and is therefore specifically excluded from the arbitration agreement within the MSA.

**FIFTH CAUSE OF ACTION**

**(Civil Conspiracy to Defraud Against HigherGrowth)**

92. Counterclaimants hereby repeat, reallege, and incorporate by reference the allegations in preceding paragraphs as though set forth fully herein.

93. North Bay, Greenbax, Inc., and HigherGrowth agreed to defraud MRB Direct. Their common objective was to replace MRB Direct in their business arrangement by using MRB Direct's Platform to aid in developing North Bay and Greenbax, Inc.'s own platform, and without paying MRB Direct what it was owed under the MSA.

94. North Bay, Greenbax, Inc., and HigherGrowth committed acts in furtherance of that common objective, including by refusing to pay MRB Direct what it was owed under the MSA, using HigherGrowth assets and access to MRB Direct's Platform to develop a competing platform, creating Greenbax, Inc. as a pretext to usurp MRB Direct, and subsequently taking over HigherGrowth's operations as Greenbax Marketplace.

95. By interfering with MRB Direct's contract with HigherGrowth, among other things, these acts caused MRB Direct damages, in an amount to be determined at trial.

…

…

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**PRAYER FOR RELIEF**

Wherefore, Counter-Plaintiff prays for judgment, as follows:

1. Plaintiffs take nothing by way of their claims;

2. For an award of damages against North Bay and HigherGrowth for all damages suffered as a result of their wrongful conduct as described herein, a specific amount to be determined according to proof;

3. For compensatory damages in an amount to be determined;

4. For punitive and exemplary damages;

5. For an injunction against North Bay;

6. For an award of attorneys' fees and costs of suit;

7. For an award of pre-judgment and post-judgment interest on the amount recovered at the highest legal rate; and

8. For such other and further relief as the Court deems just and proper.

Dated this 29th day of September 2026.

GARMAN TURNER GORDON LLP

*/s/ J. Sean Benevento*
DYLAN CICILIANO
Nevada Bar No. 12348
TERESA M. PILATOWICZ
Nevada Bar No. 9605
J. SEAN BENEVENTO
Nevada Bar No. 16498
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
Fax: (725) 777-3112
*Attorneys for Defendants MRB Direct, Inc. and David Park*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Garman Turner Gordon LLP, and that on the 29th day of September 2026, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, I served a true and correct copy of the foregoing **DEFENDANTS' AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIMS** via the Court's CM/ECF system as follows:

SEAN P. FLYNN
Nevada Bar No. 15408
GORDON REES SCULLY MANSUKHANI
1 East Liberty Street, Suite 424
Reno, NV 89501
Email: sflynn@grsm.com

*Attorneys for Plaintiff and Counter-Defendant North Bay Credit Union and Counter-Defendant HigherGrowth, LLC*

EFRAT M. COGAN (*Pro Hac Vice*)
MATTHEW L. SEROR (*Pro Hac Vice*)
DAVID E. MARK (*Pro Hac Vice*)
BUCHALTER, LLP
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Email: ecogan@buchalter.com
mseror@buchalter.com
dmark@buchalter.com

*Attorneys for Plaintiff and Counter-Defendant North Bay Credit Union and Counter-Defendant HigherGrowth, LLC*

*/s/ Tonya Binns*
An employee of
GARMAN TURNER GORDON LLP