# EXHIBIT A

EXHIBIT A

# MASTER SUBSCRIPTION AGREEMENT

THIS MASTER SUBSCRIPTION AGREEMENT GOVERNS CUSTOMER'S ACQUISITION AND USE OF MRB DIRECT, INC ("MRBD") PURCHASED SERVICES. CAPITALIZED TERMS HAVE THE DEFINITIONS SET FORTH HEREIN.

BY ACCEPTING THIS AGREEMENT, BY (1) EXECUTING AN ORDER FORM THAT REFERENCES THIS AGREEMENT, OR (2) EXECUTING A STATEMENT OF WORK ("SOW") (DEFINED BELOW) THAT REFERENCES THIS AGREEMENT, CUSTOMER AGREES TO THE TERMS OF THIS AGREEMENT. IF THE INDIVIDUAL ACCEPTING THIS AGREEMENT IS ACCEPTING ON BEHALF OF A COMPANY OR OTHER LEGAL ENTITY, SUCH INDIVIDUAL REPRESENTS THAT THEY HAVE THE AUTHORITY TO BIND SUCH ENTITY AND ITS AFFILIATES TO THESE TERMS AND CONDITIONS, IN WHICH CASE THE TERM "CUSTOMER" SHALL REFER TO SUCH ENTITY AND ITS AFFILIATES.

## 1. DEFINITIONS

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, Controls, is controlled by or is under common Control with such Person.

"Agreement" means this Master Subscription Agreement.

"Aggregated Data" means User(s) Data and usage information from which all direct and known indirect identifiers have been removed, and on which technical, organizational, and legal controls prevent employees, researchers or other third parties from re-identifying individuals. Aggregated Data therefore meets the standard of "protected de-identified," and therefore no longer constitutes Customer Data.

"Allowance" means amounts and levels of the Services to be permitted to be used by Customer.

"Applicable Law" means, as applicable to the Parties or any other Person in connection with this Agreement, any law (including common law), ordinance, statute, treaty, rule, Order, regulation, official directive, Supervisory Objection, consent, approval, opinion, interpretation, regulatory guidance, authorization or other determination or finding of any Governmental Body, applicable to or binding upon such Person or to which such Person is subject, whether federal, state, county, local, foreign or otherwise, as may be amended and in effect from time to time.

"Authorized User(s)" or "User(s)" means, in the case of an individual accepting these terms on his or her own behalf, such individual, or, in the case of an individual accepting this Agreement on behalf of a company or other legal entity, an individual who is authorized by Customer to use Services for whom Customer has purchased a subscription (or in the case of any Services provided by MRBD without charge, for whom a Service has been provisioned), and to whom Customer (or when applicable, MRBD at Customer's request) has supplied a user identification and password (for Services utilizing authentication). User(s) may include but not limited to employees, consultants, contractors and agents of Customer, and third parties with which Customer transacts business including Customer Client and Customer Client's customers.

"Change in Control" means, with respect to an entity, (1) a reorganization, merger, consolidation, sale of all or substantially all of the assets of, or other corporate transaction involving, such entity (a "Transaction"), in each case, with respect to which those stockholders of the entity immediately prior to such Transaction do not, immediately after the Transaction, own more than fifty percent (50%) of the combined voting power of the entity or the other corporation resulting from such Transaction.

"Change Order" means a new Statement of Work or Order Form for any significant modification to the Scope of Work agreed upon in the SOW or Order Form.

"Communication(s)" means oral or written communication (by electronic transmission or otherwise).

"Consultancy Fee(s)" means rate per hour or daily charges and expenses for Consultancy Services. MRBD's standard hourly rates or standard fees on its current fee schedule shall apply, such standard hourly rates may be amended by MRBD from time to time, or which may otherwise be set out in a Statement of Work or Order Form.

"Consultancy Service(s)" means but not limited to MRBD's time spent for training and general consultancy services, including project management, delivery, installation, implementation, creation and/or implantation of an SOW, and/or training; the initial amounts of which required by Customer and any timeframe for delivery all being as specified in an SOW.

"Content" means text and media obtained from publicly available sources, Customer, or its third-party content providers and made available to Customer through the Services, or pursuant to an Order Form or an SOW..

"Control" means, with respect to a Person, the power to direct, or cause the direction of, the management and policies of the Person, whether through ownership of voting securities, by contract or otherwise; provided, that the power to direct the voting of securities representing 50.1% or more of an entity's voting power shall always be deemed to constitute "Control".

"Cost(s)" includes but are not limited to, administrative and clerical expenses, Travel Expenses, the cost of legal services, whether performed by in-house counsel or private counsel, the costs of services by accountants, consultants, or other retained by MRBD, as well as the cost of hours for its employees, officers and directors or consultants for time spent during and after a request for research to provide documentation or information with regards to any federal, local or foreign government or other regulatory request, judicial or

administrative proceeding and any costs incurred which bear direct relationship to such request for research including copying costs and or cost for IT technicians to produce such information.

"Customer" means a client of MRBD and in the case of an individual accepting this Agreement on his or her own behalf, such individual, or in the case of an individual accepting this Agreement on behalf of a company or other legal entity, the company or other legal entity for which such individual is accepting this Agreement, and Affiliates of that company or entity (for so long as they remain Affiliates) which have entered into Order Forms or SOWs or receiving Services under this MSA.

"Customer Client" means an entity or an individual who is contracted with Customer to transact business utilizing Customer's Services and is an Authorized User(s).

"Customer Data" means any electronic data, materials, data and information submitted by or for Customer to the Services, excluding Content and Third-Party Applications. Customer Data and its derivatives will not include MRBD's Confidential Information.

"Delivery Date" means the date the Purchased Service(s) begins.

"Fee(s)" means obligation by Customer to pay for Services, Costs, and Travel Expenses that are attributable to Customer under the SOW, Order Form, or MSA for the completion of the Services, Additional Services, and continued access to Services.

"Force Majeure" means circumstances beyond a Party's reasonable control, including without limitation, acts of God, acts of government, floods, fires, earthquakes, civil unrest, acts of terror, strikes or other labor problems (other than those involving the Parties' employees), equipment (including Third-Party Applications) failure, internet service provider failures or delays, or denial of service attacks.

"GAAP" means, as of a particular time, generally accepted accounting principles as in effect in the United States as of such time.

"Governmental Body" means any government or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state or local, or any self-regulatory organization, agency, instrumentality or authority, or any court or arbitrator (public or private).

"Intellectual Property Right(s)" means patents, trademarks, service marks, registered designs, applications for any of those rights, trade and business names, unregistered trademarks and service marks, copyrights, know-how, database rights, rights in designs and inventions and all other rights of the same or similar effect or nature, including all renewals, applications and registrations (and the right to apply for registration) relating to any of the foregoing.

"Infrastructure" means virtual or physical servers on premises of MRBD or with a third-party hosting service provider chosen by MRBD, where IT systems, devices and components are installed covering stabilized power, cooling, network and space. Customer access to Services uptime will not be the responsibility of MRBD.

"Launch Date" means the date Customer commercially launches its Purchased Services to User(s).

"Malicious Code" means code, files, scripts, agents or programs intended to do harm, including, for example, viruses, worms, time bombs and Trojan horses.

"Master Subscription Agreement" or "MSA" means this Agreement.

"MRBD" means the MRB Direct, Inc and its Affiliate.

"MRBD Entities" means (i) MRB Direct, Inc, its Affiliate, and any company or entity including joint venture in which it holds fifty percent (50%) or more of the shares or voting power of and (ii) the officers, employees and contractors of the entities referred to in (i) above.

"Non-MRBD Application(s)" means a Web-based, mobile, offline or other software application functionality that interoperates with a Service, that is provided by Customer or a third-party. Non-MRBD Applications, other than those obtained or provided by Customer, will be identified as such.

"Order" means any order, injunction, judgment, doctrine, decree, ruling, writ, assessment or arbitration award of a Governmental Body.

"Order Form" means a list of Services on an ordering document offered to Customer and subject to MSA.

"Out of Scope Service(s)" or "Additional Service(s)" means any Services, Purchased Services, Consultancy Services, Technical Support that is not specified in an Order Form or SOW that Customer requested as Additional Services and performed by MRBD. Oral or written authorization can be given by Customer to MRBD to perform such Additional Services. In the absence of any other written agreement concerning such Additional Services, this MSA shall govern.

"Overages" means the Volume exceeds the Allowance specified in the MSA triggering additional fees at the rate also specified or otherwise referred to in a SOW or Order Form, or agreed upon by the Parties. Oral or written authorization can be given by Customer to MRBD for the costs of Overages. In the absence of any other written agreement concerning such Overages, this MSA shall govern.

"Parties" or "Party" means collectively MRBD and Customer and "Party" shall be construed as the context requires.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, non-profit, unincorporated organization, bank, credit union, trust bank, other organization or Governmental Body.

"Platform" means the tools, applications and processes integrated by MRBD and delivered over the internet.

"Project" means a set of tasks that must be completed to accomplish a particular goal or outcome for Customer as summarized in a SOW or Order Form.

"Project Technology" means any information, materials and technology used or developed in connection with or otherwise relating to the Services or a particular SOW, including without limitation any techniques, data, models, inventions, methods and patent and legal data or descriptions.

"Proprietary Technology" means any technology as conceived, developed, reduced to practice owned by MRBD or its Affiliates, including closed-source software for which MRBD has the right to offer Customer as Purchased Services and may include any combination of processes, tools, or systems of interrelated connections that are the property of MRBD. Customer agrees that it does not have any rights to any Proprietary Technology or Intellectual Property arising out of the Project or Services.

"Purchased Service(s)" or "Services" means the products, software, services, Technical Support, Platform, and Consultancy Services that Customer or Customer's Affiliate purchased or ordered under an Order Form, SOW or Additional Services covered under this MSA made available by MRBD. "Services" exclude Content and Third-Party Applications.

"Scope of Work" (also referred to as scope, scope of project, or scope of arrangement) means an outline of the Services for Customer on the Platform.

"Statement of Work" or "SOW" means a statement of work specifying the Services to be provided hereunder that is entered into between Customer and MRBD or any of their Affiliates, including Consultancy Services and any addenda and supplements thereto. By entering into an Order Form or an SOW hereunder, Customer, its Affiliates, and Subsidiaries agrees to be bound by the terms of this Agreement as if it were an original Party hereto. Unless otherwise stated in the SOW, this Agreement shall govern the relationship between the Parties.

"Subscription Fee(s)" means the recurring payments that are scheduled on a regular basis billed monthly, quarterly, or annually to Customer for its subscriptions (under Section 3.1) for its Authorized Users to access MRBD's Services, Technical Support, and Platform.

"Subsidiary" means with respect to any person, any corporation, limited liability company or other legal entity of which that person or one of that person's other subsidiaries, in either case, acting alone or with one or more of that person's other subsidiaries, owns, or has the power to vote or exercise a controlling influence with respect to, more than half of the capital stock or other ownership interest giving holders the right to one or both of the following: (i) elect the board of directors or other governing body of that legal entity; and (ii) receive the net assets of that legal entity available for distribution to holders of all stock or other ownership interests upon liquidation or dissolution of that entity.

"Supervisory Objection" means (i) an objection or criticism, orally or in writing, raised by a Governmental Body having supervisory or regulatory authority over Customer that expresses the Governmental Body's opinion that one or more provisions of this Agreement is likely to constitute or result in a violation of Applicable Law or unsafe or unsound practices, (ii) any cease-and-desist or other similar formal written order of a Governmental Body, or (iii) a written directive by a Governmental Body to cease or limit performance of material obligations under this Agreement.

"Support" means support for the Services and maintenance services as specified in Exhibit A.

"Third-Party" means a person or entity other than MRBD and Customer.

"Third-Party Application(s)" or "OEM Partner(s)" means any online applications and offline software products that is not MRBD Technology but licensed to MRBD, whereby MRBD and OEM Partner have an agreement or understanding that MRBD will offer to Customer under an agreement to use the Third-Party Applications as part of the Services on the Platform.

"Third-Party Products" means Third-Party Applications and Non-MRBD Applications that may or may not interoperate with MRBD Technology on the Platform, including data integration using API (Application Programming Interface) or by downloading or uploading data between Third-Party Products and MRBD Technology in any file format.

"Travel Expense(s)" means reimbursable expenses for travel, including but not limited to, actual mileage driven, transportation, lodging and meals, incident to the rendering of Services reasonable incurred on behalf of MRBD. Reimbursable expenses also include travel time incurred by MRBD employees, officers or directors, MRBD standard hourly rates or standard fees on its current fee schedule shall apply, such standard hourly rates may be amended by MRBD from time to time, or which may otherwise be set out in a Statement of Work or Order Form.

"User Data" means a User(s) account information, account access information and registration information, as provided by User(s) and/or by Customer and Customer Client's Authorized User(s) stored in Infrastructure and accessible on Platform.

"Volume(s)" means the actual amounts and levels of the Services used by Customer and/or User(s).

"Website" means Parties publicly accessible, interlinked web pages that share a single domain name.

"Workflow" means a series and/or sequence of events, actions or tasks (which can initiate data flow and processes that are manual, robotic or automated) that have a beginning and end with a specified outcome (which can initiate another Workflow or set of Workflows).

"Work Product" shall mean (i) any and all discoveries, works of authorship, innovations or inventions (whether or not patentable), knowledge, ideas, concepts, techniques, know-how, methods, processes, systems and devices authored, created, found or conceived by MRBD in the course of its performance of the Services, (ii) any other work product made by MRBD in the course of its performance of the Services, or (iii) Project Technology.

**2. MRBD RESPONSIBILITIES**

**2.1 Provision of Purchased Services.** As applicable, MRBD will (a) provide access to the Platform for Customer pursuant to this Agreement, and the applicable Order Forms and/or SOWs, (b) make the Purchased Services and Content available to Customer pursuant to this Agreement, and the applicable Order Forms and/or SOWs, (c) provide Technical Support for the Purchased Services to Customer if purchased, (d) perform the Consultancy Services in accordance with the terms of each SOW and in a professional and competent manner, with the exercise at all times of all reasonable skill, care and diligence and (e) provide the Purchased Services in accordance with laws and government regulations applicable to MRBD's provision of its Services to its customers generally (i.e. without regard for Customer's particular use of the Services), and MRBD subject to Customer's use of the Purchased Services in accordance with this Agreement, and the applicable Order Form and/or SOW.

**2.2 Additional Services or Out of Scope Services.** From time to time, Customer may require Services, and Consultancy Services from MRBD, or its affiliates or subsidiary companies that are outside the scope of the SOW or Order Form contracted for under a SOW or Order Form ("Additional Services" or "Out of Scope Services"). Where MRBD provides the Customer with Additional Services, the Customer must pay MRBD's standard hourly rates or standard fees on its current fee schedule for providing that Additional Services, such standard hourly rates may be amended by MRBD from time to time, or which may otherwise be set out in a Statement of Work or Order Form. Oral or written authorization can be given by Customer to MRBD to perform such Additional Services or Out of Scope Services. In the absence of any other written agreement, Order Form or SOW concerning such Additional Services, this MSA shall govern.

**2.3 Protection of Customer Data.** MRBD will maintain appropriate administrative, physical, and technical safeguards for protection of the security, confidentiality, and integrity of Customer Data. Those safeguards will include, but will not be limited to, measures designed to prevent unauthorized access to or disclosure of Customer Data (other than by Customer or Users). The terms of the Data Processing Addendum (as set forth on Exhibit B) ("DPA") are hereby incorporated by reference and shall apply to the extent Customer Data includes Personal Data, as defined in the DPA. Upon request by Customer made within 30 days after the effective date of termination or expiration of this Agreement, MRBD will make Customer Data available to Customer for view, download or export. After such 30-day period, MRBD will have no obligation to maintain or provide any Customer Data and will have the option to delete or destroy all copies of Customer Data in its systems or otherwise in its possession or control, unless legally prohibited. Furthermore, within 30 days after the effective date of termination or expiration of this Agreement, the Parties may agree to have MRBD store Customer Data in a data warehouse (by which Customer Data is maintained in a hierarchical format) or a data lake (by which Customer Data is maintained in a repository of raw data), for either of which the Parties shall agree to commercially reasonable terms prior to MRBD's obligation to store such Customer Data.

**2.4 MRBD Personnel.** MRBD will be responsible for the performance of its personnel (including its employees and contractors) and their compliance with MRBD's obligations under this Agreement, except as otherwise specified in this Agreement.

**3. USE OF SERVICES AND CONTENT**

**3.1 Subscriptions.** Unless otherwise provided in the applicable Order Form or SOW, (a) Services and access to Content are purchased as subscriptions for the term stated in the applicable Order Form or SOW, if no term is stated then in the Order Form or SOW then it is subject to the term provisions of this MSA ("Subscription Term") (b) subscriptions for Purchased Services may be added during a Subscription Term, prorated for the portion of that Subscription Term remaining at the time the subscriptions are added, and (c) any added subscriptions will terminate on the same date as the underlying subscriptions. Customer agrees that its Purchased Services are not contingent on the delivery of any future functionality or features, or dependent on any oral or written public comments made by MRBD regarding future functionality or features.

**3.2 Usage Limits.** Services and Content are subject to usage limits specified in Order Forms or SOWs (if any). If Customer exceeds a contractual usage limit, MRBD may work with Customer to seek to reduce Customer's usage so that it conforms to that limit. If, notwithstanding MRBD's efforts, Customer is unable or unwilling to abide by a contractual usage limit, Customer will execute an Order Form or an SOW for additional quantities of the applicable Services or Content promptly upon MRBD's request, in the absence of an executed Order Form or SOW, Customer shall pay MRBD at its current Overage Fee Rate and/or pay any invoice for excess usage in accordance with the "Invoicing and Payment" section below.

**3.3 Customer Responsibilities.** Customer will (a) be responsible for Authorized Users' compliance with this Agreement, Order Forms and SOWs, (b) be responsible for the accuracy, quality and legality of Customer Data, the means by which Customer acquired Customer Data, Customer's use of Customer Data with the Services, and the interoperation of any Non-MRBD Applications with which Customer uses Services or Content, (c) use commercially reasonable efforts to prevent unauthorized access to or use of Services and Content, and notify MRBD promptly of any such unauthorized access or use, (d) use Services and Content only in accordance with this Agreement, the Acceptable Use and External Facing Services Policy (set forth in Exhibit C), Order Forms, SOWs and applicable laws and government regulations, and (e) comply with terms of service of any Non-MRBD Applications with which Customer uses Services or Content. Any use of the Services in breach of the foregoing by Customer or Users that in MRBD's judgment threatens the security, integrity or availability of Services, may result in MRBD's immediate suspension of the Services, however MRBD will use commercially reasonable efforts under the circumstances to provide Customer with notice and an opportunity to remedy such violation or threat prior to any such suspension.

**3.4 Usage Restrictions.** Customer will not (a) make any Services or Content available to anyone other than Customer or Authorized Users, or use any Services or Content for the benefit of anyone other than Customer or its Affiliates, unless expressly stated otherwise in an Order Form or an SOW, (b) sell, resell, license, sublicense, distribute, make available, rent or lease any Services or Content, or include any Services or Content in a service bureau or outsourcing offering, (c) use any Services and/or Non-MRBD Application to store or transmit infringing, libelous, or otherwise unlawful or tortious material, or to store or transmit material in violation of third-party privacy rights,

(d) use any Purchased Services or Non-MRBD Application to store or transmit Malicious Code, (e) interfere with or disrupt the integrity or performance of any Services or third-party data contained therein, (f) attempt to gain unauthorized access to any Services or Content or its related systems or networks, (g) permit direct or indirect access to or use of any Services or Content in a way that circumvents a contractual usage limit, or use any Services to access or use any of MRBD Intellectual Property Rights except as permitted under this Agreement, an Order Form, or an SOW, (h) modify, copy, or create derivative works based on Services or Platform or any part, feature, function or user interface thereof, (i) copy Content except as permitted herein or in an Order Form or an SOW, (j) frame or mirror any part of any Services or Content, other than framing on Customer's own intranets or otherwise for its own internal business purposes, (k) except to the extent permitted by applicable law, disassemble, reverse engineer, or decompile Services, Platform, or Content or access it to (1) build a competitive product or service, (2) build a product or service using similar ideas, features, functions or graphics of Services and Platform, (3) copy any ideas, features, functions or graphics of Purchased Services and Platform, or (4) determine whether Services or Platform are within the scope of any patent.

**3.5 User Permission.** Customers may use their Services user permission settings to control other Users' access to Customer Data. MRBD takes no responsibility and assumes no liability for (i) any Customer Data that Customer or any other Authorized Users or third parties post or send over the Services, or (ii) any public display or misuse of Customer Data including but not limited to viewing or access on Customer user interface.

**3.6 Removal of Content and Third-Party Products.** If Customer receives notice that Content or a Third-Party Product that interoperates with Platform must be removed, modified and/or disabled to avoid violating applicable law or third-party rights or the Acceptable Use and External Services Policy, Customer will promptly do so. If Customer does not take required action in accordance with the above, or if in MRBD's judgment continued violation is likely to reoccur, MRBD may disable the applicable Content, Service and/or the interoperation of Third-Party Products. If requested by MRBD, Customer shall confirm such deletion and discontinuance of use in writing and MRBD shall be authorized to provide a copy of such confirmation to any such third-party claimant or governmental authority, as applicable. In addition, if MRBD is required by any third-party rights holder to remove Content or receives information that Content provided to Customer may violate applicable law or third-party rights, MRBD may discontinue Customer's access to Content through the Services.

## 4. THIRD-PARTY PRODUCTS AND SERVICES

**4.1 Access to Third-Party Products.** MRBD may make available access to Third-Party Products and/or its data on the Platform, including, for example, Third-Party Products and implementation and other consulting services. Any acquisition by Customer of such Third-Party Products, and any exchange of data between Customer and any Third-Party Products is solely between Customer and the applicable Third-Party Products and may be subject to the privacy statements and practices of the Third-Party Product and/or their suppliers. MRBD does not warrant or support Third-Party Applications or other Third-Party products or services, whether or not they are designed by MRBD as "certified" or otherwise, unless expressly provided otherwise in an Order Form or an SOW. MRBD is not responsible or any disclosure, modification or deletion of Customer Data resulting from access by such Third-Party Application or its provider.

**4.2 Integration with Third-Party Products.** The Services may contain features designed to interoperate with Third-Party Products. MRBD cannot guarantee the continued availability of such integration features and may cease providing them without entitling Customer to any refund, credit, or other compensation, if for example and without limitation, the provider of Third-Party Products ceases to make the Third-Party Products available for interoperation with the corresponding Service features in a manner acceptable to MRBD.

**4.3 Customer Data with Third-Party Products.** Customer agrees and acknowledges that Third-Party Products will access Customer Data and MRBD shall not be responsible for any disclosure, modification or deletion of Customer Data resulting from any such access by Third-Party Products.

**4.4 Third-Party Licenses**. Where MRBD has resold or embedded Third-Party Product Services, Customer acknowledges and warrants to MRBD that Customer has obtained the Third-Party Product licenses to permit the Customer to use the Third-Party Products in accordance with this MSA. Customer acknowledges and agrees that MRBD will rely solely on Customer representations and warranties regarding Third-Party Products.

**4.5 Third-Party Sites**. Customer acknowledges the information, or other material, products, Content or Services that are contained on or accessible through Third-Party Sites are used solely at Customer's own risk.

## 5. FEES AND PAYMENT

**5.1 Fees**. Customer will pay all Fees (including but not limited to Subscription Fees and/or Consultancy Fees), Costs and amounts due for Overages, if applicable, specified in this Agreement, an Order Forms or SOW. Except as otherwise specified in this MSA, an Order Form or a SOW, (i) Fees are based on Services and Content subscriptions purchased and not actual usage, (ii) payment obligations are non-cancelable and Fees and Costs paid are non-refundable, and (iii) quantities purchased cannot be decreased during the relevant Term of Services specified in the Order Form, SOW or under the MSA.

**5.2 Invoicing and Payment**. MRBD will invoice the Customer in advance or in accordance with the relevant Order Form, SOW or under this terms of this Agreement. Unless otherwise stated in the Order Form or SOW, invoiced fees are due net 30 days from the invoice date. Customer is responsible for providing complete and accurate billing and contact information to MRBD and notifying MRBD of any changes to such information.

**5.3 Overdue Charges**. If any invoiced amount is not received by MRBD by the due date, then without limiting MRBD's rights or remedies, those charges may accrue late interest at the rate of 1.5% of the outstanding balance per month, or the maximum rate permitted by law, whichever is lower and/or (b) MRBD may condition future subscriptions renewals with Order Forms or SOWs on payment terms shorter

than those specified in the "Invoicing and Payment" section above.

**5.4 Suspension of Service and Acceleration**. If any charge owing by Customer to MRBD under this or other agreements for Services is 30 days or more overdue, (or 10 or more days overdue in the case of amounts Customer has authorized MRBD to charge to Customer's credit card), MRBD may, without limiting its other rights and remedies, accelerate Customer's unpaid fee obligations under such agreements so that all such obligations become immediately due and payable, and suspend all Services until such amounts are paid in full, provided that, other than for Customers paying by credit card or direct debit whose payment has been declined, MRBD will give Customer at least 10 days' prior notice that its account is overdue, in accordance with the "Manner of Giving Notice" section below for billing notices, before suspending services to Customer.

**5.5 Taxes**. MRBD's fees do not include any taxes, levies, duties or similar governmental assessments of any nature, including, for example, value-added, sales, use or withholding taxes, assessable by any jurisdiction whatsoever (collectively, "Taxes"). Customer is responsible for paying all Taxes associated with its purchases hereunder. If MRBD has the legal obligation to pay or collect Taxes for which Customer is responsible under this section, MRBD will invoice Customer and Customer will pay that amount unless Customer provides MRBD with a valid tax exemption certificate authorized by the appropriate taxing authority. For clarity, MRBD is solely responsible for taxes assessable against it based on its income, property and employees.

## 6. PROPRIETARY RIGHTS AND LICENSES

**6.1 Work Product**. Customer hereby does and shall assign to MRBD Customer's entire worldwide right, title and interest in and to all Work Product, Project Technology, and all associated records and intellectual property rights. To the extent any of the rights, title and interest in and to Work Product and Project Technology that cannot be assigned by Customer to MRBD, Customer hereby grants to MRBD an exclusive, royalty-free, transferable, irrevocable, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to exercise such non-assignable rights, title and interest. To the extent any of the rights, title and interest in and to the Work Product and Project Technology can be neither assigned nor licensed by Customer to MRBD, Customer hereby irrevocably waives and agrees never to assert such non-assignable and non-licensable rights, title and interest against MRBD or any of MRBD's successors in interest to such non-assignable and non-licensable rights.

**6.2 Reservation of Rights.** Subject to the limited rights expressly granted hereunder, MRBD, its Affiliates, its licensors and Content providers reserve all of their right, title and interest in and to the Services and Content, including all of their related Intellectual Property Rights. No rights are granted to the Customer hereunder other than as expressly set forth herein.

**6.3 Access to and Use of Content**. Customer has the right to access and use applicable Content subject to the terms of applicable Order Forms, SOWs and this Agreement.

**6.4 License by Customer to MRBD**. Customer grants MRBD, its Affiliates and applicable contractors a worldwide, perpetual license to host, copy, use, transmit, license, and display any Purchased Services and Non-MRBD Applications and program code created by or for Customer using Purchased Services or for use by Customer with the Purchased Services, and Customer Data, each as appropriate for MRBD to provide and ensure proper operation of Purchased Services on the Platform and associated systems in accordance with this Agreement. By submitting Customer Data to Purchased Services, Customer hereby grants MRBD fully paid-up and royalty-free license to use, display, reproduce, modify, publish, distribute list information regarding, edit translate and analyze the Customer Data within the Purchased Services in any formats and through any applicable channels for the purposes of providing the applicable features and functionality of the Purchased Services and improving the way the Purchased Services work and look, and to create new features and functionality. If Customer chooses to use Purchased Services and Non-MRBD Applications on the Platform, Customer grants MRBD permission to allow the Purchased Services and Non-MRBD Applications and its provider to access Customer Data and information about Customer's usage of the Purchased Services and Non-MRBD Application as appropriate for the interoperation of that Purchased Services and Non-MRBD Applications. Subject to the limited licenses granted herein, MRBD acquires no right, title or interest from Customer or its licensors under this Agreement in or to any Customer Data.

**6.5 Permitted Use of User Data and Aggregated Data.** MRBD may use User Data to provide and improve the Services and may use, sell, license, distribute, and disclose Aggregated Data as permitted by law.

**6.6 License by Customer to Use Feedback**. Customer grants to MRBD and its Affiliates a worldwide, perpetual, irrevocable, royalty-free license to use and incorporate into its Services any suggestion, enhancement request, recommendation, correction or other feedback provided by Customer or Users relating to the operation of MRBD's or its Affiliates' services.

## 7. CONFIDENTIALITY

**7.1 Definition of Confidential Information.** "Confidential Information" means all information disclosed by a Party ("Disclosing Party") to the other Party ("Receiving Party"), whether orally or in writing, that is designated as confidential or that reasonably should be understood to be confidential given the nature of the information and the circumstances of disclosure. Confidential Information of Customer includes Customer Data; Confidential Information of MRBD includes the Services and Content, and the terms and conditions of this Agreement and all Order Forms or SOWs (including pricing). Confidential Information of each Party includes business and marketing plans, technology and technical information, product plans and designs, and business processes disclosed by such Party. However, Confidential Information does not include any information that (i) is or becomes generally known to the public without breach of any obligation owed to the Disclosing Party, (ii) was known to the Receiving Party prior to its disclosure by the Disclosing Party without breach of any obligation owed to the Disclosing Party, (iii) is received from a third party without breach of any obligation owed to the Disclosing Party, or (iv) was independently developed by the Receiving Party. For the avoidance of doubt, the non-disclosure obligations set forth in this "Confidentiality" section apply to Confidential Information exchanged between the Parties in connection with the evaluation of additional MRBD services.

**7.2 Protection of Confidential Information**. As between the Parties, each Party retains all ownership rights in and to its Confidential Information. The Receiving Party will use the same degree of care that it uses to protect the confidentiality of its own confidential information of like kind (but not less than reasonable care) to (i) not use any Confidential Information of the Disclosing Party for any purpose outside the scope of this Agreement and (ii) except as otherwise authorized by the Disclosing Party in writing, limit access to Confidential Information of the Disclosing Party to those of its and its Affiliates' employees and contractors who need that access for purposes consistent with this Agreement and who have signed confidentiality agreements with the Receiving Party containing protections not materially less protective of the Confidential Information than those herein. Neither Party will disclose the terms of this Agreement or any Order Form or SOW to any third other than its Affiliates, legal counsel, and accountants without the other Party's prior written consent, provided that a Party that makes any such disclosure to its Affiliate, legal counsel or accountants will remain responsible for such Affiliate's, legal counsel's, or accountant's compliance with this "Confidentiality" section. Notwithstanding the foregoing, MRBD may disclose the terms of this Agreement and any applicable Order Form or SOW to a subcontractor or Non-MRBD Application Provider to the extent necessary to perform MRBD's obligations under this Agreement, under terms of confidentiality materially as protective as set forth herein.

**7.3 Compelled Disclosure.** The Receiving Party may disclose Confidential Information of the Disclosing Party to the extent compelled by law to do so, provided the Receiving Party gives the Disclosing Party prior notice of the compelled disclosure (to the extent legally permitted) and reasonable assistance, at the Disclosing Party's cost, if the Disclosing Party wishes to contest the disclosure. If the Receiving Party is compelled by law to disclose the Disclosing Party's Confidential Information as part of a civil proceeding to which the Disclosing Party is a Party, and the Disclosing Party is not contesting the disclosure, the Disclosing Party will reimburse the Receiving Party for its reasonable cost of compiling and providing secure access to that Confidential Information.

**8. REPRESENTATIONS, WARRANTIES, EXCLUSIVE REMEDIES AND DISCLAIMERS**

**8.1 Representations.** Each Party represents that it has validly entered into this Agreement and has the legal power to do so.

**8.2 MRBD Warranties.** MRBD warrants that during an applicable Term of Services (a) this Agreement, the Order Forms and the SOWs will accurately describe the applicable administrative, physical, and technical safeguards for protection of the security, confidentiality and integrity of Customer Data, (b) MRBD will not materially decrease the overall security of the Services, (c) the Services will perform materially in accordance with the applicable Order Form or SOW, and (d) subject to the "Integration with Non-MRBD Applications" section above, MRBD will not materially decrease the overall functionality of the Services. For any breach of a warranty above, Customer's exclusive remedies are those described in the "Termination" and "Refund or Payment upon Termination" sections below.

**8.3 Customer Data Disclaimer.** CUSTOMER ACKNOWLEDGES THAT MRBD DOES NOT MANAGE OR CONTROL THE CUSTOMER DATA THAT CUSTOMER ACCESSES, STORES OR DISTRIBUTES THROUGH THE PURCHASED SERVICES, AND ACCEPTS NO RESPONSIBILITY OR LIABILITY FOR THAT INFORMATION REGARDLESS OF WHETHER SUCH CUSTOMER DATA IS TRANSMITTED TO OR BY CUSTOMER. MRBD MAKES NO WARRANTY WITH RESPECT TO SUCH CUSTOMER DATA CUSTOMER MAY ACCESS, STORE OR DISTRIBUTE THROUGH THE PURCHASED SERVICES. IN PARTICULAR, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MRBD MAKES NO WARRANTY THAT SUCH CUSTOMER DATA WHEN INPUTTED BY CUSTOMER OR AUTHORIZED USERS WILL BE FREE OF ANY VIRUS, WORM, TROJAN HORSE, EASTER EGG, TIME BOMB, CANCELBOT, OR OTHER DESTRUCTIVE OR MALICIOUS CODE OR PROGRAMS. CUSTOMER AGREES TO WAIVE, AND HEREBY DOES WAIVE, ANY LEGAL OR EQUITABLE RIGHTS OF REMEDIES CUSTOMER HAS OR MAY HAVE AGAINST MRBD WITH RESPECT TO CUSTOMER DATA AND CONTENT THAT CUSTOMER CHOOSES TO ACCESS, STORE OR DISTRIBUTE, THROUGH PURCHASE SERVICES.

**8.4 Disclaimers.** EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, AND EACH PARTY SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW. CONTENT IS PROVIDED "AS IS," AND AS AVAILABLE EXCLUSIVE OF ANY WARRANTY WHATSOEVER.

**9. MUTUAL INDEMNIFICATION**

**9.1 Indemnification by MRBD.** During the Term of Services, MRBD will defend Customer against any claim, demand, suit or proceeding made or brought against Customer by a third party alleging that any Purchased Services infringes or misappropriates such third party's intellectual property rights (a "Claim Against Customer"), and will indemnify Customer from any damages, attorney fees and costs finally awarded against Customer as a result of, or for amounts paid by Customer under a settlement approved by MRBD in writing of, a Claim Against Customer, provided Customer (a) promptly gives MRBD written notice of the Claim Against Customer, (b) gives MRBD sole control of the defense and settlement of the Claim Against Customer (except that MRBD may not settle any Claim Against Customer unless it unconditionally releases Customer of all liability), and (c) gives MRBD all reasonable assistance, at MRBD's expense. If MRBD receives information about an infringement or misappropriation claim related to a Purchased Service, MRBD may in its discretion and at no cost to Customer (i) modify the Purchased Services so that they are no longer claimed to infringe or misappropriate, without breaching MRBD's warranties under "MRBD Warranties" above, (ii) obtain a license for Customer's continued use of that Purchased Service in accordance with this Agreement, or (iii) terminate Customer's Purchased Services for that Service upon 30 days' written notice and refund Customer any prepaid fees covering the remainder of the term of the terminated Purchased Services. The above defense and indemnification obligations do not apply if (1) the allegation does not state with specificity that the Purchased Services are the basis of the Claim Against Customer; (2) a Claim Against Customer arises from the use or combination of the Purchased Services or any part thereof with software, hardware, data, or processes not provided by MRBD, if the Purchased Services or use thereof would not infringe without such combination; (3) a Claim Against Customer arises from Purchased Services under an Order Form or an SOW for

which there is no charge; or (4) a Claim against Customer arises from Content, a Non-MRBD Applications or Customer's breach of this Agreement or applicable Order Forms or SOWs.

**9.2 Indemnification by Customer.** During the Term of Service and thereafter, Customer will defend MRBD and its Affiliates against any claim, demand, suit or proceeding made or brought against MRBD by a third party alleging (a) that any Customer Data or Customer's use of Customer Data with the Services, (b) a Non-MRBD Application provided by Customer, or (c) the combination of a Non-MRBD Application provided by Customer and used with the Services, infringes or misappropriates such third party's intellectual property rights, or arising from Customer's use of the Services or Content in an unlawful manner or in violation of the Agreement or Order Form or SOW (each a "Claim Against MRBD"), and will indemnify MRBD from any damages, attorney fees and costs finally awarded against MRBD as a result of, or for any amounts paid by MRBD under a settlement approved by Customer in writing of, a Claim Against MRBD, provided MRBD (a) promptly gives Customer written notice of the Claim Against MRBD, (b) gives Customer sole control of the defense and settlement of the Claim Against MRBD (except that Customer may not settle any Claim Against MRBD unless it unconditionally releases MRBD of all liability), and (c) gives Customer all reasonable assistance, at Customer's expense. The above defense and indemnification obligations do not apply if a Claim Against MRBD arises from MRBD's breach of this Agreement or applicable Order Forms or SOWs.

**9.3 Exclusive Remedy.** This "Mutual Indemnification" section states the indemnifying Party's sole liability to, and the indemnified Party's exclusive remedy against, the other Party for any third-party claim described in this section.

## 10. LIMITATION OF LIABILITY

**10.1 Limitation of Liability.** IN NO EVENT SHALL THE AGGREGATE LIABILITY OF MRBD TOGETHER WITH ALL OF ITS AFFILIATES ARISING OUT OF OR RELATED TO THIS AGREEMENT EXCEED THE TOTAL AMOUNT PAID BY CUSTOMER AND ITS AFFILIATES HEREUNDER FOR THE SERVICES GIVING RISE TO THE LIABILITY IN THE TWELVE MONTHS PRECEDING THE FIRST INCIDENT OUT OF WHICH THE LIABILITY AROSE. THE FOREGOING LIMITATION WILL APPLY WHETHER AN ACTION IS IN CONTRACT OR TORT AND REGARDLESS OF THE THEORY OF LIABILITY BUT WILL NOT LIMIT CUSTOMER'S AND ITS AFFILIATES' PAYMENT OBLIGATIONS UNDER THE "FEES AND PAYMENT" SECTION ABOVE.

**10.2 Exclusion of Consequential and Related Damages.** IN NO EVENT WILL EITHER PARTY OR ITS AFFILIATES HAVE ANY LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT FOR ANY LOST PROFITS, REVENUES, GOODWILL, OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, COVER, BUSINESS INTERRUPTION OR PUNITIVE DAMAGES, WHETHER AN ACTION IS IN CONTRACT OR TORT AND REGARDLESS OF THE THEORY OF LIABILITY, EVEN IF A PARTY OR ITS AFFILIATES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR IF A PARTY'S OR ITS AFFILIATES' REMEDY OTHERWISE FAILS OF ITS ESSENTIAL PURPOSE. THE FOREGOING DISCLAIMER WILL NOT APPLY TO THE EXTENT PROHIBITED BY LAW.

## 11. TERM AND TERMINATION

**11.1 Term of Services.** The term for MRBD to provide subscriptions or Purchase Service shall be as specified in the applicable Order Form or SOW. If no term is stated in the applicable Order Form or SOW the term shall be one year ("Term of Services"). Except as otherwise specified in an Order Form or an SOW, the term of the subscriptions or Purchase Services will automatically renew for additional periods equal to the expiring subscription term for one year (whichever is shorter), unless either Party gives the other written notice (email acceptable) at least 30 days before the end of the relevant term. Except as expressly provided in the applicable Order Form or SOW, renewal of promotional or one-time period subscriptions will be MRBD's applicable list price in effect at the time of the applicable renewal. Notwithstanding anything to the contrary, any renewal in which subscription volume or subscription length for any Services has decreased from the prior term will result in re-pricing at renewal without regard to the prior term's per-unit pricing.

**11.2 Termination.** A Party may terminate this Agreement for cause (i) upon 30 days written notice to the other Party of a material breach if such breach remains uncured at the expiration of such period, or (ii) if the other Party becomes the subject of a petition in bankruptcy or any other proceeding relating to insolvency, receivership, liquidation or assignment for the benefit of creditors.

**11.3 Refund or Payment upon Termination.** If this Agreement is terminated by Customer in accordance with the "Termination" section above, MRBD will refund Customer any prepaid fees covering the remainder of the Term of Services of all Order Forms or SOWs after the effective date of termination. If this Agreement is terminated by MRBD in accordance with the "Termination" section above, Customer will pay any unpaid fees covering the remainder of the Term of Services of all Order Forms or SOWs to the extent permitted by applicable law. In no event will termination relieve Customer of its obligation to pay any fees payable to MRBD for the period prior to the effective date of termination.

**11.4 Surviving Provisions.** The sections titled "Fees and Payment," "Proprietary Rights and Licenses," "Confidentiality," "Disclaimers," "Mutual Indemnification," "Limitation of Liability," "Refund or Payment upon Termination," "Removal of Content and Third Party Applications," "Surviving Provisions" and "General Provisions" will survive any termination or expiration of this Agreement, and the section titled "Protection of Customer Data" will survive any termination or expiration of this Agreement for so long as MRBD retains possession of Customer Data.

## 12. GENERAL PROVISIONS

**12.1 Export Compliance.** The Services, Content, other MRBD technology, and derivatives thereof may be subject to export laws and regulations of the United States and other jurisdictions. MRBD and Customer each represents that it is not named on any U.S. government denied-party list. Customer will not permit any User to access or use any Service or Content in a U.S.-embargoed country or region

(currently Cuba, Iran, North Korea, Sudan, Syria or Crimea) or in violation of any U.S. export law or regulation.

**12.2 Recorded Communication.** Each Party (i) consents and has no objection to the recording of telephone conversations between the personnel of the Parties in connection with this Agreement, the SOW or the Order Form or any potential transaction or service whether by one or other or both of the Parties or their agents, (ii) agrees to the extent permitted by applicable law, that recordings may be submitted in evidence in any legal proceeding and (iii) agrees that in any proceedings either will not object to the introduction of such recordings in evidenced on the grounds that consent was not properly given. Further, the Customer acknowledges, accepts and consents that MRBD will produce a written record of telephone conversations, internet-based conversations (chat) and meeting minutes between the Customer and MRBD that can be used as evidence in legal proceedings or otherwise. Either Parties recordings may be used in any forum in which a dispute is sought to be resolved and the recording Party will retain the recordings for period of time in accordance with the recording Party's policies and procedures unless one Party notifies the other that a particular transaction is under review and warrants further retention.

**12.3 Entire Agreement and Order of Precedence.** This Agreement is the entire agreement between MRBD and Customer regarding Customer's use of Purchased Services and Content and supersedes all prior and contemporaneous agreements, proposals or representations, written or oral, concerning its subject matter. In the event of any conflict or inconsistency among the following documents, the provisions of this MSA shall control and supersede any such inconsistency, conflict or ambiguity. Titles and headings of sections of this Agreement are for convenience only and shall not affect the construction of any provision of this Agreement.

**12.4 Relationship of the Parties.** The Parties are independent contractors. This Agreement does not create a partnership, franchise, joint venture, agency, fiduciary or employment relationship between the Parties. Each Party will be solely responsible for payment of all compensation owed to its employees, as well as all employment-related taxes.

**12.5 Third-Party Beneficiaries.** There are no third-party beneficiaries under this Agreement.

**12.6 Waiver.** No failure or delay by either Party in exercising any right under this Agreement will constitute a waiver of that right.

**12.7 Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be contrary to law, the provision will be deemed null and void, and the remaining provisions of this Agreement will remain in effect.

**12.8 Assignment.** Neither Party may assign any of its rights or obligations hereunder, whether by operation of law or otherwise, without the other Party's prior written consent (not to be unreasonably withheld); provided, however, either Party may assign this Agreement in its entirety (including all Order Forms and SOWs), without the other Party's consent to its Affiliate or in connection with a merger, acquisition, corporate reorganization, or sale of all or substantially all of its assets. Notwithstanding the foregoing, if a Party is acquired by, sells substantially all of its assets to, or undergoes a change of control in favor of, a direct competitor of the other Party, then such other Party may terminate this Agreement upon written notice. In the event of such a termination, MRBD will refund Customer any prepaid fees covering the remainder of the term of all subscriptions for the period after the effective date of such termination. Subject to the foregoing, this Agreement will bind and inure to the benefit of the Parties, their respective successors and permitted assigns.

**12.9 Amendment.** This Agreement may be amended from time to time by MRBD in its discretion without the consent of Customer when changes in the law or relevant regulations, enforcement authority, or regulatory guidance requires such an amendment. All other modifications or amendments including, but not limited to Fees or Service Levels will be communicated in writing and posted on the website. There shall be no amendment or modifications made to any SOWs or Order Forms unless made in writing and executed by both Customer and MRBD.

**12.10 Governing Law and Severability.** This Agreement and the legal relations between the Parties shall be governed by and construed in accordance with the laws of the State of Nevada. In case any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

**12.11 Manner of Giving Notice.** Except as otherwise specified in this Agreement, all notices related to this Agreement will be in writing and will be effective upon (a) personal delivery, (b) the second business day after mailing, or (c), except for notices of termination or an indemnifiable claim ("Legal Notices"), which shall clearly be identifiable as Legal Notices, the day of sending by email. Billing-related notices to Customer will be addressed to the relevant billing contact designated by Customer. All other notices to Customer will be addressed to the relevant Services system administrator designated by Customer.

**12.12 Agreement to Governing Law, Jurisdiction, Dispute Resolution; Agreement to Arbitrate.** Each Party agrees to the applicable governing law above without regard to choice or conflicts of law rules, and to the exclusive jurisdiction of the applicable courts above.

a. Binding Arbitration: In the event that there is a dispute, claim or controversy arising out of or relating to statutory or common law claims, the breach, termination, enforcement, interpretation or validity of any provision of this Agreement, and the determination of the scope or applicability of your agreement to arbitrate any dispute, claim or controversy originating from this Agreement, but specifically excluding any dispute principally related to either Party's intellectual property (which such dispute will be resolved in litigation before the United States District Court for the District of Nevada), will be determined by arbitration in Henderson, Nevada before a single arbitrator. The arbitration will be administered by the American Arbitration Association under its Commercial Arbitration Rules. The Expedited Procedures of the American Arbitration Association's Commercial Arbitration Rules will apply for cases in which no disclosed claim or counterclaim exceeds $75,000 (exclusive of interest, attorneys' fees and arbitration fees and costs). Where no Party's claim exceeds $25,000 (exclusive of interest, attorneys' fees and arbitration fees and costs), and in other cases in which the Parties agree, Section E-6 of the Expedited Procedures of the American Arbitration Association's Commercial Arbitration Rules will apply. The arbitrator will apply the substantive law of the State of Nevada, exclusive of its conflict or choice of law rules. If the American Arbitration

Association is no longer in business or refuses or declines to administer any dispute between the Parties brought before it, either Party may petition the United States District Court for the District of Nevada to appoint the arbitrator. Nothing in this paragraph will preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The Parties acknowledge that this Agreement evidences a transaction involving interstate commerce. Notwithstanding the provisions in this paragraph referencing applicable substantive law, the Federal Arbitration Act (9 U.S.C. §§ 1-16) will govern any arbitration conducted pursuant to the terms of this Agreement.

Either Party may commence arbitration by providing to the American Arbitration Association and the other Party to the dispute a written demand for arbitration, setting forth the subject of the dispute and the relief requested.

b. Service of Process: Each Party hereby irrevocably and unconditionally consents to service of process through personal service at their corporate headquarters, registered address, or primary address (for individuals or sole proprietors). Nothing in this Agreement will affect the right of any Party to serve process in any other manner permitted by law.

c. Class Waiver: To the fullest extent permitted by law, each of the Parties agrees that any dispute arising out of or in connection with this Agreement, whether in arbitration or in court, will be conducted only on an individual basis and not in a class, consolidated or representative action. If for any reason a claim or dispute proceeds in court rather than through arbitration, each Party knowingly and irrevocably waives any right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or any of the transactions contemplated between the Parties.

d. Provision of an Award: Subject to the limitations of liability identified in this Agreement, the appointed arbitrators may award monetary damages and any other remedies allowed by the laws of the State of Nevada. In making a determination, the arbitrator will not have the authority to modify any term or provision of this Agreement. The arbitrator will deliver a reasoned written decision with respect to the dispute (the "Award") to each Party, who will promptly act in accordance with the Award. Any Award (including interim or final remedies) may be confirmed in or enforced by a state or federal court located in Las Vegas, Nevada. The decision of the arbitrator will be final and binding on the Parties and will not be subject to appeal or review.

e. Fees: Each Party will advance one-half of the fees and expenses of the arbitrators, the costs of the attendance of the arbitration reporter at the arbitration hearing, and the costs of the arbitration facility. In any arbitration arising out of or related to this Agreement, the arbitrators will award to the prevailing Party, if any, the costs and attorneys' fees reasonably incurred by the prevailing Party in connection with those aspects of its claims or defenses on which it prevails, and any opposing awards of costs and legal fees awards will be offset.

f. Confidentiality: The Parties will maintain the confidential nature of the arbitration proceeding, the hearing and the Award, except (i) as may be necessary to prepare for or conduct the arbitration hearing on the merits, (ii) in connection with a court application as contemplated above for a preliminary remedy, or confirmation of an Award or its enforcement, (iii) our disclosure of the Award in confidential settlement negotiations, or (iv) as otherwise required by applicable laws. The Parties, witnesses, and arbitrator will treat as confidential and will not disclose to any third person (other than witnesses or experts) any documentary or other evidence produced in any arbitration hereunder, except as required by law or except if such evidence was obtained from the public domain or was otherwise obtained independently from the arbitration.

g. Conflict of Rules: In the case of a conflict between the provisions of this Section 12.12.g and the rules governing arbitration identified in Section 12.12.a, the provisions of this Section 12.12.g will prevail. If any provision of this Agreement to arbitrate is held invalid or unenforceable, it will be so held to the minimum extent required by law and all the other provisions will remain valid and enforceable.

Exhibit A – Support and Maintenance Services (to be delivered with Order Form or SOW)

Exhibit B – Data Processing Addendum (to be delivered with Order Form or SOW)

Exhibit C – Acceptable Use and External-Facing Services Policy (to be delivered with Order Form or SOW)